ORIGINAL

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

### BID PROTEST

FILED

APR 2 8 2014

U.S. COURT OF
FEDERAL CLAIMS

---

**SPACE EXPLORATION TECHNOLOGIES
CORP.**

  **Plaintiff,**

v.

**THE UNITED STATES,**

  **Defendant.**

Case No. _____

Judge 14 - 354C

---

### COMPLAINT

Plaintiff Space Exploration Technologies Corp. ("SpaceX"), through the undersigned

counsel, alleges as follows:

### INTRODUCTION

1.    The Air Force has entered into an unlawful contract for rocket launches with the

United Launch Alliance ("ULA"), a joint venture between the government's two biggest and

most influential contractors, Boeing and Lockheed Martin ("Lockheed"). This complex and

exclusive deal (the "ULA Contract"), which was concluded outside of public scrutiny, funnels

hundreds of millions of U.S. taxpayer dollars to Russia's military-industrial base, including

monies that may flow to individuals on the U.S. sanctions list. Further, it defers meaningful free

competition for years to come, costing taxpayers billions of dollars more. Beyond violating core

tenets of government procurement law, the ULA Contract is dangerous, fiscally irresponsible, and offensive to American values of open competition and fairness.

2.     With this Complaint, SpaceX seeks no advantage, but merely the opportunity to compete. The Air Force should be required to comply with its legal obligations to fairly and openly compete any launch opportunity that could be provided by more than one U.S. launch provider, and it should end reliance on Russian rocket engines to carry national security payloads into space.

3.     The Evolved Expendable Launch Vehicle ("EELV") Program was implemented by the Air Force in 1995 to achieve affordable, assured access to space. It initially relied on competition between Boeing and Lockheed. But then Boeing misappropriated thousands of confidential Lockheed pricing documents during their competition for launches. Remarkably, this incident did *not* lead to the reinstitution of fair competition between two providers. Rather, Boeing and Lockheed joined forces to convince the Air Force that the culprit was competition itself, and formed ULA to monopolize the EELV Program.

4.     Unsurprisingly, the costs of the EELV Program have dramatically expanded ever since, and are now projected to cost $70 billion through 2030. It has become the fourth largest program in the country's entire defense budget, not far behind the F-35 Joint Strike Fighter.

5.     The majority of EELV launches are performed by ULA's Atlas family of launch vehicles, which use the RD-180 rocket engine. The RD-180 is made in Russia by NPO Energomash, which is owned and controlled by the Russian government. The Russian space and defense industries are led by Dmitry Rogozin, the Deputy Prime Minister of Russia. Mr. Rogozin is on the United States' sanctions list as a result of Russia's annexation of the Crimea.

In other words, under the ULA Contract, the Air Force is sending millions of dollars directly to an entity controlled by Russia and to an industry led by an individual identified for sanctions.

6.      Each instance in which the Air Force procures an Atlas represents significant U.S. taxpayer money flowing to Russia's military industrial complex. In just the past week, ULA announced that it is changing its contract with NPO Energomash to enable the delivery of the Russian-made RD-180 rocket engines as soon as they are ready, rather than annually; in the face of sanctions, it appears that ULA may be speeding up the flow of transactions with Russia. It is hard to imagine any way in which entrenching reliance on Russian rocket engines while funding the Russian military industrial complex with U.S. tax dollars serves national security interests, especially at a time when the Administration has sanctioned individuals associated with the same military industrial complex over the Ukraine annexation. Yet, that is what the Air Force's arrangement with ULA effectively does, despite the fact that there are domestic alternatives available.

7.      The EELV Program has been criticized by external auditors like the Government Accountability Office ("GAO") for its strategic use of complex contractual structures that eliminate transparency.[1] For example, instead of paying on a per launch basis, the Air Force pays ULA both (1) a $1 billion annual "launch capability" subsidy covering one hundred percent of ULA's fixed costs and business overhead even if ULA never even performs a launch *and* (2) a "launch services" fee covering launch vehicle hardware. Adding to the confusion, the Air Force

---

[1] See generally GAO, "Space Launch Vehicle Competition," Briefing to the Senate Homeland Security and Governmental Affairs Committee, Permanent Subcommittee on Investigations, January 28, 2014, available at http://www.gao.gov/assets/670/661330.pdf; GAO Report to Congressional Requesters, "Evolved Expendable Launch Vehicle: DOD Needs to Ensure New Acquisition Strategy Is Based on Sufficient Information," September 2011 (GAO-11-641), available at http://www.gao.gov/new.items/d11641.pdf.

does not order launch vehicles for specific missions. Rather, it procures vehicles without any specific mission definitively assigned and only later assigns each vehicle to a mission, and it *never* publicly discloses which vehicle gets assigned to which mission. This structure all but guarantees that no one—not even the Air Force—can say precisely how much ULA charges the American taxpayer for each EELV launch.

8.    The ULA monopoly has led to murky contracts, reliance on Russian suppliers, and spiraling costs. The FTC warned in 2006 about the negative outcomes of permitting Boeing and Lockheed to form a monopoly in the first instance. And ever since, the GAO has regularly championed injecting competition into the EELV Program as a way to fix these problems. As recently as 2012, Under Secretary of Defense Frank Kendall ordered the Air Force to "aggressively reintroduce a competitive procurement environment" for the EELV Program. Indeed, even ULA has admitted that competition can reduce program costs.[2]

9.    Domestic competition using American rocket engines *is* available, as SpaceX already is qualified to compete for most EELV launches. Today, the Air Force must on average budget $400 million for a ULA launch. By contrast, SpaceX estimates that it would reliably provide exactly the same services at a 75% cost savings (around $100 million per launch).

10.    In late December 2013—in the face of the widely acknowledged and critical need to inject competition into the EELV Program, and less than 20 days before SpaceX's final certification launch for the EELV Program—the Air Force executed a contract to procure 36 launch vehicle cores from ULA on a sole source basis, locking out competition for the vast

---

[2] Senate Appropriations Subcommittee on Defense Hearing, Mar. 5, 2014, Tr. at 21 (In response to the question asked by Senator Richard Durbin of whether price competition is going to give taxpayers a lower cost, Mr. Michael Gass, President and CEO of ULA, responded "It can.").

majority of EELV missions for years to come.  The Air Force should be required to comply with

its legal obligations to fairly and openly compete launch opportunities, and it should end reliance

on Russian rocket engines to carry national security payloads into space.

## NATURE OF THE ACTION

11.     SpaceX seeks declaratory judgment and permanent injunctive relief against

Defendant United States, acting through the United States Air Force's Space and Missile

Systems Center ("Air Force" or "Agency"), to (1) enjoin the Air Force from purchasing single

core launch vehicle configurations ("Single Core Launch Vehicle(s)") on a sole source basis

from ULA for missions to be conducted under the EELV Program and (2) require the Air Force,

whenever it does decide to sole source a Single Core Launch Vehicle for the EELV Program, to

issue a Justification and Approval ("J&A") explaining why it did so.[3]

12.     The best evidence available to SpaceX shows that the Air Force will order 22

Single Core Launch Vehicles to use for missions that are now scheduled to launch in FY2017-

FY2019.  SpaceX's Falcon 9 is qualified to compete for all of these Single Core Launch

Vehicles missions now, *years* in advance of their anticipated launch dates.[4]  Due to the opaque

nature of the Air Force's arrangement with ULA, SpaceX cannot determine to which missions

each Single Core Launch Vehicle configuration procured by the Air Force will ultimately be

---

[3] The EELV Program is managed by the Air Force, but other U.S. Government agencies, mainly the National Reconnaissance Office ("NRO"), use and in some instances pay some part of the costs of the Program.

[4] As described below, *infra* ¶¶ 59-60, , in addition to future improper sole source orders, the Air Force recently "early awarded" at least one Single Core Launch Vehicles for which SpaceX is qualified to compete and must be procured through full and open competition.  Those particular launch vehicles are not scheduled to launch until FY2017, and had the Air Force properly waited until FY2015 to issue the orders, SpaceX would have had the opportunity to compete for those orders.

assigned or what their precise performance requirements may be.  Therefore, <u>SpaceX herein challenges all procurements of Single Core Launch Vehicle configurations</u>.[5]

13.    There is no valid basis for the Air Force to purchase any future Single Core Launch Vehicles on a sole source basis when SpaceX is qualified to compete for them, and the Air Force must therefore procure them through full and open competition consistent with the Competition in Contracting Act ("CICA"), 10 U.S.C. § 2304 (2006), FAR Part 6, and express Department of Defense ("DoD") directives and authorization.[6]

14.    This Complaint is the result of four recent developments.  First, SpaceX has submitted all required flight data for its third qualifying certification launch, and SpaceX is therefore eligible to compete for future Single Core Launch Vehicles.  Second, recent Air Force statements indicate that it will purchase some or all of its future Single Core Launch Vehicles on a sole source basis from ULA even though SpaceX is eligible to compete for those procurements.  Third, the Air Force has recently indicated that during the first quarter of FY2015, it will purchase a number of Single Core Launch Vehicles for which SpaceX is qualified to compete.  Fourth, on April 17, 2014, SpaceX learned that the Air Force decided not to compete future Single Core Launch Vehicles that SpaceX is qualified to launch because the Air Force has an "existing 36-core contractual requirement" with ULA.  If immediate relief is not granted requiring the Air Force to issue one or more solicitations and conduct competitions for these

---

[5] At this time, SpaceX does not challenge the sole source ordering of future multi-core launches.

[6] Specifically, a November 27, 2012, Acquisition Decision Memorandum ("ADM") from the Under Secretary of Defense *required* the Air Force to compete the launches that the Air Force has since sole-sourced to ULA, as well as all future medium capacity missions for which SpaceX, or any new entrant, is qualified to compete. *Infra* Part E.

FY2015 cores, SpaceX will lose the opportunity to compete for and win hundreds of millions of dollars of business.

## PARTIES

15.   SpaceX is a privately held Delaware corporation, with its principal place of business at 1 Rocket Road, Hawthorne, CA 90250. SpaceX designs and manufactures launch vehicles and spacecraft for providing its services to the U.S. Government (including NASA and the Air Force under a different launch program called OSP-3), international governments, and commercial customers.

16.   The Defendant is the United States acting through the Air Force.

## JURISDICTION AND STANDING

17.   This Court has jurisdiction over this bid protest pursuant to 28 U.S.C. § 1491(b)(1) (2006), which states that this Court "shall have jurisdiction to render judgment on an action by an interested party . . . to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."

18.   SpaceX has standing as an "interested party" to file this bid protest. 28 U.S.C. § 1491(b)(2). In the context of a challenge to an improper sole source order, a plaintiff "need only establish that it 'could compete for the contract' if the bid process were made competitive." *Def. Tech., Inc. v. United States*, 99 Fed. Cl. 103, 115 (2011) (citation and quotation omitted). "Being wrongfully deprived of the opportunity to fully and fairly compete suffices to establish prejudice on the merits." *Distributed Solutions, Inc. v. United States*, 104 Fed. Cl. 368, 380 (2012).

19.   Here, SpaceX undoubtedly could compete for Single Core Launch Vehicles if the Air Force were to procure them through full and open competition. SpaceX is a proven provider

of launch services for both U.S. Government and commercial customers. Notably, the Air Force itself has recognized SpaceX's capabilities, having on two recent occasions opted to purchase launches from SpaceX, just never under the EELV Program, which has been sole-sourced to ULA since 2006. *See infra* ¶¶ 26-29.

20.     On January 24, 2013, Under Secretary of Defense Frank Kendall stated in a response to GAO's Director of Acquisition and Sourcing Management, that the Department of Defense "will allow new entrants to compete for launch contract awards as soon as the new entrant delivers the data from their final certification launch."

21.     By March 22, 2014, SpaceX had delivered the data to the Air Force from its final certification launch, which occurred on January 6, 2014. Consequently, SpaceX is qualified to compete for all future "launch contract awards" consistent with the Under Secretary's directive.

22.     But for the Air Force's improper actions set forth in this Complaint, SpaceX would compete for and win many, if not all, full and open competitions for Single Core Launch Vehicles, including those that the Air Force plans to order in FY2015.

23.     Absent the relief requested in this Complaint, SpaceX will suffer a permanent injury because it will be denied the opportunity to compete for some or all of these Single Core Launch Vehicles, effectively "locking it out" of a significant portion of the marketplace until FY2020 or later. This, of course, will also further delay SpaceX's ability to develop EELV launch heritage, which is likely to improperly prolong a long-standing competitive advantage for the incumbent.[7]

---

[7] General Shelton, head of Air Force Space Command, has for example cited to ULA's EELV launch heritage as a critical factor in the Air Force's decision to sole source EELV missions to them. "Shelton Fires Back at SpaceX," Space News, Mar. 12, 2014, at http://www.spacenews.com/article/military-space/39832shelton-fires-back-at-spacex.

## BACKGROUND

### A. The EELV Program

24.     The EELV Program was implemented by the Air Force in 1995 to achieve affordable, assured access to space.  Under the program, the Air Force contracts with companies to launch government payloads (*i.e.*, satellites or other spacecraft) into space.

25.     The initial acquisition strategy involved a concept validation phase with four competing contractors.  In 1996, the Air Force down-selected from the four contractors and awarded pre-engineering and manufacturing contracts to two—Boeing[8] and Lockheed—to continue refining their system concepts and complete detailed system design.

26.     While the initial acquisition strategy called for a single award for final development and production, the Air Force decided in 1997 to maintain ongoing competition between Boeing and Lockheed throughout the life of the EELV Program both because continuous competition would lower the cost of space launch to the U.S. Government and because having two different companies develop the technology and capability would increase assured access to space for national security assets by giving the U.S. Government two completely separate sources of launch to meet its needs.

27.     On June 9, 1998, the Air Force approved a Justification and Approval ("J&A") authorizing EELV launch services contracts to only Boeing and Lockheed based on the determination that they were the only two sources capable of meeting the Agency's needs.  On October 16, 1998, the Air Force awarded EELV Initial Launch Service contracts (referred to as "Buy 1") to Boeing and Lockheed for twenty-eight missions and Other Transaction Agreements

---

[8] The 1996 contract was actually awarded to McDonnell Douglas, which merged with Boeing a year later in 1997.  For ease of reference, SpaceX refers to Boeing throughout this Complaint.

("OTAs"), requiring the contractors to complete engineering and manufacturing development of their respective launch vehicle systems, launch pads, satellite interfaces, and support infrastructure, as well as to demonstrate that their systems would meet all Government requirements. The Buy 1 contracts and OTAs totaled more than $3 billion.

28.     The duopoly held for the next seven years, and the Air Force continued to assign EELV purchases through less than full and open competition to just these two companies. But the arrangement mutated in 2006 when, in the aftermath of a contracting scandal,[9] Boeing and Lockheed formed ULA to create a full-fledged monopoly over the lucrative EELV market. The Air Force permitted them to do so over objections from the Federal Trade Commission and began to sole source orders to ULA.

29.     To justify giving ULA a monopoly over the EELV market under this new sole source arrangement, the Air Force relied on three critical commitments: (1) lower costs would be achieved through the efficiencies of combining the two former competitors' programs; (2) new launch providers would be permitted to compete as soon as they were ready, thereby re-injecting the benefits of competition into the market when they became available; and (3) access to space would be assured by maintaining two distinct launch systems. Not one of these three justifications has proved valid.

30.     Predictably, since the Air Force's decision to permit the ULA monopoly, prices have increased dramatically. As the GAO has noted in multiple instances, it is impossible under the opaque procurement structure that the Air Force and ULA have crafted to determine with any

---

[9] Boeing was found to have violated the Procurement Integrity Act by unlawfully obtaining 25,000 pages of proprietary information about Lockheed's Atlas V rocket. See Competition and the future of the EELV program, The Space Review, http://www.thespacereview.com/article/2042/2.

precision the actual cost of individual launches in the EELV program.[10] However, it appears that from FY2007 to FY2015, the price per core to the Air Force rose by about 50% (or $140 million).[11] By FY2013, the Government was forced to budget approximately $360 million per launch, while subsidizing ULA's fixed costs at more than $1 billion per year even if the company did not launch a single rocket.[12] Several recent cost analyses have determined that with the ULA monopoly in place, the cost of the EELV Program will double over initial estimates, to $70 billion.[13] This sustained cost growth has triggered multiple "critical" Nunn-McCurdy

---

[10] See generally GAO, "Space Launch Vehicle Competition," Briefing to the Senate Homeland Security and Governmental Affairs Committee, Permanent Subcommittee on Investigations, January 28, 2014, available at http://www.gao.gov/assets/670/661330.pdf; GAO Report to Congressional Requesters, "Evolved Expendable Launch Vehicle: DOD Needs to Ensure New Acquisition Strategy Is Based on Sufficient Information," September 2011 (GAO-11-641), available at http://www.gao.gov/new.items/d11641.pdf.

[11] Using Air Force budget requests SpaceX has identified cost data suggesting that Air Force paid ULA about $264 million per Single Core Launch Vehicle in FY2007 and will pay about $404 million per core in FY 2015. These figures do not include some costs, such as mission assurance and program management.

[12] Department of Defense, "Fiscal Year (FY) 2014 President's Budget Submission, Missile Procurement, Air Force." Apr. 2013. Vol. 1, 232, available at http://www.saffm.hq.af.mil/shared/media/document/AFD-130408-083.pdf.

[13] Department of Defense OUSD (AT&L) ARA/AM, "Selected Acquisition Report (SAR) Summary Tables," December 2012, 6, available at http://www.acq.osd.mil/ara/am/sar/SST-2012-12.pdf; U.S. Government Accountability Office, "Defense and Civilian Agencies Request Significant Funding for Launch-Related Activities," September 2013, 2, available at http://www.gao.gov/products/GAO-13-802R.

breaches, most recently in 2012 when the program exceeded 58 percent unit cost growth.[14]
Indeed, prices have risen to levels that General William Shelton has called "unsustainable."[15]

31.     Notwithstanding spiraling costs, the Air Force has not kept its commitment to enable new qualified entrants to compete.  Despite the fact that SpaceX has already conducted multiple successful launches for NASA and that SpaceX is qualified to compete *today* for all of the Air Force's Single Core Launch Vehicles, the Air Force intends to sole source to ULA a significant number of Single Core Launch Vehicles that are scheduled to launch in FY2017-FY2019.[16]

**B. SpaceX Becomes an Established Launch Provider.**

32.     SpaceX was founded in 2002 for the purpose of manufacturing and launching advanced rockets and spacecraft.  It does so at a fraction of the cost charged by the existing manufacturers.  Recent years have seen repeated historic successes by the company, and much has changed since SpaceX learned in 2005 that its *expected* ability to compete was insufficient to

---

[14] U.S. Government Accountability Office, "Uncertainties in the Evolved Expendable Launch Vehicle Program Pose Management and Oversight Challenges," September 2008, 7, available at http://www.gao.gov/products/GAO-08-1039; 20-21.  U.S. Government Accountability Office, "Assessments of Selected Weapon Programs," March 2013, 59, available at http://www.gao.gov/assets/660/653379.pdf.

[15] Otto Kreisher, "Spy Sat Costs 'Unsustainable,' Warns Space Commander," Nov. 7. 2012, available at http://breakingdefense.com/2012/11/spy-sat-costs-are-unsustainable-warns-space-commander-btw-d/.

[16] The third justification for permitting ULA to monopolize the EELV market—that access to space would be assured by maintaining two distinct launch systems—is also highly dubious.  First, this justification was premised on the proposition that two US launch services providers could not survive absent a monopoly; but SpaceX has been able, and continues, to develop, manufacture, and sell launch services without being permitted to participate in the EELV market at all, let alone do so as a monopolist.  Second, it was also premised on the notion that ULA would use two distinct launch systems; in fact, both the Boeing and Lockheed systems use the same upper stage engine, creating a common point of potential failure between the two and undercutting the notion of "assured access" to space.

disturb the Air Force's continuing sole source orders from ULA. *See Space Exploration Techs. Corp. v. United States*, 68 Fed. Cl. 1 (2005) (*SpaceX*). What has not changed has been the painfully intransigent approach by the Air Force, which began in 2007, to certify a launch services provider to compete with ULA.

33.     On March 22, 2005, the Air Force published a pre-solicitation notice for the third installment of EELV launches or "Buy 3." At the time, SpaceX was less than three years old, did not yet have a qualified launch vehicle, did not intend to compete for the Buy 3 launches, and did not submit a statement of interest to the Air Force. SpaceX challenged the Buy 3 launches for FY06, however, in a bid protest in this Court. The Court described SpaceX as a "promising entrant" to the Air Force's EELV program but nonetheless determined that SpaceX was not an interested party under CICA because it was not an actual or prospective bidder for the FY2006 launches at issue and would not be qualified to perform any launches until FY2007 at the earliest. *Id.* at 4-5.[17]

34.     In the nine years since that ruling, however, SpaceX has proven that it is capable of meeting the Air Force's needs. SpaceX has developed its groundbreaking Falcon family of launch vehicles and the Dragon spacecraft. The Falcon 9, a two-stage launch vehicle, has been designed such that it can carry a large portion of the EELV Program's missions.

35.     Unlike ULA—whose launch vehicles incorporate major components from foreign manufacturers, including controversial Russian-made RD-180 engines and Swiss-made fairings—SpaceX manufactures its Falcon launch vehicles almost entirely in-house in the United

---

[17] During the 2005 protest litigation, the Air Force committed to solicit interest from new entrants on an annual basis and only award sole source launches for each year in which there was no new qualified competition. *SpaceX*, 68 Fed. Cl. at 5. Apparently, it no longer intends to honor that approach.

States.  SpaceX's nine consecutive successful launches of the Falcon 9 demonstrate the vehicle's architectural reliability.  In fact, according to the Aerospace Corporation, seventy-five percent of all new launch vehicles have at least one failure in the first three flights.  The Falcon 9 has not experienced a single failure through nine flights.

36.     Indeed, SpaceX is rapidly eclipsing ULA's manufacturing capabilities.  For example, SpaceX far exceeds the engine production of ULA suppliers and is one of the largest, if not the largest, liquid fuel rocket engine manufacturers in the world; by the end of the year it will have the capability to produce 40 rocket cores and nearly 400 engines annually.[18]

37.     To date, the Falcon 9 launch vehicle has successfully performed the following missions—consecutively—for both U.S. Government and commercial customers:

| Flight No. | Date | Primary Customer | Primary Payload |
|---|---|---|---|
| 1 | 4 June 2010 | SpaceX | Dragon Spacecraft Qualification Unit |
| 2 | 8 December 2010 | NASA | Dragon Spacecraft (COTS 1) |
| 3 | 22 May 2012 | NASA | Dragon Spacecraft (COTS 2+) |
| 4 | 8 October 2012 | NASA | Dragon Spacecraft (CRS-1) |
| 5 | 1 March 2013 | NASA | Dragon Spacecraft (CRS-2) |
| 6 | 29 September 2013 | MDA Corp. | CASSIOPE satellite |
| 7 | 3 December 2013 | SES | SES-8 satellite |
| 8 | 6 January 2014 | THAICOM | THAICOM 6 satellite |
| 9 | 18 April 2014 | NASA | CRS-3 |

38.     In addition, SpaceX has the following upcoming contracted missions on its manifest through 2017:

| Customer | Payload | Launch Site | Launch Vehicle |
|---|---|---|---|
| ORBCOMM | OG2 satellite | Cape Canaveral | Falcon 9 |
| AsiaSat | AsiaSat 8 satellite | Cape Canaveral | Falcon 9 |
| AsiaSat | AsiaSat 6 satellite | Cape Canaveral | Falcon 9 |

---

[18] SpaceX is also developing the Falcon Heavy to serve the heavy-lift category of launch vehicles; it is currently undergoing final design, and SpaceX expects it to be qualified to compete for EELV launches starting in FY2017.

| Customer | Payload | Launch Site | Launch Vehicle |
|---|---|---|---|
| NASA | CRS-4 | Cape Canaveral | Falcon 9 |
| ORBCOMM | OG2 satellite | Cape Canaveral | Falcon 9 |
| NASA | CRS-5 | Cape Canaveral | Falcon 9 |
| NASA | CRS-6 | Cape Canaveral | Falcon 9 |
| Space Systems/Loral | | Cape Canaveral | Falcon 9 |
| Thales Alenia Space | Turkmenistan NSSC satellite | Cape Canaveral | Falcon 9 |
| United States Air Force | DSCOVR satellite | Cape Canaveral | Falcon 9 |
| CONAE | SAOCOM 1A satellite | Vandenberg | Falcon 9 |
| Asia Broadcast Satellite/Satmex | ABS/Satmex payloads | Cape Canaveral | Falcon 9 |
| NASA | JASON-3 satellite | Vandenberg | Falcon 9 |
| NASA | CRS-7 | Cape Canaveral | Falcon 9 |
| NSPO | Formosat-5 satellite | Vandenberg | Falcon 9 |
| Spacecom | AMOS-6 satellite | Cape Canaveral | Falcon 9 |
| NASA | CRS-8 | Cape Canaveral | Falcon 9 |
| NASA | CRS-9 | Cape Canaveral | Falcon 9 |
| NASA | CRS-10 | Cape Canaveral | Falcon 9 |
| Bigelow Aerospace | Bigelow payload | Cape Canaveral | Falcon 9 |
| SKY Perfect JSAT Corporation | JCSAT-14 satellite | Cape Canaveral | Falcon 9 |
| SES | SES-9 satellite | Cape Canaveral | Falcon 9 |
| CONAE | SAOCOM 1B satellite | Vandenberg | Falcon 9 |
| Iridium | NEXT Flight 1 | Vandenberg | Falcon 9 |
| Iridium | NEXT Flight 2 | Vandenberg | Falcon 9 |
| United States Air Force | STP-2 satellite | Cape Canaveral | Falcon Heavy |
| Asia Broadcast Satellite/Satmex | ABS/Satmex payload | Cape Canaveral | Falcon 9 |
| NASA | CRS-11 | Cape Canaveral | Falcon 9 |
| NASA | CRS-12 | Cape Canaveral | Falcon 9 |
| Iridium | NEXT Flight 3 | Vandenberg | Falcon 9 |
| SpaceX | DragonLAB Mission 1 | Cape Canaveral | Falcon 9 |
| Iridium | NEXT Flight 4 | Vandenberg | Falcon 9 |
| Iridium | NEXT Flight 5 | Vandenberg | Falcon 9 |
| SES | SES-10 satellite | Cape Canaveral | Falcon 9 |
| Iridium | NEXT Flight 6 | Vandenberg | Falcon 9 |
| Iridium | NEXT Flight 7 | Vandenberg | Falcon 9 |
| Intelsat | Intelsat payload | Cape Canaveral | Falcon Heavy |

39.     Clearly, much has changed since the Court's ruling in 2005. There does not appear to be a single U.S. Government agency, foreign government, or commercial customer in the world that has yet to acknowledge the Falcon 9's capabilities. Indeed, the Air Force itself has ordered two launches from SpaceX for the carriage of national security payloads, but just not through the EELV Program, which offers by far the single biggest market for launch services.

**C. ULA's Sole Source EELV Awards Face Criticism.**

40.     The GAO has published a number of reports that are highly critical of the EELV

Program and procurement processes.  For example, in a 2011 report noting serious flaws in the

EELV program, the GAO stated that, according to Defense Contract Audit Agency (DCAA)

reports, "ULA proposals contain inadequate cost or pricing data that make it difficult for DOD to

assess the adequacy and fairness of launch prices and the cost-effectiveness of launch

operations." U.S. Gov't Accountability Office, GAO-11-641, Evolved Expendable Launch

Vehicle: DOD Needs to Ensure New Acquisition Strategy Is Based on Sufficient Information 13

(2011).

41.     The 2011 GAO report also noted that, in making the decision for a planned 40-

core sole source block buy from ULA, the Air Force relied upon a highly flawed survey

conducted by ULA. *Id.* at 10-12 (stating that the GAO's "analysis determined the survey was

neither designed nor administered in a manner consistent with sound survey methodology

practices, and in some cases, survey results presented to DOD could not be linked back to the

survey questions."). The survey was sent to ULA's suppliers with a cover letter that the GAO

found went "beyond the standard acceptable practices" by including comments from ULA's

Chief Executive Officer Michael Gass on DoD's "inefficient" method to acquire launch vehicles

and that the goal of the ULA supplier survey was to "justify" a new acquisition strategy. *Id.* at

11. The GAO report further described how ULA manipulated the survey with suggested answers

given to respondents because, "[a]ccording to one ULA official, 'we wanted certain answers.'"

*Id.*

**D. The 2012 Solicitation and J&A**

42. In May 2011, the Air Force issued a Request for Information regarding contractors' domestic launch capacities. SpaceX, along with two other new entrants, submitted a response expressing interest and demonstrating the ability to perform launches in the near future.

43. On January 27, 2012, the Air Force issued a J&A to support a proposed sole source "block buy" from ULA. The justification cited by the Air Force was FAR 6.302-1 – "only one responsible source." The J&A identified ULA as the "only launch provider that can meet the requirements for EELV-class NSS missions." The J&A explained that the Government "determined that no source other than [ULA] is capable of meeting the SPRD requirements until FY16."

44. Critically, the J&A stated: "This J&A provides sole source authority for two acquisitions **until a full-and-open competition is feasible**." (emphasis added) Thus, as soon as full-and-open competition was "feasible," the J&A required the Air Force to conduct it. Any subsequent contract that precluded competition was therefore outside the authority of the J&A.

45. In March 2012, the Air Force issued a solicitation proposing to award a sole source requirements contract to ULA. The solicitation asked ULA to propose prices for anywhere from 18 (6 per year for 3 ordering years) to 50 (10 per year for 5 ordering years) cores.[19] The solicitation also asked ULA to submit detailed cost and pricing data for a scenario under which the Air Force ordered eight cores per year from FY2013-FY2017, for a total of 40 cores, and "parametric or other analysis and judgmental estimating techniques" for the other "procurement options." RFP, Attach. 2, Pricing Decision Data Instructions; *see also* Model Contract Attach. 10, VIQC Tables (requiring ULA to insert pricing into matrices that ordered

---

[19] Note that for heavy capacity payloads, a single launch will include multiple cores.

anywhere from 0 to 10 cores of a particular type in a given year).  The Air Force intended to

review the multiple pricing options and use them as a basis for negotiating another "block buy"

with ULA.[20]

### E. The Under Secretary of Defense's Acquisition Decision Memorandum, and the Air Force's Commitment to Compete Launches When a New Entrant Becomes Qualified.

46.     After further review and consideration of the facts,[21] on November 27, 2012,

Under Secretary of Defense Frank Kendall issued an Acquisition Decision Memorandum

("ADM").  The ADM sought "to maintain required mission assurance, **obtain the positive**

**effects of competition as quickly as possible,** and also reduce the cost of the launch services

[the Government] must procure from ULA." (emphasis added).  Under Secretary Kendall stated:

> I authorize the Air Force to negotiate with [ULA] based on an acquisition strategy that
> plans to procure **up to 36** EELV cores across 5 years (FY 2013 - FY 2017) from ULA
> and **up to an additional 14** cores from ULA under the Variation in Quantity and
> Configuration provisions if competition is not viable at time of need.  The Air Force may
> not exceed the obligation authority established by my Acquisition Decision Memoranda
> (ADMs) of July 12, 2012, and September 25, 2012, until the Acquisition Program
> Baseline (APB) is approved.

---

[20] The Air Force never posted a copy or notice of any sole source contract with ULA on
FedBizOpps.  On October 22, 2013, and December 19, 2013, the Air Force issued two purchase
orders worth nearly $1.5 billion to ULA under "letter contract" number FA8811-13-C-0003,
effective June 26, 2013.  SpaceX has not seen the letter contract or either purchase order, and has
no knowledge of their respective terms and conditions.  SpaceX bases the allegations in this
Complaint regarding what particular vehicle configurations were ordered in October and/or
December 2013 largely on the 2015 Budget Request (released in March 2014) and recent
statements by Air Force officials.

[21] This review included, for example, the fact that EELV Program costs had risen
drastically since ULA began performing launches on a sole source basis, and the potential harm
to U.S. interests that could result from sole sourcing all launches to a provider that used Russian-
built RD-180 engines rather than developing a robust industrial base with multiple competitors in
the United States.

**I direct the Air Force to aggressively introduce a competitive procurement environment in the EELV program by competing up to 14 cores with initial contract awards as early as FY 2015 for missions that can be flown as early as FY 2017.**

(emphasis added).

47.     Additionally, Under Secretary Kendall ordered the Secretary to:

**Take action to compete missions in such a way as to start awarding them as soon as possible after a new entrant is certified in the EELV program.** After a new entrant's first successful certification launch, the Air Force shall consider awarding an early integration contract to that new entrant for one or more candidate satellite missions.

*Id.* (emphasis added).

48.     Under Secretary Kendall explained that the "up to" 36 cores for ULA was based on the belief that "no emerging new launch entrant has developed or capabilities (sic) that are required for operational needs before the earliest new launch entrant's anticipated availability." *Id.* The "up to 14 cores available for competition" requirement was designed in case "emerging new entrants have the required launch capability on a schedule to support all or some of these launches." *Id.* Finally, Under Secretary Kendall directed the Air Force to "enable this competition by planning for early integration of the candidate satellite missions." *Id.*

49.     The plain language of the ADM was consistent with oral and written communications from the Air Force to SpaceX and others at the time, which committed the Air Force to compete future launches as soon as a new entrant became qualified to complete for them. Importantly, a new entrant could compete for launches before being certified to launch, so long as it would be certified prior to receiving an award.

50.     Deputy Assistant Secretary of Defense for Space and Intelligence Gil Klinger testified before the House Armed Services Committee at an April 25, 2013, hearing that DoD was moving forward as quickly as possible to introduce competition into the EELV program. Mr. Klinger cited the EELV program as a "significant" example of improving acquisition by on-

ramping competition to compete with the incumbent provider. Through competition, he stated, "an estimated savings of over $1 billion in Future-Year Defense Program over the Fiscal Year 2013 President's Budget estimate" would be realized "without excessive and unacceptable risk." G. Klinger Statement for the Record, Apr. 25, 2013, available at http://docs.house.gov/meetings/AS/AS29/20130425/100708/HHRG-113-AS29-Wstate-KlingerG-20130425-U1.pdf.

51. Based on the ADM's clear mandate and communications from Air Force officials, SpaceX understood that it would be permitted to perform future launches as soon as it was certified, which would necessarily require that SpaceX be permitted to compete for future missions at some point prior to certification.

### F. SpaceX Completes All Requirements to Be Qualified to Compete for Single Core Launch Vehicles, and Will Be Certified to Perform EELV Launches This Year.

52. On February 7, 2012, to achieve certification to perform EELV launches, SpaceX submitted its Statement of Intent and certification approach plan for the Falcon 9. This initial plan anticipated that the Air Force and SpaceX would begin certification activities and conclude the planned effort by the end of 2013. After submitting the draft plan, SpaceX engaged in continuous discussions with the Air Force to finalize the plan during the next year, with the Air Force finally granting its approval on June 6, 2013, by signing a Cooperative Research and Development Agreement (CRADA) and Certification Plan.

53. The Plan required SpaceX to successfully launch three missions—two consecutively—using its Falcon 9 launch vehicle in the same configuration that would be used for EELV launches. This meant that any Falcon 9 launch to resupply the International Space Station—which requires the Falcon 9 to carry SpaceX's Dragon spacecraft rather than a satellite within a payload fairing—would not count toward the three launch requirement. This

requirement further delayed completion of the certification activities. Even so, SpaceX met the certification plan's flight requirement on January 6, 2014, when it completed its third consecutive successful launch, all in a five-month period. The Air Force has formally qualified SpaceX's first mission as a success that counts towards certification and is currently reviewing final flight data from SpaceX's second and third successful missions. In a January 9, 2014, Space News article, Gen. William Shelton, commander of Air Force Space Command, said he "has not seen anything from the vehicle's three flights to date to prevent [certification] from happening."

54.     Pursuant to the EELV New Entrant Certification Guide, the Air Force is also conducting testing and validation, engineering review board examinations, and audits on the launch vehicle prior to final certification. SpaceX and the Air Force have both stated they expect to complete certification by the end of the year.

55.     As of March 22, 2014, SpaceX had submitted the flight data from its final certification launch to the Air Force, thereby complying with the requirement stated by Under Secretary Kendall in his January 24, 2013, letter to the GAO's Director of Acquisition and Sourcing Management that the Department of Defense "will allow new entrants to compete for launch contract awards as soon as the new entrant delivers the data from their final certification launch."[22]

---

[22] On March 20, 2014, the Air Force issued a letter that violates Under Secretary Kendall's representation to the GAO that the competitive solicitations be issued for future launch vehicle orders as soon as SpaceX submitted its flight data from its third qualifying launch. While recognizing that competition and final certification should occur "in parallel," the March 20 letter imposed additional requirements for an RFP release such as the Air Force completing its review of various systems and determining to proceed with RFP release after a "risk assessment." In other words, no matter what SpaceX did, the Air Force held the power to delay release of future RFPs. Due to the upcoming FY2015 buys and the Air Force imposed June 1

**G. Recent Statements From Air Force Officials Indicate That the Air Force Will Continue to Order Single Core Launch Vehicles on a Sole Source Basis.**

56. The Air Force has typically provided SpaceX with its National Mission Model—which projects EELV missions requiring launch vehicles—on request. The Air Force, however, has not released to SpaceX the updated 2014 National Mission Model. As a result, SpaceX must rely on the September 2013 National Mission Model and subsequent public statements from the Air Force to identify upcoming EELV missions. Using this information, SpaceX believes that about 24 EELV missions are scheduled to launch in FY2017-FY2019.

57. SpaceX has not been provided with the precise performance requirements of many EELV missions, but based on internal analysis, it appears that of the core configurations that the Air Force plans to order in FY2015-FY2017 for missions that are scheduled for launch during FY2017-FY2019, about 22 will use Single Core Launch Vehicles.

58. Of these, however, the Air Force has indicated that SpaceX would at most be allowed to compete for only the following seven missions, if any:

- FY2017 Launch Date: (1) NROL-79
- FY2018 Launch Date: (2) AFSPC-9, (3) GPS III-4
- FY2019 Launch Date: (4) SBIRS-5, (5) NROL-47, (6) GPS III-5, (7) GPS III-6

To SpaceX's knowledge, the Air Force has not issued a J&A to demonstrate or explain why it believes SpaceX is not qualified to compete for the other fifteen missions, or any other future Single Core Launch Vehicle.

59. Despite the fact that SpaceX is now qualified to compete for these missions and will be certified to perform them long before they are scheduled to launch, recent statements

---

deadline for RFP release, these additional unnecessary requirements put SpaceX's ability to compete for FY2015 buys at risk.

from Air Force officials indicate that it intends to continue to order Single Core Launch Vehicle on a sole source basis from ULA. For example, on March 5, 2014, Space News reported, based on a media availability regarding the Air Force FY2015 budget roll-out held by Air Force officials, that the Air Force is "halving the number of space launches to be competitively awarded from 2015 to 2017," further stating that ". . . the planned slowdown in procurement of GPS 3 satellites, first disclosed March 4 as part of U.S. President Barack Obama's 2015 budget request to Congress, would push the award of five of the associated launch contracts beyond 2017," and "two other satellites that previously were slated to fly on competitively selected rockets will now be launched by ULA." Mike Gruss, *U.S. Air Force Halves Size of Competitive EELV Procurement,* Space News, March 5, 2015, available at http://www.spacenews.com/article/military-space/39772us-air-force-halves-size-of-competitive-eelv-procurement.

60.     Subsequent reports the next day further clarified the situation, stating that the Air Force "is expected to offer half of the 14 launches it had anticipated would be suitable for competition from 2015-2017, limiting the near-term opportunities for Space Exploration Technologies (SpaceX) to duel with rival United Launch Alliance." Amy Svitak, *USAF Cuts Near-Term Competitive Launches*, Aviation Weekly, Mar. 6, 2014, available at http://www.aviationweek.com/Article.aspx?id=/article-xml/awx_03_06_2014_p0-669531.xml. More specifically, it was reported that "five GPS missions slated for 2017 have been shifted beyond that date," and in order "to fulfill the requirement to provide [ULA] with 36 cores worth of work," the Air Force has started pulling missions (at least two so far) from the 14 launches designated for competition. *Id.*

61.     The press reports were confirmed on April 21, 2014, in a letter from Secretary of the Air Force Deborah Lee James to Senator Diane Feinstein. In that letter, Secretary James stated that it reduced the number of future competed Single Core Launch Vehicles from fourteen to seven. Secretary James stated that five of the seven launches that the Air Force no longer intends to compete were the result of changing needs for its fleet of Global Positioning System satellites.[23] Secretary James also stated that two other formerly competitive launches were "reallocated" to be sole sourced from ULA. She explained that one launch was reallocated because the lift requirements for that launch "are outside the planned certified Falcon 9 v1.1 lift capabilities as we now understand them."

62.     Secretary James did not state *why* she believed the Falcon 9 could not lift this particular Single Core Launch Vehicle. SpaceX is not aware of any J&A or other documentation supporting such a determination.

---

[23] At some point prior to March 6, 2014, the Air Force decided to postpone indefinitely five satellite missions, GPS III-7, -8, -9, -10, and -11, all of which had previously been designated by the Air Force as missions to be competed with launches to be executed in FY2018-FY2019. The Air Force justified the delay based on its view that the GPS constellation of satellites is "healthy." This justification is seemingly inconsistent with the Air Force's prior representations that the constellation is fragile and in need of imminent replenishment. E.g., Gen. William Shelton, remarks at a Mitchell Institute breakfast (2/7/2014), available at http://www.nationaldefensemagazine.org/blog/Lists/Posts/Post.aspx?ID=1402 ("'Some of them are old enough to vote,' he said. They are getting a little 'fragile. We are a little concerned about the long-term viability of some of the satellites there,' Shelton said.); Col. William Cooley, Global Positioning Systems director (2/20/2014), available at http://www.space.com/24767-gps-satellite-launch-success-delta4-rocket.html ("We have a lot of satellites well past their design life. In this particular case, the satellite we are replacing is over 16 years old and its design life was 7.5 years. We are trying to prevent any sort of outage and having some backup capability on-orbit." ... "Sometimes we joke those are getting old enough to vote and some are old enough to drink, and they're well past their design life. The oldest is 23 years. We've gotten remarkable performance out of them, but they are aging."). It is also inconsistent with the fact that the Air Force recently funded certain GPS III missions as "early to need" on a sole source basis to ULA. Regardless, SpaceX is not at this time protesting the indefinite delay of these five missions. All SpaceX asks is that *whenever the Air Force decides to order these missions*, it does so through full and open competition in accordance with the law.

63.    According to Secretary James, the second reallocated launch was "due to changes elsewhere in our manifest in order to meet our existing 36-core contractual requirement with [ULA]. This contract, which was signed on December 18, 2013, enabled the Air Force to obtain savings by taking advantage of economies of scale." Secretary James recognized "that competition and the existence of a competitive environment are essential to locking in savings for the future[,]" and stated that the Air Force would look for additional opportunities for competition "without breaking the 36-core contract."

64.    The Air Force did not publish notice of an award of a December 18, 2013, "36-core commitment contract," and SpaceX has not seen a copy of any such contract. Furthermore, SpaceX is not aware of any J&A that supports the Air Force entering into a contract to purchase a minimum of 36-cores through FY2017. Certainly, the January 2012 J&A, *supra* ¶¶ 32-35, was severely outdated by December 18, 2013, when SpaceX was only days away from its final EELV Program qualifying launch. Any decision to enter into a long-term sole source contract with ULA on December 18, 2013, *only days before SpaceX completed its final qualifying launch*, in order to achieve "economies of scale" was patently irrational. Any price savings that the Air Force received from ULA as a result of the 36-core guarantee is dwarfed by the savings achieved through competition. The Air Force will spend an estimated $400 million for each launch purchased from ULA, while SpaceX anticipates a price of roughly $100 million for the exact same services. *Infra* ¶¶ 63-64. Whatever "savings" ULA promised to the Air Force to induce it to enter into a multi-year sole source contract, those "savings" are *far* less than the $300 million in savings for *each launch* purchased through competition from SpaceX.

65.    Finally, based on recent conversations with Air Force officials and consistent with Secretary James's April 21 letter, SpaceX understands that the Air Force believes it has to

25

procure from ULA a certain minimum "guaranteed" number of launch vehicle cores in each and every fiscal year (subject to appropriations) before it can open the procurement of *any launch vehicles* to competition.  In other words, unless the Court directs otherwise, SpaceX will lose the opportunity to compete for hundreds of millions of dollars of business for which it is qualified compete, every year through FY2019.

66.     The Air Force has not provided any rational basis for failing to compete EELV launch vehicles for which SpaceX is a qualified competitor.  Indeed, the Air Force's conduct reveals that there is no rational basis.  For example, the Air Force has stated that it *may* issue a solicitation allowing SpaceX to complete for the launch vehicle for the NROL-79 mission to be launched in FY2017.  If the Air Force recognizes that SpaceX is eligible to compete for *any* Single Core Launch Vehicles in FY2017, it cannot rationally find that SpaceX is *ineligible* to compete for the other Single Core Launch Vehicle missions scheduled to launch in FY2017 or for those launches planned for FY2018 or FY2019.  The fact is SpaceX is qualified to compete *today* for all of the Single Core Launch Vehicle missions scheduled to launch in FY2017– FY2019.  Moreover, SpaceX would be *certified to launch* these missions prior to the Air Force's award of the Single Core Launch Vehicle for that mission were the Air Force were to conduct a competition as required by law.

**H. The Air Force Improperly "Early Awarded" One Launch Vehicle in December 2013, Three Years Prior to the Anticipated Launch Date.**

67.     On December 16, 2013, the Air Force improperly "early awarded" at least one Single Core Launch Vehicle for a mission that is not scheduled to launch until FY2017, *three years later*: GPS III-2 (scheduled for launch in FY2017).  This award (purchased under Contract No. FA8811-13-C-0003) was inconsistent with Air Force acquisition practice, which provides that all Single Core Launch Vehicles are to be ordered two years in advance of launch.

68. Had the Air Force properly waited to order this launch vehicle until two years prior to its mission launch date, SpaceX would have been able to compete for and likely win that launch vehicle.

**I. The Continued Use of Less Than Full and Open Competition Will Cost Taxpayers Close to $6.6 Billion.**

69. The GAO has stated that competition in the EELV program will offer an "unprecedented" opportunity to lower costs by creating an incentive for ULA to become more efficient. U.S. Gov't Accountability Office, GAO-11-641, Evolved Expendable Launch Vehicle: DOD Needs to Ensure New Acquisition Strategy Is Based on Sufficient Information at 15 (2011). The U.S. Federal Trade Commission ("FTC") declared in a 2006 letter that the formation of ULA would "unambiguously create a monopoly" and that the lack of competition in the market will "reduce the rate of innovation and other non-price benefits and increase the prices that the government . . . would pay for these services." M. Moiseyev Letter, July 6, 2006. Even ULA has admitted that competition can reduce costs of the program. Senate Appropriations Subcommittee on Defense Hearing, Mar. 5, 2014, Tr. at 21 (In response to the question asked by Senator Dick Durbin of whether price competition is going to give taxpayers a lower cost, Mr. Michael Gass, President and CEO of ULA, responded: "It can.").

70. As the GAO and the FTC predicted, reliance on a sole source provider has caused prices to rise. Senator Durbin recently stated before the Senate Appropriations Subcommittee on Defense, "From 2011 to 2014, the amount the Air Force budgeted for an average of six satellite launches per year grew by 60 percent in that three-year period." Senate Appropriate Subcommittee on Defense Hearing, Mar. 5, 2014, Tr. at 1. The most recent independent cost estimate anticipates that the EELV program will now cost close to *$70 billion* through 2030. *Id.* at 15.

71.     The difference in cost between an Air Force-funded ULA launch and a SpaceX launch is striking. Based on the Air Force's budget submittals, each national security launch conducted by ULA in FY2015 will cost the Air Force on average $400 million.[24] By contrast, extrapolating the prices that SpaceX typically charges for comparable commercial missions and factoring in the Air Force's particular mission assurance requirements, SpaceX estimates that it would need to charge around $100 million to launch an EELV payload on a Falcon 9—i.e., less than one-fourth the cost of a ULA launch. As a result, were the Air Force to sole source the Single Core Launch Vehicles that it intends to procure over the next three years, taxpayers would pay nearly $6.6 billion more than if those missions were competed and awarded to SpaceX.

72.     Despite the evidence that competition will result in lower costs to the Government, and the availability of a qualified and lower priced competitor, the Air Force has decided to sole source a significant number of Single Core Launch Vehicles over the next three years, all of which that should be subject to competition.

---

[24] This sum is comprised of: (1) ULA's base per Single Core Launch Vehicle of $210 million in FY2015 (EELV Launch Services); and (2) ULA's existing development subsidies and annual launch capability subsidies, which are paid to ULA through a separate contract line item, spread over the Single Core Launch Vehicles that are expected to be purchased over the fiscal year (Space Expendable Launch Capability), *see* http://www.saffm.hq.af.mil/shared/media/document/AFD-140310-044.pdf. This total does not include any funding provided by the NRO for both launch services and launch capability. The launch services costs for the NRO are classified; however, per the FY15 budget, the Air Force and the NRO split total expenses in the SELC 75/25. Therefore, it may be derived that the DOD as a whole, when considering the combined totals of the Air Force and the NRO, provides a subsidy towards ULA's fixed costs of more than $1 billion per year. Further, the Air Force has provided ULA with in excess of $250 million in funding since 2006 for vehicle improvements.

## COUNT I - DECLARATORY JUDGMENT THAT THE AIR FORCE MUST PROCURE EELV LAUNCH VEHICLES CONSISTENT WITH CICA AND FAR PART 6.

73.     SpaceX incorporates by reference paragraphs 1-72 of the Complaint as if fully set forth herein.

74.     The Court of Federal Claims may grant the relief it considers proper, including declaratory and injunctive relief, where a protester succeeds in establishing prejudicial error. *California Indus. Facilities Res., Inc. v. United States*, 100 Fed. Cl. 404, 410 (2011) (citing 28 U.S.C. § 1491(b)(2); *Lumetra v. United States*, 84 Fed. Cl. 542, 549 (2008)).

75.     Here, the Air Force has continued to issue sole source orders to ULA even though SpaceX is eligible to compete for these missions. The Air Force's continued use of sole source orders to ULA violates well-established law.

76.     CICA, which amended 10 U.S.C. § 2304, seeks to make government contracting more efficient and to bring the benefits of competition to government procurements. CICA was enacted in part because of Congressional concern that federal agencies were paying too high a price in their procurement of products and services. CICA was "designed to increase the use of competition in government contracting and to impose more stringent restrictions on the awarding of noncompetitive 'sole source' contracts." H.R. Conf. Rep. No. 861, 98th Cong., 2d Sess. at 1421, reprinted in 1984 U.S. Code Cong. & Ad. News 697, 1445, 2109. The Conference Report on CICA rejected "effective" competition as too low a standard for government procurements, and instead substituted "full and open" competition as the standard, "to emphasize that all responsible sources are permitted to submit bids or proposals for a proposed procurement." *Id.* at 1422, 2110. Accordingly, "full and open competition" means that "all responsible sources are permitted to submit sealed bids or competitive proposals on the procurement." 10 U.S.C. § 2302(3).

77.     Application of CICA anticipates that an agency will make a reasoned determination as to which procedures – competitive or otherwise – would best serve the interests of the Government.  To that end, CICA mandates that the Air Force, among other federal agencies, must use full and open competition when procuring property or services, unless an express statutory exception applies:

> [e]xcept in the case of procurement procedures otherwise expressly authorized by statute, the head of an agency in conducting a procurement for property or services – (A) shall obtain full and open competition through the use of competitive procedures in accordance with the requirements of this chapter and the Federal Acquisition Regulation . . .

10 U.S.C. § 2304(a)(1).

78.     CICA allows a departure from full and open competition only in narrowly defined circumstances. *See Savantage Fin. Servs., Inc. v. United States*, 81 Fed. Cl. 300, 306-07 (2008). Included among the limited exceptions to full and open competition is when the supplies or services required by the agency are available from only one or a limited number of responsible sources and no other type of supplies or services will satisfy the agency's requirements:

> (c) The head of an agency may use procedures other than competitive procedures only when –
>
> (1) the property or services needed by the agency are available from only one responsible source or only from a limited number of responsible sources and no other type of property or services will satisfy the needs of the agency.

10 U.S.C. § 2304(c)(1).

79.     FAR Part 6 implements CICA's statutory requirement for full and open competition.  FAR 6.101.  Contracting without providing for full and open competition is limited to specified limited circumstances.  FAR 6.301.  "When not providing for full and open competition, the contracting officer shall solicit offers from as many potential sources as is practicable under the circumstances."  FAR 6.301.

80.     In accordance with CICA's requirements for full and open competition, both this

Court and the GAO have repeatedly sustained protests in which the agency failed to adequately

justify limiting competition. *E.g.*, *McAfee, Inc. v. United States*, 111 Fed. Cl. 696, 711 (2013)

("the Air Force c[ould] not claim that there were no other options available but to pursue the

sole-source procurement, and c[ould] not justify its failure to evaluate other options

competitively"); *Innovation Dev. Enters. of Am., Inc. v. United States*, 108 Fed. Cl. 711 (2013)

(Air Force's determination that incumbent contractor was only responsible source was

unreasonable where Air Force performed no market research and failed to meaningfully consider

capabilities of other potential sources); *Savantage Fin. Servs*, 81 Fed. Cl. at 308 (stating that "the

technical and administrative superiority of a given firm over all other possible sources has never

been accepted as a justification for sole-source procurement from that firm" and sustaining

protest where agency failed to "evaluate the merit of each offeror's product through the

competitive lens") (citations and quotation marks omitted); *HEROS, Inc.*, B-292043, 2003 CPD

¶ 111 (the record demonstrated that the agency failed to reasonably consider alternative methods

of procuring its requirements); *Saberliner Corp.*, B-288030.2, 2001 CPD ¶ 170 (protest sustained

where agency failed to justify its intended sole source contract); *Lockheed Martin Systems

Integration -- Owego*, B-287190.3, 2001 CPD ¶ 110 (agency's sole source determination was

based on a flawed assessment of protester's capabilities and was unreasonable).  Moreover, the

law is clear that contracting officials have a duty to promote and provide for competition to

obtain the most advantageous contract for the Government. *See National Aerospace Group, Inc.,*

B-282843, 99-2 CPD ¶ 43 (contracting officials must act affirmatively to obtain and safeguard

competition); *TeQcom, Inc.*, B-224664, 86-2 ¶ 200 (contracting officials cannot take a docile

approach and remain in a sole source situation when they could reasonably take steps to enhance competition); *Precision Logistics, Inc.*, B-271429, 96-2 CPD ¶ 24.

81.     Based on the factual allegations and legal support above, SpaceX asks for declaratory judgment that the Air Force's continued procurement of Single Core Launch Vehicles from ULA on a sole source basis violates CICA's mandate for full and open competition.

### COUNT II - REQUEST FOR PERMANENT INJUNCTIVE RELIEF TO DIRECT THE AIR FORCE TO CONDUCT FULL AND OPEN COMPETITION FOR ALL FUTURE ORDERS FOR EELV SINGLE CORE LAUNCH VEHICLES

82.     SpaceX incorporates by reference paragraphs 1-81 of the Complaint as if fully set forth herein.

83.     As demonstrated above, there is no lawful justification for the Air Force to continue to issue sole source orders from ULA for Single Core Launch Vehicles for which SpaceX is qualified to compete.  Accordingly SpaceX requests that the Court permanently enjoin the Air Force from procuring any Single Core Launch Vehicles on a sole source basis without first releasing to the public a valid justification and approval determination for the specific launch vehicle to be ordered.

84.     According to the 2013 National Mission Model, this relief will encompass at least 22 Single Core Launch Vehicles scheduled to be ordered through FY2017.  Importantly, the requested relief also would encompass all future Single Core Launch Vehicles not identified here.

85.     Absent the requested injunctive relief, SpaceX will suffer irreparable harm.  If the Air Force is permitted to continue with its unlawful sole source orders, SpaceX will be denied the opportunity to compete for launch vehicles worth *billions* of dollars.

86.     Granting the requested relief is in the public's interest.  The public has an overriding interest in preserving the integrity of the federal procurement process by requiring the Government to follow its own statutes and regulations.  Moreover, the public has a strong interest in promoting full and open competition and obtaining the best value for its tax dollars.  It is most certainly not in the public's interest to pay outrageous prices and subsidize favored contractors through inflated sole source contracts.

87.     Finally, the Air Force would suffer no hardship – indeed it would benefit – by promoting competition and increasing the chance that it will actually receive the best value proposal.  In contrast, SpaceX would suffer great hardship by being denied the ability to compete for and earn a profit from the Single Core Launch Vehicles.  Accordingly, the balance of hardships weighs in favor of granting the requested relief.

**COUNT III - REQUEST FOR PERMANENT INJUNCTIVE RELIEF TO DIRECT THE AIR FORCE TO CONDUCT FULL AND OPEN COMPETITION FOR ANY DECEMBER 2013 "EARLY ORDER" LAUNCH VEHICLES THAT ARE NOT SCHEDULED TO LAUNCH UNTIL FY2017**

88.     SpaceX incorporates by reference paragraphs 1-87 of the Complaint as if fully set forth herein.

89.     For the reasons stated above, SpaceX requests that the Court direct the Air Force to vacate the December 13, 2013, purchase order under Contract No. FA8811-13-C-0003. Single Core Launch Vehicles require a lead time order of two years prior to launch.  The Air Force's December 2013 purchase of a Single Core Launch Vehicle for a GPS III-2 mission that will not occur until FY2017, *three years later*, was unjustified by any legitimate need.

90.     Had the Air Force not conducted the unjustified and unlawful early sole source order of a launch vehicle for GPS III -2, SpaceX would have been eligible to compete for that

vehicle. The Air Force's unlawful conduct denied SpaceX a $100 million business opportunity and provided ULA a $350 million windfall.

91. The analysis demonstrating irreparable harm, the public's interest, and the balance of hardships under Count II applies equally here under Count III.

## **PRAYER FOR RELIEF**

WHEREFORE, SpaceX respectfully requests that the Court enter judgment for Plaintiff in this Complaint and further requests:

(a) That the Court issue declaratory judgment that the Air Force must procure Single Core Launch Vehicles under the EELV Program consistent with CICA and FAR Part 6;

(b) That the Court grant permanent injunctive relief to direct the Air Force to conduct full and open competition for all Single Core Launch Vehicles not yet ordered, and to publish a valid J&A for any future Single Core Launch Vehicle that the Air Force decides to order on a sole source basis from ULA;

(c) That the Court grant permanent injunctive relief to direct the Air Force to cancel its recent December 2013 sole source purchase as it relates to any launch vehicle that will not be launched for more than two years from today; and

(d) Such other relief that the Court deems just and proper.

Dated: April 28, 2014

Respectfully submitted,

_Richard J. Vacura_

Richard J. Vacura
MORRISON & FOERSTER LLP
1650 Tysons Blvd, Suite 400
McLean, Virginia 22102
Telephone: 703.760.7764
Facsimile: 703.760.7777
rvacura@mofo.com
*Counsel of Record for Plaintiff SpaceX*

Of counsel:
Pablo A. Nichols
Morrison & Foerster LLP
425 Market St.
San Francisco, CA 94105
Telephone: 415.268.6653
Facsimile: 415.268.7522
pnichols@mofo.com


K. Alyse Latour
Catherine L. Chapple
MORRISON & FOERSTER LLP
1650 Tysons Blvd, Suite 400
McLean, Virginia 22102
Telephone: 703.760.7763
Facsimile: 703.760.7777
alatour@mofo.com
cchapple@mofo.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Complaint was served this 28th

day of April, 2014, via electronic mail, on the following:

U.S. Department of Justice, nationalcourts.bidprotest@usdoj.gov

Timothy McIlmail, timothy.mcilmail@usdoj.gov

Lt. Gen. Ellen M. Pawlikowski, ellen.pawlikowski@us.af.mil

Tracy E. Stroud, Contracting Officer, tracy.stroud.ctr@losangeles.af.mil

United Launch Alliance, contact.us@ulalaunch.com

/s/ Pablo A. Nichols
Pablo A. Nichols