1               UNITED STATES COURT OF FEDERAL CLAIMS

2

3

4   SPACE EXPLORATION TECHNOLOGIES CORP.,    )

5           Plaintiff,                      ) Case No.

6               vs.                         ) 14-354C

7   THE UNITED STATES OF AMERICA,           )

8           Defendant.                      )

9

10

11                      Courtroom 5

12          Howard T. Markey National Courts Building

13                717 Madison Place, N.W.

14                    Washington, D.C.

15              Wednesday, April 30, 2014

16                      3:30 p.m.

17                      Hearing

18

19

20          BEFORE: THE HONORABLE SUSAN G. BRADEN

21

22

23

24

25   Elizabeth M. Farrell, CERT, Digital Reporter and Transcriber

Space Exploration Technologies Corp. v. USA                    4/30/2014

```
 1    APPEARANCES:

 2    ON BEHALF OF THE PLAINTIFF:

 3            RICHARD J. VACURA, ESQ.

 4            CATHERINE L. CHAPPLE, ESQ.

 5            Morrison & Foerster LLP

 6            1650 Tysons Boulevard, Suite 400

 7            McLean, Virginia 22102

 8            (703) 760-7763

 9            rvacura@mofo.com

10            cchapple@mofo.com

11

12

13

14    ON BEHALF OF THE DEFENDANT:

15            TIMOTHY P. McILMAIL, ESQ.

16            KIRK MANHARDT, ESQ.

17            BRYAN WARNOCK, ESQ.

18            U.S. Department of Justice - Civil Division

19            Post Office Box 480

20            Ben Franklin Station

21            Washington, D.C. 20044

22            (202) 616-0342

23            timothy.mcilmail@usdoj.gov

24

25
```

3

Space Exploration Technologies Corp. v. USA                    4/30/2014

```
 1   APPEARANCES:

 2   ON BEHALF OF THE INTERVENOR:

 3            JASON A. CAREY, ESQ.

 4            HUNTER BENNETT, ESQ.

 5            McKenna Long & Aldridge, LLP

 6            1900 K Street, N.W.

 7            Washington, D.C.  20006

 8            (202) 496-7711

 9            jcarey@mckennalong.com

10

11

12   ALSO PRESENT:

13        Pablo Nichols, Esq., Morrison and Foerster, LLP (via

14            telephone)

15        Tim Hughes, General Counsel, SpaceX

16        Chris Cardaci, SpaceX

17        Jeffrey Lowry, Esq., United States Air Force

18        Jason Smith, Esq., United States Air Force (via

19            telephone)

20        Suzette Derrevere, Boeing

21        Dan Rene, Levick

22

23

24

25
```

Space Exploration Technologies Corp. v. USA                    4/30/2014

```
 1                    P R O C E E D I N G S
 2                    -   -   -   -   -
 3          (Proceedings called to order, 3:35 p.m.)
 4          LAW CLERK:  All rise.  The United States Court of
 5   Federal Claims is now in session.  The Honorable Susan G.
 6   Braden presiding.
 7          THE COURT:  Good afternoon.  I'm sorry you had to
 8   hold over for a little bit this afternoon.  Please have a
 9   seat.  Let me get my stuff out here.
10          All right.  I've read the complaint.  I have read
11   the motion to intervene, which is unopposed as I understand
12   it, is that correct?
13          MR. McILMAIL:  That's correct, Your Honor.
14          THE COURT:  All right.  So, I'll grant the motion
15   to intervene.  And where are the Intervenor's counsel?
16          MR. CAREY:  Your Honor, Jay Carey for Intervenor,
17   and my colleague, Hunter Bennett.
18          THE COURT:  Okay, great, thank you.  I recognize
19   some of the Government's lawyers.  Why don't we go through
20   the formalities.  Why don't you introduce yourself and we'll
21   get that done.
22          MR. VACURA:  Yes, Your Honor, good afternoon.
23   Richard Vacura with the Law Firm of Morrison and Foerster
24   representing Space Exploration Technologies Corporation.  And
25   with me in the courtroom is my colleague from Morrison and
```

Space Exploration Technologies Corp. v. USA                    4/30/2014

 1    Foerster, Catherine Chapple.  And on the phone is another
 2    Morrison and Foerster lawyer, Pablo Nichols.
 3                THE COURT:  Okay.
 4                MR. McILMAIL:  Good afternoon, Your Honor.  My name
 5    is Tim McIlmail.  I'm from the Department of Justice.  With
 6    me are Bryan Warnock also from the Department, on detail from
 7    the Air Force, and my assistant director Kirk Manhardt.
 8                THE COURT:  Mm-hmm.
 9                MR. McILMAIL:  Jeff Lowry is a trial attorney with
10    Air Force Commercial Litigation, and we have an Air Force
11    program attorney on the line.  His name is Jeff Smith.
12                THE COURT:  Okay.
13                MR. McILMAIL:  I'm sorry, Your Honor, Jason Smith.
14                THE COURT:  Okay.
15                MR. CAREY:  Good afternoon, Your Honor.
16                THE COURT:  And we know who you are.  Okay, fine,
17    thank you.
18                My first concern, the reason I wanted to have a
19    hearing on this, was the issue of the sanctions list.  We
20    have pulled the regulations, but as you are probably aware,
21    they are a little obtuse.  So, I need to find out how the
22    Court may be assured that nothing is going on right now that
23    does not violate the sanctions that -- as I understand it,
24    there are Treasury sanctions and there are sanctions by the
25    Commerce Department and there's another list for the State

Space Exploration Technologies Corp. v. USA

 1    Department.  There are three different sets of sanctions

 2    right now.  Is that correct?

 3            MR. McILMAIL:  I don't know except from what I've

 4    seen in the press, Your Honor.  I haven't thought about this.

 5            THE COURT:  All right.  Well, I think, under the

 6    circumstances -- the Plaintiff has not asked for a

 7    preliminary injunction, but based on the four factors and the

 8    fact that one factor can be -- no one factor necessarily is

 9    dispositive, that the Court is going to issue a preliminary

10    injunction until such time as I can get verification by those

11    three entities that there's nothing going on that violates

12    any of those sanctions.  And that should not come as a

13    surprise to the Government.

14            They were issued -- two sets of them were issued

15    yesterday, and I don't know if you've had a chance -- I mean,

16    we pulled them up off the Internet, and I'll issue a one-page

17    order today on that.  And then you'll have to, you know, go

18    to those agencies and present what you know to them.  But the

19    Court does not want to have anything happen further on this

20    until we know -- and nor do I think you would want to violate

21    the sanctions -- have any issue regarding that at this

22    particular junction.  Okay?

23            Now, having done that, while we are waiting to see

24    -- get that resolved, I need to know the status of this

25    matter and then we're going to have to go -- the first thing,

1    it seems to me, is we do not need a protective order for the

2    moment because we've got some standing questions that have to

3    be address first about whether this is the right time or not

4    the right time or whether it's too late for you to protest

5    what's going on.  Now, I don't -- I have not gotten into the

6    weeds on this, obviously, since we just got this last night.

7           The other thing is I do not know -- I have taken a

8    very quick look at the Federal Trade Commission consent

9    decree, and I don't know whether or not any of what you're

10   concerned about is addressed or should be addressed to the

11   Federal Trade Commission.  And I don't know if you've looked

12   at that issue or not, whether there's some potential

13   violation of what they're doing, vis-a-vis, the consent

14   decree.  Now, that, I don't have any jurisdiction over.  But

15   it seems to me there are a couple different moving parts in

16   this and, so, we need to kind of tease each of these out for

17   the moment.  The administrative record is not going to solve

18   the standing issue, and I need to get the jurisdictional

19   issues resolved first before we get into anything else.

20          So, having stated that, why don't we get a status

21   report from the Government on what is going on right now that

22   you know about in terms of where you are in the process of

23   this.

24          Also, as I understand it, in the consent decree,

25   there is a Government compliance officer that's been

Space Exploration Technologies Corp. v. USA

1    appointed to oversee the consent decree and we need to know

2    whether this gentleman or woman has been approached about any

3    of these issues.  Is this something that is -- should be

4    addressed through that process?  And then to figure out what

5    we're going to do about resolving the jurisdictional

6    questions which I have raised.  So, why don't go first to a

7    status report.

8              MR. McILMAIL:  May I take the podium, Your Honor?

9              THE COURT:  Sure.

10             MR. McILMAIL:  Thank you, Your Honor, and may it

11    please the Court.  If I could back up to the preliminary

12    injunction.

13             THE COURT:  Sure.

14             MR. McILMAIL:  The United States asks that the

15    Court reconsider that decision because there is no evidence

16    in the record of anything that would violate any of these --

17    any of these sanctions.

18             THE COURT:  You've told me you haven't even looked

19    at them.  So, you're certainly not in a position to represent

20    anything to me.

21             MR. McILMAIL:  I --

22             THE COURT:  I mean, you're not.  So, we're going to

23    get to the bottom of this.  If there's no problem, you should

24    have no difficulty being able to get those three agencies to

25    give you a letter or a certificate or whatever you need,

Space Exploration Technologies Corp. v. USA                    4/30/2014

1    okay?  But you just told me you didn't read the regulations.

2    You cannot come to me with a straight face and then argue

3    that there's no basis.  You can't make a representation.  You

4    haven't even read the regulations and the sanctions.

5              MR. McILMAIL:  If I could say one more thing on

6    that, Your Honor.

7              THE COURT:  Mm-hmm.

8              MR. McILMAIL:  I am not representing that there are

9    no violations; I'm saying that there is no evidence in --

10   before this Court, of any violations, nor has -- nor has

11   Plaintiff even asked for a preliminary injunction.

12             THE COURT:  That's a different issue.  I don't care

13   what they're asking for.  I don't want to have a violation of

14   those sanctions going on, and you don't either, nor does the

15   Intervenor.  So, let's move on from there.

16             MR. McILMAIL:  If I could say one more thing on

17   that, Your Honor?

18             THE COURT:  Sure.

19             MR. McILMAIL:  I ask that the Court consider

20   whether it has jurisdiction to do that.  I'd argue that the

21   Court doesn't have --

22             THE COURT:  I'm going to issue the preliminary

23   injunction based on the four factors.  The public interest,

24   it seems to me, requires the public and the Court certainly

25   to know whether or not this entity that's going on right now

```
 1    violates the sanctions list.  And I will read from the
 2    complaint.  It says, "This exclusive deal (the ULA Contract),
 3    which was concluded outside of public scrutiny, funnels
 4    hundreds of millions of U.S. taxpayer dollars to Russia's
 5    military-industrial base, including monies that may flow to
 6    individuals on the U.S. sanctions list."
 7              Now, this was written before the two regulations
 8    came out yesterday.  So, they may well -- they haven't had a
 9    chance to amend the complaint.  I don't know that they've had
10    a chance to look at it.  We just don't know.  We have looked.
11    We've seen the word -- there are rocket descriptions in those
12    sanctions list.  I don't know whether there's a problem here
13    or not, but it should be easy enough for the Government to
14    get that resolution to the Court and that the injunction
15    won't last very long.  But I don't want to do a temporary one
16    because it may take you more than ten days and I don't want
17    to issue rolling ones.  So, we're going to get the answer to
18    that.
19              Now, let's go on to the other issues.  Give us a
20    status report, if you don't mind, about where we are.
21              MR. McILMAIL:  If by that, Your Honor, means -- is
22    referring to the consent decree, I --
23              THE COURT:  Well, no, what I'm first going to ask
24    you about is what is going on with this contract.
25              MR. McILMAIL:  Yes.
```

Space Exploration Technologies Corp. v. USA

1           THE COURT:  Where are you in contract?

2           MR. McILMAIL:  Yes.

3           THE COURT:  You know, let's go through those issues

4   first, so I get some picture of what's happening there.

5           MR. McILMAIL:  Yes.

6           THE COURT:  Okay.  And as I gather, there's no

7   immediate need for me to -- this is an ongoing thing, so I

8   don't know where you are in the process.

9           MR. McILMAIL:  Yes, Your Honor.

10          THE COURT:  Okay.

11          MR. McILMAIL:  So, on the contract we have with

12  ULS, it's for -- it's a requirements contract for up to 35

13  cores.  And --

14          THE COURT:  I'm sorry, up to 35 what?

15          MR. McILMAIL:  They're called -- well, the

16  shorthand term is cores.  They are launch vehicle -- they are

17  launch vehicles that --

18          THE COURT:  Launch vehicles?

19          MR. McILMAIL:  Yes.

20          THE COURT:  Okay.

21          MR. McILMAIL:  And the Air Force has ordered 15.

22          THE COURT:  Okay.

23          MR. McILMAIL:  And expects to order more and

24  expects --

25          THE COURT:  Okay, I understand that.  You've

Space Exploration Technologies Corp. v. USA                              4/30/2014

1   ordered 15.

2            MR. McILMAIL:  Yes.

3            THE COURT:  And when did that take place?

4            MR. McILMAIL:  That took place in -- there was --

5   there were seven in FY 14, seven in FY 13 and one in FY 12.

6            THE COURT:  Okay.  So, they ordered one in fiscal

7   year 2012, seven in 2013, and they've ordered seven since the

8   first of this year.

9            MR. McILMAIL:  Yes.

10           THE COURT:  Okay.

11           MR. McILMAIL:  And, so --

12           THE COURT:  So, let's start over.  Where is the one

13  -- where -- what is the progress or status of the one that

14  was ordered in 2012?

15           MR. McILMAIL:  I don't know for sure.  I suspect,

16  though, that it has -- it could have been launched because

17  these have a two-year --

18           THE COURT:  But you don't know?

19           MR. McILMAIL:  No.

20           THE COURT:  Okay.  And I assume this same question,

21  you don't know anything about the seven for 2013?

22           MR. McILMAIL:  No, I -- well, I suspect they

23  haven't been launched because I understand there was a two-

24  year window from order to launch.

25           THE COURT:  Okay.  And my guess is they are not

Space Exploration Technologies Corp. v. USA                4/30/2014

1    even constructed for the 2014, it would seem.

2              MR. McILMAIL:  For the 2014, right.  Although I

3    understand that ULS orders a lot of these parts, a lot of

4    these components ahead of time -- ahead of an order.  So, it

5    may be that some of this has been put together already.  I

6    just don't know what's downstream from the order except that

7    I understand that it takes two years from the date of order

8    to launch.  So, I suspect the 2012 order has been launched.

9              THE COURT:  So, probably none of these have

10   launched just yet.

11             MR. McILMAIL:  Probably not.

12             THE COURT:  Okay.

13             MR. McILMAIL:  And, so, the Air Force expects to

14   order, it sounds like, by the end of the -- this calendar

15   year.

16             THE COURT:  Mm-hmm.

17             MR. McILMAIL:  They doubt -- well, they're not sure

18   whether they can order.  They would if they could order in FY

19   14, but it depends upon appropriations that they don't yet

20   have.

21             THE COURT:  Well, they've got seven already

22   ordered.

23             MR. McILMAIL:  Right.

24             THE COURT:  So, they want to order how many

25   additional ones now?

Space Exploration Technologies Corp. v. USA                    4/30/2014

1           MR. McILMAIL:  Well, I understand that there's one
2  -- they could order if they had the money, but they don't
3  have the money right now.  The contract provides for up to
4  eight per year.
5           THE COURT:  Okay.
6           MR. McILMAIL:  So, that would be one left for 14.
7  But it sounds like the sense is that there will be no orders
8  until FY 15.
9           THE COURT:  Okay.
10          MR. McILMAIL:  If, Your Honor, there are
11  appropriations.
12          THE COURT:  Okay, all right.
13          MR. McILMAIL:  But the requirements are there for
14  more.  I didn't get how many more, but it's at least one.
15          THE COURT:  Okay.  And we don't know the status of
16  whether these components have been put together so you have
17  an entire launch vehicle on any of these yet.
18          MR. McILMAIL:  No, I haven't asked that.
19          THE COURT:  Okay.  We'll probably need to know that
20  information.  So, whoever the Air Force person is on the
21  phone --
22          MR. McILMAIL:   I can provide that.
23          THE COURT:  -- can start taking some notes.  Okay?
24          MR. McILMAIL:  Yes, Your Honor.
25          THE COURT:  Okay.

1          MR. McILMAIL:  So, then the -- so, the contract has

2   in it, as I understand, a manifest of flight dates and those

3   go out to --

4          THE COURT:  For launch dates.

5          MR. McILMAIL:  Yes, launch dates, and those go out

6   to FY 19.

7          THE COURT:  Okay.

8          MR. McILMAIL:  And, so, if those requirements

9   remain and appropriations come along, then it looks like they

10  will order as many as 35 -- well, 35 total --

11         THE COURT:  Okay.

12         MR. McILMAIL:  -- from ULS.  After that, above that

13  35, the idea is that they would compete for the rest.  So, at

14  one point, it looked like they were -- they needed 50 all

15  together.  So, the first one wasn't -- so, there was one that

16  was outside this -- outside the contract -- not outside the

17  contract we're talking, but -- and I may be getting this part

18  wrong.  But the reason I bring this up is because the

19  complaint talks about 36.  So --

20         THE COURT:  Well, we'll straighten all that out at

21  some point.  I'm trying to just get some background right

22  now.  I'm not holding you to this.

23         MR. McILMAIL:  Right.

24         THE COURT:  It's also clear to me that you don't

25  really -- you got notice of this yesterday, too, so you

Space Exploration Technologies Corp. v. USA                    4/30/2014

1    really don't know everything yet either.

2              MR. McILMAIL:  Not -- certainly not every last

3    detail.

4              THE COURT:  Okay.  So, that's fine, that's fine.

5    We'll get to the bottom of all of that.  But for the moment,

6    I'm just trying to get some sense of where we are in this

7    case.

8              MR. McILMAIL:  Yes.  So, the universe of total

9    cores, at one point, was understood to be 50.

10             THE COURT:  Mm-hmm.

11             MR. McILMAIL:  Fourteen of which would be competed

12   after the requirement to buy 36 -- or it might be 35 from

13   ULS.

14             THE COURT:  Wait a minute now.  What -- 15

15   competed?  I don't understand.  You have 15 you've ordered.

16             MR. McILMAIL:  Right.  Now, what I'm talking about

17   now, Your Honor, is that this whole program --

18             THE COURT:  Mm-hmm.

19             MR. McILMAIL:  -- the EELV Program, at one point,

20   was understood to need, if everything were done, 50 of these

21   launch vehicles.

22             THE COURT:  But it's now down to 35?

23             MR. McILMAIL:  No, it looks like it's now down to

24   43 --

25             THE COURT:  Okay.

Space Exploration Technologies Corp. v. USA                    4/30/2014

1              MR. McILMAIL:  -- which is --

2              THE COURT:  Well, what was up to 35?  I took a note

3     on that at the beginning.

4              MR. McILMAIL:  Thirty-five or 36, depending on what

5     we're talking about, is what the Air Force contracted with

6     ULS to order up to.  We entered into a requirements contract

7     with ULS to order up to 36.

8              THE COURT:  Up to 36?

9              MR. McILMAIL:  Yes.

10             THE COURT:  Okay.  And you've now ordered 15?

11             MR. McILMAIL:  Yes.

12             THE COURT:  Okay.

13             MR. McILMAIL:  So, if we need 21 more, then our

14    obligation is to order them from ULS.

15             THE COURT:  Okay.

16             MR. McILMAIL:  So, at one point, the Air Force

17    expected to need perhaps another 14 up to 50 and had

18    understood that it would be -- once it satisfied its

19    obligation to ULS to order up to 36 --

20             THE COURT:  Mm-hmm.

21             MR. McILMAIL:  -- I mean, yes, order up to 36,

22    would compete the rest.  It looks like --

23             THE COURT:  So, they would compete the rest of

24    what?

25             MR. McILMAIL:  Those launch vehicles.  Those would

Space Exploration Technologies Corp. v. USA                    4/30/2014

1  be subject to full and open competition.

2            THE COURT:  You are -- okay, what I understand is

3  you have a contract to buy 36 from the Intervenors.

4            MR. McILMAIL:  If we needed 36.

5            THE COURT:  If you needed 36.

6            MR. McILMAIL:  Right.

7            THE COURT:  And if you need more than that, someday

8  down the road, you'll compete those?

9            MR. McILMAIL:  Yes, right.

10           THE COURT:  In eternity, okay.  Some other place,

11  okay.

12           MR. McILMAIL:  Right.  Well, presumably, ULS could

13  also compete for that and SpaceX.

14           THE COURT:  I'm not suggesting that they couldn't.

15           MR. McILMAIL:  Right.

16           THE COURT:  It's just that whatever your

17  contractual obligations -- right now, you have a contractual

18  obligation, the Government, to buy 36 of these things, if you

19  need them and if you have money to buy -- to pay for them.

20           MR. McILMAIL:  Yes, exactly.  Yes, precisely.

21           THE COURT:  Is that the way that we're putting it?

22           MR. McILMAIL:  Yes.

23           THE COURT:  All right.  Now --

24           MR. McILMAIL:  And, so, at some point, it looks

25  like recently, in the last month perhaps --

 1              THE COURT:  Uh-huh.

 2              MR. McILMAIL:  -- the Air Force decided that it's

 3    not going to need 50 and it's going to need only 43.

 4              THE COURT:  So, the most that would be available to

 5    bid openly would be seven?

 6              MR. McILMAIL:  Yes.

 7              THE COURT:  Maybe.

 8              MR. McILMAIL:  Yes.

 9              THE COURT:  Maybe.

10              MR. McILMAIL:  So, this appears to be one of the

11    things that SpaceX is concerned about, that instead of being

12    able to compete for as many as 14, the -- the competition

13    would be for no more than seven.  I think they're concerned

14    about more than that, but this --

15              THE COURT:  Okay.

16              MR. McILMAIL:  SpaceX might call it a move from 14

17    to 7.

18              THE COURT:  All right.  But you're not going to be

19    anywhere near that number for many, many years.

20              MR. McILMAIL:  Yes, it looks -- that looks like it

21    will be.

22              THE COURT:  Okay, all right.

23              MR. McILMAIL:  So, that's the status of that --

24              THE COURT:  Now -- okay.  Now, this, as I

25    understand it -- the Intervenor's history was very helpful to

Space Exploration Technologies Corp. v. USA                    4/30/2014

1     me.   What they have said is -- where is the FTC stuff here?

2     I need to get a chronology of this whole situation put

3     together, obviously, which I have not had time to do nor

4     have you.

5            Okay.  So, then in 2006, the Federal Trade

6     Commission -- by the way, I was an advisor to two chairmen of

7     the Federal Trade Commission during the Reagan

8     Administration.  So, I know the Commission quite well.

9            MR. McILMAIL:  Yes, Your Honor.

10           THE COURT:  So, I understand what they did here.

11    What they did basically, as I understand it, they found

12    basically an anti-trust violation under Section 5, a civil

13    violation potentially.  But they found that the competing

14    interests of the public interest consideration by the

15    military were important and that the -- they would try to

16    address the competitive issues, which they had problems with,

17    as well as did the Defense Department, it appeared, by this

18    consent decree, which requires the Intervenors to do a whole

19    list of different things.

20           And then sometime after that decision, apparently,

21    there was a sole source contract issued -- was it on June

22    26th, 2003?  When was the sole source contract?

23           MR. McILMAIL:  2013.  Well, the contract that's at

24    issue here --

25           THE COURT:  Right.

Space Exploration Technologies Corp. v. USA                    4/30/2014

1          MR. McILMAIL:  -- started off as a letter contract
2     and undefinitized contract action in June 2013 and was
3     definitized --
4          THE COURT:  Well, wait a minute, I want to kind of
5     get a chronology here of what happened.
6          MR. McILMAIL:  Yes.
7          THE COURT:  We've got here that this -- we've got
8     here a date of January 27th, the Air Force published a
9     justification and approval for a sole source.
10         MR. McILMAIL:  Yes.
11         THE COURT:  Okay.
12         MR. McILMAIL:  So, that happened in January 2012.
13         THE COURT:  Okay.
14         MR. McILMAIL:  And then in March 2012 --
15         THE COURT:  Just bear with me here for just a
16    second, okay.  And that was a public notice, right?
17         MR. McILMAIL:  Yes.  And that justification
18    includes consideration of SpaceX as a qualified -- as a
19    company that could do this work.  And --
20         THE COURT:  They were -- but this is a sole source
21    award, so the justification and approval of a sole source
22    says you can pick one.
23         MR. McILMAIL:  Yes.
24         THE COURT:  We're not saying who yet; we're saying
25    you can pick one, is that correct?

Space Exploration Technologies Corp. v. USA                         4/30/2014

1          MR. McILMAIL:  Well, not quite.

2          THE COURT:  Okay.  Correct me.

3          MR. McILMAIL:  What happened was the Air Force

4    considered the capabilities of several manufacturers and --

5          THE COURT:  What is the purpose of the

6    justification and approval, vis-a-vis, this contract?

7          MR. McILMAIL:  To determine whether this should be

8    a sole source procurement, and it was determined in January

9    12th -- January 2012 that ULS was the only capable provider,

10   having considered the capabilities of others, including

11   SpaceX.

12         THE COURT:  Okay.

13         MR. McILMAIL:  And it determined that for a period

14   of -- from FY 12 through FY 17.  Then, in March 2012 --

15         THE COURT:  Wait a minute now.  Okay, so -- and

16   when this issue -- when this justification and approval came

17   out, Space Exploration didn't say anything about that.

18         MR. McILMAIL:  Not that we can tell, no.

19         THE COURT:  Okay, all right.  So, what is the next

20   event in the chronology?

21         MR. McILMAIL:  In March 2012, the Air Force issued

22   a request for a proposal to ULS.

23         THE COURT:  So, they made a sole source decision at

24   that point?

25         MR. McILMAIL:  Yes, that -- well, yes.

Space Exploration Technologies Corp. v. USA                    4/30/2014

1                    THE COURT:  They picked the Intervenor then --

2                    MR. McILMAIL:  Yes.

3                    THE COURT:  -- at that time, okay.

4                    MR. McILMAIL:  And --

5                    THE COURT:  And that decision has a label to it,

6        and what is that called?

7                    MR. McILMAIL:  Well, that was a request for

8        proposal that was issued --

9                    THE COURT:  Request for proposal.  So, they went to

10       one vendor and said, please give me a proposal.

11                   MR. McILMAIL:  Yes.

12                   THE COURT:  Okay.

13                   MR. McILMAIL:  And that --

14                   THE COURT:  And by going to the one vendor, the one

15       vendor they selected was the -- these folks, right?

16                   MR. McILMAIL:  Yes.

17                   THE COURT:  And was that a public -- publicly

18       known?

19                   MR. McILMAIL:  It seems not to be entire public.

20                   THE COURT:  Okay.

21                   MR. McILMAIL:  But what we understand -- this we

22       learned, for the most part, in the last day, that --

23                   THE COURT:  Okay.

24                   MR. McILMAIL:  -- we believe that SpaceX was on

25       notice of that in March 2012.

1           THE COURT:  Okay.  But it wasn't publicly noticed

2    like in the Federal Register or whatever?

3           MR. McILMAIL:  It seems not.

4           THE COURT:  Fed Biz or however you put these things

5    out.

6           MR. McILMAIL:  That's right.  It seems like --

7           THE COURT:  So, there was no notice in March of

8    that.  And as I understand it from the Intervenor's papers,

9    Space Exploration Technology did not come forth in March 2012

10   and say stop.

11          MR. McILMAIL:  Yes.  And if I could say --

12          THE COURT:  Or we object or anything.

13          MR. McILMAIL:  Right.  If I could say two more

14   things on that, Your Honor.

15          THE COURT:  Sure.

16          MR. McILMAIL:  The paragraph -- on page 17 of the

17   complaint, paragraph 45, the first sentence is SpaceX's

18   allegation that this happened, that "In March 2012, the Air

19   Force issued a solicitation proposing to award a sole source

20   requirements contract to ULA."  One can reasonably infer from

21   that that --

22          THE COURT:  Wait, wait, go back again now.  So,

23   what -- March 23rd?

24          MR. McILMAIL:  No, March 2012.  This is on --

25          THE COURT:  March 23rd, 2012?

Space Exploration Technologies Corp. v. USA                                    4/30/2014

1          MR. McILMAIL:  It doesn't -- well, it doesn't say

2    in the allegation, but on page --

3          THE COURT:  Well, I'm reading from the Intervenor's

4    unopposed motion.  I don't know if you read that or not.

5          MR. McILMAIL:  Yes.

6          THE COURT:  But it says in here, "The Air Force

7    issued a sole source RFP to ULS on March 23rd, 2012."  Is

8    this the same -- that request for proposal, what you just

9    told me about, okay?

10         MR. McILMAIL:  Yes.  And --

11         THE COURT:  So, we have that down.

12         MR. McILMAIL:  Yes.  And my point here, Your Honor,

13   is that paragraph 45 of the complaint appears to -- well, the

14   reasonable inference is that SpaceX knew in March of 2012

15   that that had happened.

16         THE COURT:  And they knew and you can tell that

17   because in 45 they said what?

18         MR. McILMAIL:  The allegation is that in March

19   2012, the Air Force issued a solicitation which --

20         THE COURT:  Well, they're alleging that now.

21         MR. McILMAIL:  Yes.

22         THE COURT:  How do you know that they knew it then?

23         MR. McILMAIL:  I don't.

24         THE COURT:  Oh, okay.

25         MR. McILMAIL:  I'm asking for a reasonable

Space Exploration Technologies Corp. v. USA                           4/30/2014

1    inference.

2              THE COURT:  Yeah, yeah -- well, you know -- okay.

3    There's no evidence that there was a public notice.  They may

4    know it now in 2014, by any number of ways, because I

5    understand there's been a lot of congressional inquiry about

6    this particular situation and the rest, so go ahead.  All

7    right.

8              MR. McILMAIL:  Yes, that all could be.  And then

9    the RFP itself, Your Honor, had two deadlines.

10             THE COURT:  Now, what would the -- let's assume for

11   the moment that you're correct, that Space Exploration had

12   notice of the request for proposal, what would they or could

13   they have done at that point if they didn't like it?

14             MR. McILMAIL:  They could have protested that.

15             THE COURT:  Okay.  And the premise of this was that

16   they were not qualified at that time.  For some reason, they

17   hadn't been certified, is that correct?

18             MR. McILMAIL:  Well, they -- yes, although the

19   premise of the RFP was the justification and approval that

20   was issued a couple months earlier.  So --

21             THE COURT:  Well, no, those are two different

22   things, as I understand it from you.  The justification and

23   approval just basically says, hello, world, we're going to

24   sole source a contract.  That's what that says.

25             MR. McILMAIL:  Yeah.

Space Exploration Technologies Corp. v. USA

1          THE COURT:  The second thing is they said, we have

2    picked our bridesmaid -- our bride and our bride is going to

3    be this joint venture.

4          MR. McILMAIL:  Yes.

5          THE COURT:  Okay.  And the reason they chose that

6    bride is because -- I assume, is because, at that time, the

7    Air Force considered that Space Exploration Technology did

8    not have the certification that they seemed to need, is that

9    correct?

10         MR. McILMAIL:  Well, I don't know that the Air

11   Force made a second consideration of anybody's capabilities

12   after having determined, through the justification and

13   approval, that ULS was the only capable provider.  So, I

14   suspect -- I mean, I --

15         THE COURT:  So, they made that decision in the

16   notice of justification, is that right?  Can you help us out

17   here?

18         MR. McILMAIL:  Yes, that is correct, Your Honor.

19         THE COURT:  I'm looking to the Intervenors here.

20   Is this correct?

21         MR. CAREY:  Your Honor, ULS is named in the January

22   J&A.  So, the --

23         THE COURT:  Okay.  I don't have any of these

24   documents, you see, so I don't know, you know.

25         MR. CAREY:  So, the January J&A says --

Space Exploration Technologies Corp. v. USA                    4/30/2014

1          THE COURT:  Okay.  So, it's more than hello, world;

2     it's hello, world, we've now picked the bride.

3          MR. CAREY:  It says we -- in May of the prior year,

4     May 2011, the agency issued a sources sought notice, got

5     submissions from SpaceX and ULS and other companies --

6          THE COURT:  Okay.  What we need to do then --

7          MR. CAREY:  -- looked at those, and in January --

8          THE COURT:  -- is we -- next up, what we need to do

9     is get a chronology that both sides agree on.  I mean, you

10    should -- that should not be a problem.  There is a

11    chronology of things that actually happened.

12         MR. McILMAIL:  Yes, Your Honor.

13         THE COURT:  Whether you had notice or not notice or

14    what you could or couldn't have done in any of this, that's a

15    different issue.  But the issue is we need to get a chron

16    that's laid out in an efficient way without any verbiage, you

17    know, just the factual pieces of that.  And you all can do

18    that at your convenience for me, so we can have a joint

19    chronology at least, okay.

20         So, we fast forward from the request for the

21    proposal to a contract, is that correct?

22         MR. McILMAIL:  Yes.  But if I could back up one

23    step.

24         THE COURT:  Sure.

25         MR. McILMAIL:  So, that request for proposal had a

Space Exploration Technologies Corp. v. USA                4/30/2014

1    deadline -- had two deadlines.  The latest one was for these

2    things that we're talking about in this case, and that was 90

3    days after the issuance of the request for proposal.  So,

4    that would have taken the proposal, if that deadline weren't

5    extended, to three months after March 23rd.

6              THE COURT:  Okay.  Then the Intervenor sent you a

7    pre-nup.

8              MR. McILMAIL:  Yeah.  Well, then I understand there

9    were -- there was a long negotiation process that evidently

10   produced a letter contract in June 2013.

11             THE COURT:  June?

12             MR. McILMAIL:  Yes.

13             THE COURT:  2013.

14             MR. McILMAIL:  That was definitized in December

15   2013.

16             THE COURT:  Okay.  So, whatever you ordered in

17   2012, you ordered before you had a contract, is that correct?

18             MR. McILMAIL:  Yes, but I think there was -- there

19   was a -- I think there was a preliminary contract.

20             MR. CAREY:  Yes, there was a separate contract.

21             MR. McILMAIL:  There was a separate --

22             THE COURT:  Well, you don't have a preliminary

23   contract.  I mean, you either have a contract or you don't

24   have a contract.  You may have had a memorandum of

25   understanding.  I don't know what you had.

Space Exploration Technologies Corp. v. USA                    4/30/2014

1            MR. McILMAIL:  There was something that proceeded

2   that letter contract --

3            THE COURT:  Okay.

4            MR. McILMAIL:  -- that provided one core, as I

5   understand it.

6            THE COURT:  Okay, all right.  So, now we're to the

7   June contract.  And the June contract, obviously, was there

8   an announcement about that?

9            MR. McILMAIL:  I don't know that for sure.

10            THE COURT:  Okay.

11            MR. CAREY:  There was a press release.

12            MR. McILMAIL:  There was a press release, Your

13   Honor.

14            THE COURT:  Okay.

15            MR. McILMAIL:  And then --

16            THE COURT:  By the Government or by you --

17            MR. CAREY:  By the Department of Defense, Your

18   Honor.

19            THE COURT:  Okay, all right.

20            MR. McILMAIL:  And then the -- that contract was

21   definitized in December 2013.

22            THE COURT:  Okay.  And, so, after that, you ordered

23   another seven in 2013?

24            MR. McILMAIL:  Yes.

25            THE COURT:  And have you taken delivery of any of

Space Exploration Technologies Corp. v. USA                    4/30/2014

 1    them?  You don't really know yet, do you?

 2              MR. McILMAIL:  No, I haven't asked that question.

 3              THE COURT:  Okay, all right.  Well, we need to know

 4    that -- we need to know exactly where all of this is.  Okay?

 5    All right.  So, is there anything else I'm missing in the

 6    status of the contract?

 7              MR. McILMAIL:  Not that I can think of, Your Honor.

 8              THE COURT:  Okay, all right.

 9              MR. McILMAIL:  But if -- so if -- because Your

10    Honor raised standing --

11              THE COURT:  Yeah, I raised standing because we'll

12    have to figure out whether or not the Plaintiffs -- I don't

13    know what exactly -- you know, there are a lot of things

14    they've got in the complaint, okay?  I haven't had a chance

15    to sort all of them out.

16              MR. McILMAIL:  So, if --

17              THE COURT:  Clearly, they want an opportunity to

18    compete for something, and I'm looking at the back page,

19    excuse me, of the relief.  They want a declaratory judgment.

20    I don't know about that.  They want a permanent injunction to

21    direct the Air Force to conduct full and open competition for

22    the new ones, those that are not ordered, and I don't know if

23    that's the -- after the -- I don't know yet whether that's

24    after the 15 they've ordered or after the 36, and we'll

25    figure that out at some point here.  And they want you to

Space Exploration Technologies Corp. v. USA                                          4/30/2014

```
 1    publish justification for any single future core launch
 2    vehicles, blah, blah, blah, and then they want to cancel the
 3    December '13 sole source purchase, and that would be the
 4    seven.  Is that what you --
 5              MR. McILMAIL:  I don't -- I don't understand that
 6    reference, Your Honor.
 7              THE COURT:  Okay, all right.  Well, I don't either,
 8    so we'll -- that will not be launched for more than two years
 9    from today, and we don't know that either because you don't
10    even know.  You don't even know when these things are ready
11    to launch, so there's no reason that the Plaintiff would
12    know.
13              MR. McILMAIL:  Well, if I could make the standing
14    point, Your Honor.
15              THE COURT:  Sure.
16              MR. McILMAIL:  All of that means that SpaceX lost
17    its standing to complain that these would be sole sourced by
18    90 days after the issuance of the RFP.
19              THE COURT:  They may or may not have.  I don't --
20    that's an issue that I'm going to go to first before we do
21    any administrative record stuff.  I mean, I need -- I don't
22    know.  There may be some administrative record stuff we need
23    to do on standing, but that's -- we'll have to figure that
24    out.
25              MR. McILMAIL:  Yes.
```

     1          THE COURT:  I don't want to take too many big

     2     steps.  I want to do this in baby steps at a time.  And I

     3     want to clear out the issue of whether or not this has a

     4     sanction issue attached to it.  That's a serious issue.  This

     5     stuff is moving very fast, okay?  And as I said, there are

     6     three agencies now that have regulations, as of yesterday.  I

     7     have no idea what's happened today, nor do you.  So, I think

     8     we need to get that contained into one place, and the

     9     Government should want that.  So, let's get that done.

    10          And it's going to be interesting because I don't

    11     know how they're going to read their own regulations or these

    12     sanctions.  They're really obtuse and quite broad.  So, I

    13     don't know, but I'm going to let the Government decide that

    14     issue.  Then we'll have to sort through these other issues,

    15     and we'll look to resolve the issues of standing of the

    16     Plaintiff next.  Okay?

    17          But for the moment, I need you to sit still so we

    18     can clear out the sanction issue and then we can dissolve

    19     that injunction once we get the proper papers from the

    20     agencies.  And, you know, I might add, this is something

    21     we've got to watch because there may be additional sanctions

    22     that are more detailed that are going to come out.  The

    23     President has said that he reserves the right to issue new

    24     ones as things develop on a daily basis.  So, let's see, you

    25     know, what happens there.  The Court's going to try to

1    monitor this.  It took us a little bit of time yesterday to

2    find all three sets actually even, because I thought there

3    was just one.  It turns out that there are actually three.

4    So...

5            MR. McILMAIL:  Thank you, Your Honor.

6            THE COURT:  Okay.  And you will want to coordinate,

7    obviously, with those people internally on this.

8            MR. McILMAIL:  I'm sorry, Your Honor, internally to

9    the Department of Justice?

10           THE COURT:  I'm looking to the lead lawyer for the

11   Government, basically.  He understands what my point is,

12   which is you're going to need to get them in the loop on this

13   so that they know what's going on, too, okay?

14           MR. McILMAIL:  Thank you, Your Honor.

15           THE COURT:  I take it that's a yes.

16           MR. MANHARDT:  Yes, Your Honor.

17           THE COURT:  Okay, sure.

18           MR. McILMAIL:  Thank you, Your Honor.

19           THE COURT:  Sure, okay.

20           Now, I don't know how much we need by way of

21   argument from the Plaintiff, but you're certainly welcome to

22   make some statements.  You have an awful lot of stuff in this

23   complaint.  And as I said, it's hard for me to -- I need to

24   sort all this out.  The easiest way for me to begin that

25   process is with a chron and to find -- for us to break it up

1   into pieces to see at each of these junctures whether you,

2   one, had notice and, two, had  -- what you could have said or

3   should have said at that point.

4          Now, it may be -- I don't know, they're arguing

5   that you don't even today -- at least the Intervenor said, as

6   of today, you're still not certified to perform NSS missions.

7   So, we'll have to figure out whether that was a criteria that

8   the Government had or not.  I don't know what your

9   certification status is.  First of all, I don't even know

10  what certification is required.  I need to know what those

11  things are and then what the status of those are.

12         MR. VACURA:  Yes, Your Honor.  I think I can very

13  briefly give you an overview of our position that will help

14  clarify this and help focus some of this.

15         THE COURT:  Okay.

16         MR. VACURA:  Certainly, I understand your dilemma

17  here because the complaint is lengthy, it's factually

18  intense.  And we state this several times in our complaint,

19  that one of the problems that SpaceX had throughout this

20  entire process is getting any visibility or any transparency

21  into the contract and what was going on.  We've heard things

22  here today from the Government that is all new to me.  I

23  never knew it; I'm sure SpaceX didn't know it.

24         THE COURT:  Okay.

25         MR. VACURA:  In terms of how many orders were

Space Exploration Technologies Corp. v. USA                    4/30/2014

1    placed, what years that they pertain to and so forth.  So,

2    that's been very helpful.

3                    THE COURT:  Okay.

4                    MR. VACURA:  But just to clarify and to focus on

5    what we're asking for and what we're seeking, I think that

6    will help on the standing issue.  When the J&A was issued in

7    January of 2012, SpaceX was not eligible to compete.

8                    THE COURT:  Okay.

9                    MR. VACURA:  And when the RFP was issued in March

10   of 2012, SpaceX was not eligible to compete.  The -- and

11   "eligible to compete" is really a critical phrase here

12   because there's a difference between being certified to

13   launch and eligible to compete.  And the Undersecretary of

14   Defense Frank Kendall set out in his ADM -- his acquisition

15   decision memorandum, which we reference in our complaint --

16                    THE COURT:  Right.

17                    MR. VACURA:  -- that the Air Force was authorized

18   to procure up to 36 cores from ULA --

19                    THE COURT:  Launch vehicles for my purposes.

20                    MR. VACURA:  Well, Your Honor, I think we also have

21   to be careful with that because a launch core is the launch

22   vehicle, but some missions require multiple cores.  What

23   SpaceX is --

24                    THE COURT:  I will need, at some point, to see

25   something.

Space Exploration Technologies Corp. v. USA                    4/30/2014

1           MR. VACURA:  Absolutely, Your Honor.

2           THE COURT:  A picture or, you know, something that

3     shows me what this thing looks like.

4           MR. VACURA:  Yes, Your Honor.   The --

5           THE COURT:  Maybe you can do it with Legos.  You

6     can do a lot with Legos.  You can put some Legos together for

7     me.

8           MR. VACURA:  SpaceX's rocket, the Falcon 9, is a

9     single core launch vehicle.

10          THE COURT:  Okay.

11          MR. VACURA:  Some of the cores that we believe are

12    included in the contract are multiple core vehicles.  They

13    call them "heavies."  In other words, they're satellites that

14    are much larger --

15          THE COURT:  So, you don't know -- let's come to the

16    -- you don't know whether these -- the 15 that have been

17    ordered, whether they're multiple or single?

18          MR. VACURA:  We don't know, Your Honor.

19          THE COURT:  Okay.  Do you know, Counsel?

20          MR. McILMAIL:  The 15 that are ordered are cores.

21    Some launches require more than one core.

22          THE COURT:  We heard that.

23          MR. McILMAIL:  Right.

24          THE COURT:  So, do you know how many of these are

25    multi versus single?

Space Exploration Technologies Corp. v. USA                           4/30/2014

1            MR. McILMAIL:  Off the top of my head, no.  I can

2      find that out while we're sitting here, Your Honor.

3            THE COURT:  Okay.  Well, we'll get that information

4      out, too, then, okay?

5            MR. VACURA:  So, Your Honor, also based on

6      Undersecretary Kendall's standard that he set out, that he

7      represented to the GAO when they asked, was that new

8      entrants, which is SpaceX, would be qualified to compete when

9      they had completed three launches that count towards

10     certification and they've delivered the data from their third

11     certification launch.  So, you have essentially --

12           THE COURT:  And they deliver their data to whom?

13           MR. VACURA:  To the Air Force.  So, you have --

14           THE COURT:  And you've done that?

15           MR. VACURA:  We've done that, Your Honor.

16           THE COURT:  Okay, all right.

17           MR. VACURA:  That was done -- it was done

18     incrementally, but it was completed by March 22nd of 2000- --

19           THE COURT:  Of what year?

20           MR. VACURA:  This year.

21           THE COURT:  Okay.

22           MR. VACURA:  So, as of that point, SpaceX was fully

23     qualified to compete for single core launch vehicles.  What

24     we have -- what we have learned -- you know, and we've heard

25     a lot about, well, SpaceX should have known by the June

Space Exploration Technologies Corp. v. USA                    4/30/2014

 1   letter contract and all that --

 2            THE COURT:  We'll get to all that later on.  So,

 3   right now, what you can do is single core.  Can you do multi

 4   core?

 5            MR. VACURA:  Not yet.  We're working on that.

 6            THE COURT:  Okay.

 7            MR. VACURA:  But we're not qualified to compete for

 8   those.

 9            THE COURT:  Okay.

10            MR. VACURA:  What we've learned within the last few

11   weeks, based on statements by the Secretary of the Air Force,

12   is that of those cores that were intended to be competed --

13            THE COURT:  Which ones are those now?  Are those

14   the seven?

15            MR. VACURA:  Well, again, under -- yes.  Under --

16            THE COURT:  These are the ones coming up someday?

17            MR. VACURA:  Well, some of those that were intended

18   to be competed were moved into the 35 block to satisfy the

19   requirements contract.  So, they're essentially taking

20   launches out of the competitive bucket and putting them into

21   the sole source bucket, and that's really, you know, part of

22   what we're complaining about.

23            THE COURT:  Was that a violation of the consent

24   decree?  That was one of my questions.

25            MR. VACURA:  Yes, Your Honor.  That's an excellent

Space Exploration Technologies Corp. v. USA

1    question.  I don't know the answer to that.  You know, we can

2    certainly try to find that out.  I don't know if it is.

3                THE COURT:  Well, I mean, that's none of my

4    business, in one sense, but that's a different way of

5    approaching the issue that you have here.

6                MR. VACURA:  Yes, Your Honor.

7                THE COURT:  Because if they do, it would seem to me

8    the Federal Trade Commission has the authority, basically, to

9    look at that and say what they've done is violating the

10   consent decree.  And they can be helpful to you if that's the

11   problem.  I don't know whether it is or isn't.

12               MR. VACURA:  Yes, Your Honor.

13               THE COURT:  If it is.  And I don't know if it's

14   covered.  I mean, the consent decree is -- let's see -- 20-

15   some pages and there's a -- and it's quite detailed in terms

16   of what they're all required to do.  But the person that's

17   under the authority of the Federal Trade Commission is the

18   Intervenor, not the Air Force.

19               MR. VACURA:  Yes, Your Honor.

20               THE COURT:  The Air Force is not subject to the

21   Federal Trade Commission's authority.  It's the Intervenor.

22   So, I don't know whether the FTC has told the Intervenor,

23   here are some things you need to do.  I mean, can they -- I

24   don't know the answer to that question, but the issue is can

25   they purchase one of your cores.  Can the joint venture

1    purchase one of your cores?  And should they have had to

2    purchase one of your cores under the consent decree?  I don't

3    know.

4            MR. VACURA:  Yes, Your Honor.  Excellent questions.

5    I don't know the answer either, but it's certainly worth

6    looking into and considering.

7            THE COURT:  Okay.

8            MR. VACURA:  But kind of the heart of this, Your

9    Honor, is SpaceX is not challenging the entire requirements

10   contract that was definitized in December of 2013.  We are

11   challenging, we think, some of those purchases, if we were

12   eligible to compete for those purchases.  Because they are --

13   again, we don't know the timing, we don't which cores were

14   purchased and that sort of thing.  We're hearing it for the

15   first time.

16           THE COURT:  Well, are you saying -- they said that

17   they have a contract to purchase up to 35 or 36 of these

18   things, okay.  And you're saying they -- the Air Force

19   promised to compete some of those 36?

20           MR. VACURA:  What the Air Force promised -- well,

21   what Undersecretary Kendall promised in his directive was the

22   Air Force had the authority to purchase up to 36 cores and

23   there would be 14 additional cores that would be competed at

24   the earliest opportunity, as soon as new entrants were

25   eligible to compete.

1           THE COURT:  And you're saying you're now here.

2           MR. VACURA:  We're now here and --

3           THE COURT:  So, that triggers that time period.

4           MR. VACURA:  That's correct, Your Honor.  And the

5   Air Force is moving those -- what should be competitive, into

6   the non-compete bucket.  And we haven't --

7           THE COURT:  I think I see the issue that you seem

8   to be concerned about.  The problem I think they have is they

9   have a contract that says, we've promised the -- under their

10  pre-nup, they've promised the bride, you know, 35 mules or

11  something and they're going to -- that's the sole -- that's

12  what they're going to get.  And you may now be able to

13  provide your own mules or something, but that's -- they have

14  an outstanding commitment.  And they don't even have enough

15  money for all 35 right now.

16          MR. VACURA:  Well, Your Honor, if I may address

17  that, to the extent they entered into that contract and bound

18  themselves to 35 or 36, whatever the number is --

19          THE COURT:  I don't know.  We haven't seen the

20  contract yet.

21          MR. VACURA:  Correct, and we haven't either.

22          THE COURT:  All right.

23          MR. VACURA:  But the only J&A that we know of is

24  the 2012 J&A, and what the Government and the Intervenor have

25  omitted in telling you about that J&A is it also includes

1    language that says this J&A is valid until competition is

2    feasible.

3              THE COURT:  Okay.  And you're saying as of March of

4    this year, you're now feasible at least for single core?

5              MR. VACURA:  Well, Your Honor, what we have is in

6    December of 2013, mid-December, the Air Force enters into

7    this long-term contract locking up all these cores, when

8    SpaceX had their third certifying launch scheduled for early

9    January.  They launched and it was successful.  So, within a

10   couple of weeks of finishing that very vital, very important

11   milestone, the Air Force is suddenly ordering, on a long-term

12   basis, all of these cores --

13             THE COURT:  And when did they make these other

14   orders, the ones for 2014?

15             MR. VACURA:  Well, again, we don't know the exact

16   timing of that, Your Honor.  What we've been told today is

17   that in December of 2013, this contract was entered into.  I

18   don't know if those 14 orders or 15 orders were placed at

19   that time or if they've been subsequently ordered.  We just

20   don't know.

21             THE COURT:  Where do we come up with the 2013

22   contract?

23             MR. VACURA:  That was the December 2013 contract

24   that is the -- it was the definitization of the letter

25   contract.

Space Exploration Technologies Corp. v. USA                           4/30/2014

```
 1              THE COURT:  Oh, that's the -- okay, all right,
 2      that's why I need a chron.
 3              MR. VACURA:  Yes, yes, Your Honor.
 4              THE COURT:  Okay.  So, you may well need some
 5      documents to establish your standing.
 6              MR. VACURA:  Yes, Your Honor.  And, certainly,
 7      we've referenced documents in our complaint.
 8              THE COURT:  You sure have.  We've tried to find
 9      some of them, you know.  There's a lot of stuff in here.
10              MR. VACURA:  Well, Your Honor, I'd also encourage
11      you -- I think that this -- the whole standing issue, as you
12      point out, is really wrapped up in documents and factually
13      what happened when.
14              THE COURT:  Yeah.
15              MR. VACURA:  And I would encourage you to follow
16      your holding in the Blue Dot Energy case.
17              THE COURT:  You know, don't -- I'm not into, you
18      know, what I call the vanity citations.  Who knows what I did
19      when.
20              MR. VACURA:  Well --
21              THE COURT:  Forget that.  Let's just deal with what
22      we have now.  What do you need --
23              MR. VACURA:  Well, what we need --
24              THE COURT:  -- to establish your standing?
25              MR. VACURA:  What we need is we need the contract,
```

1    we need orders, we need the -- any justification and

2    approvals that were done subsequently.  We --

3              THE COURT:  What you need to do is give me a list.

4              MR. VACURA:  We'll be happy to do that, Your

5    Honor.

6              THE COURT:  Okay, you see, I think what we need to

7    do step-by-step is first get a chron, because you may learn

8    some things in the chron that will dictate what you --

9    documents you want.

10             So, can you -- can we -- the Government has a lot

11   of different things to do, but you've got a lot of folks at

12   the table.  So, one person's going to go try to find out if

13   we've got sanction problems and one person is going to try to

14   get me a list -- a chron with a list of what you consider to

15   be the documents that show, you know, on this date, this

16   document, that type of thing.

17             And, obviously, you're under orders, as of today,

18   you're not destroying any documents or anything concerning

19   anything relating to this procurement.  So, if there's any --

20   I'm not saying you have, but if there's anybody down in the

21   agency that thinks that they want to be cute, you'll give

22   them their -- read them the riot act and tell them that they

23   can't destroy any documents right now, you've got a bid

24   protest, and they shouldn't have before today.  I don't think

25   they have, but, you know, it never hurts to tell people

Space Exploration Technologies Corp. v. USA                          4/30/2014

1    because there are lots of people in these agencies that think

2    they're doing things to be helpful and sometimes they cause

3    problems.

4              And, certainly, that's true for the Intervenor, and

5    they know that.  They're represented by good counsel, so they

6    know what their obligations are in that regard.  Okay?

7              MR. VACURA:  Thank you, Your Honor.

8              THE COURT:  The same thing goes for you, too, by

9    the way.

10             MR. VACURA:  Absolutely, Your Honor.

11             THE COURT:  So, I think -- let's do this in steps.

12   Let's, first of all, get a chron, then let's get a list of

13   what you feel you need to have to show your standing.

14             MR. VACURA:  Yes, Your Honor.

15             THE COURT:  Then, obviously, I'll need, at that

16   point, to enter into a protective order, but we don't need to

17   do that today.  I want to think a little bit more about the

18   protective order.  One of the things that worries me about a

19   lot of these is that, you know, I'm saying things are

20   confidential and I don't even know what's confidential.  So,

21   I always put a provision in there to get -- I'm opted out if

22   I later decide -- my tendency is to put this stuff on the

23   public record.  I don't like not having things on the record,

24   if it's at all possible.

25             Anything, obviously, that's been given to the GAO

1    or to Congress or whatever, unless it's been under seal

2    there, I need to see.  I mean, we're not going to have that

3    fight.  And I will coordinate with the GAO to be sure of that

4    issue.  You surely have a list of everything you've given the

5    committees and the GAO, so you'll -- you should know what

6    those are already.

7                And the Federal Trade Commission issues, I think

8    that's something that you need to figure out about whether or

9    not you have another way of looking at this issue.  I do not

10   know.  Do we know who the -- I asked you that.  You don't

11   know who the compliance officer is.

12               MR. McILMAIL:  No, Your Honor.

13               THE COURT:  There's somebody that's been designated

14   by the Government.  Do you know, Counsel?

15               MR. MANHARDT:  No, Your Honor.

16               THE COURT:  Okay.  Does anybody know?  You guys

17   know.

18               MR. CAREY:  I do not know, Your Honor.

19               THE COURT:  You don't know who the compliance

20   officer is for the consent decree that you entered into with

21   the FTC?

22               MR. CAREY:  No, Your Honor, I don't.

23               THE COURT:  Well, okay.  That's going to be easy to

24   find out, I would think.  It seems to me that that's your

25   first -- you need to kind of go through this and see what's

Space Exploration Technologies Corp. v. USA                    4/30/2014

1    here and see whether there is an issue maybe that can be

2    addressed through this, as well.

3                MR. VACURA:  Yes, Your Honor, valid point.

4                THE COURT:  Do we want to set -- is there anything

5    else you need today?

6                MR. VACURA:  Based on this --

7                THE COURT:  That I'm going to give you today.

8                MR. VACURA:  No, Your Honor.  You know, we were --

9    and we talked tentatively with counsel about the

10   administrative record and briefing schedules and all that.

11   But it seems to be overcome by events at this point.

12               THE COURT:  Yeah.  I mean, I think logically what

13   makes sense for us to do while we're getting the sanction

14   issue arranged is to get a chron.  Even the Government

15   doesn't even know the complete chron.  So, let them get a

16   chron put together that you have and see -- let's get all the

17   documents, you know, that flow into the chron organized and

18   out there.  That's going to be item number one or list number

19   one.

20               MR. VACURA:  Yes, Your Honor.

21               THE COURT:  There may be some other internal

22   documents that you're going to want to see once you see that.

23   But it seems to me, that's the first order.  They're going to

24   have to take some time to pull together a record of some

25   sort, whatever record you have, which is going to be

1    enormous, I would think, given the fact that this thing has

2    been going on -- has been in investigation by the Government

3    since 19 -- 2005.  I don't know what -- you're going to want

4    to have whatever the Federal Trade Commission -- was given to

5    the Commission, too, I would think.  You'll have to have

6    somebody else assigned to do that stuff.

7            So, very interesting.  I notice here that Bill

8    Kovacic was on the -- was a commissioner at the time the

9    consent decree was issued.  We served together at the

10   Commission at the same time in the Reagan Administration, and

11   he has written a lot of law review articles about this area.

12   It's one that he had a lot of interest in.  I think he's

13   teaching now maybe at Georgetown or George Mason or

14   something.

15           MR. VACURA:  I think he's at --

16           THE COURT:  So, he knew a lot about this whole

17   issue just generically.  It's not a -- while it's not a --

18   it's a monopsony issue, you know, one purpose or one -- it's

19   not -- whatever.  You used the wrong word in the anti-trust

20   parlance in your complaint.

21           But the point, basically, there may be two sets of

22   problems here and we may need to separate those out, one of

23   which is there may be violations of the consent decree, which

24   I don't have jurisdiction over.  Then we need to see what I

25   do have jurisdiction over and what you have standing to fight

Space Exploration Technologies Corp. v. USA

1    about.

2              MR. VACURA:  Yes, Your Honor.

3              THE COURT:  And we're going to try to approach it

4    then.  And then we'll get to the issue of whether there's a

5    problem with any of that.

6              MR. VACURA:  Yes, Your Honor, we appreciate that.

7    Thank you.

8              THE COURT:  Okay.  And I will try to do that with

9    as much dispatch as is possible.

10             What's reasonable, do you think, for the Government

11   to begin?  Because you're going to do the laboring on the

12   chron?

13             MR. McILMAIL:  May I take the podium, Your Honor?

14             THE COURT:  Sure.  I don't want to impose anything

15   on you that you can't do.  I know you have many other --

16   given the Court got ten bid protests in in the last three

17   days, so you all are busy.

18             MR. McILMAIL:  At the bottom of my list, Your

19   Honor, is the -- I just want to signal that I would like to

20   talk about the preliminary injunction, not to ask Your Honor

21   to reconsider --

22             THE COURT:  Right.

23             MR. McILMAIL:  -- but to get the scope of it.

24   But --

25             THE COURT:  I'm just going to enjoin anything from

Space Exploration Technologies Corp. v. USA

1    going on until -- period.  Just stop whatever everybody --

2    anybody is doing on this right now today until you can get

3    manufacturing or delivery or whatever.  Maybe I'll have to

4    come up with some terms before I do it in the written order,

5    which I will do.  But, basically, I want to stop movement of

6    parts or money or anything like that right now until I know

7    whether we've got sanction issues.

8              MR. McILMAIL:  Your Honor --

9              THE COURT:  And that's in everybody's best

10   interests.  It's in the best interest of the joint venture,

11   too.  They don't want to be violating anything either.

12             MR. McILMAIL:  Your Honor, may I ask that the Court

13   consider the dramatic impact that the Court's order might

14   have on this program as opposed to, Your Honor --

15             THE COURT:  It's not going to have a dramatic

16   effect because you haven't launched anything.

17             MR. McILMAIL:  But, Your Honor, just --

18             THE COURT:  You're not even sure where, today, the

19   orders are, and you haven't read the regulations.  You

20   haven't read the sanctions.  How -- I mean, you cannot -- if

21   this is so easy to do, you should be able to snap your

22   fingers and get this done in no time.

23             MR. McILMAIL:  But, Your Honor, I ask that the

24   Court view this issue in terms of what Plaintiff has asked,

25   which is that there should be no more purchases.  If Your

Space Exploration Technologies Corp. v. USA                    4/30/2014

 1    Honor is only --

 2               THE COURT:  You're not doing anything right -- you

 3    don't have any money from Congress to purchase anything

 4    today.

 5               MR. McILMAIL:  But when Your Honor said everything,

 6    everything, to me, I fear, means everything that that program

 7    is doing right now to assemble, prepare --

 8               THE COURT:  Let me try to put some language

 9    together tonight, but you have the general drift of where I'm

10    going on this.

11               MR. McILMAIL:  I'm sorry, Your Honor --

12               THE COURT:  I don't want money being transferred,

13    okay, to anybody that's associated with the Russian

14    individuals on that list, okay, or their companies, frankly.

15    I mean, we need to stop right now to figure out what's going

16    on.  I don't know and you don't know either.  You have no

17    idea.

18               MR. McILMAIL:  But, Your Honor --

19               THE COURT:  And if you want to get on your feet,

20    get on your feet and tell me you have -- you know what's

21    going on.  You don't know what's going on.

22               MR. CAREY:  Your Honor, I don't know what's going

23    on.

24               THE COURT:  Right.

25               MR. CAREY:  But like Mr. McIlmail, I am concerned

1      about the scope of this because it is a hugely complex --

2                THE COURT:  I'm going to try to do it that makes

3      some sense, but it certainly seems to me that other companies

4      -- other companies are having the same problem.  The

5      sanctions -- I didn't come up with the sanctions.  The

6      Administration has put the sanctions on.  The Plaintiff has

7      told me -- am I wrong that you believe that there are monies

8      flowing to the people on the sanction list, is that correct?

9                MR. VACURA:  Your Honor, I don't know that --

10     because all of this is kind of done behind the curtain, we

11     don't know.  We can't identify specifically that money is

12     going to someone on the sanctions list, but that's a

13     reasonable inference from the facts --

14               THE COURT:  Well, you have people's names in the

15     complaint that are on the sanctions list.

16               MR. VACURA:  Correct.

17               THE COURT:  Okay.

18               MR. VACURA:  Correct.

19               THE COURT:  And what is your concern there?

20               MR. VACURA:  Our concern is that by purchasing

21     Russian engines like ULA is doing --

22               THE COURT:  Right.

23               MR. VACURA:  -- that that purchase money flows

24     to -- through the --

25               THE COURT:  Right.  And I don't know who owns those

Space Exploration Technologies Corp. v. USA

1    companies and I -- maybe the Intervenors know.  Do you know

2    who owns those companies?

3              MR. CAREY:  Your Honor, I don't.

4              THE COURT:  Okay.

5              MR. CAREY:  But I think that, in and of itself -- I

6    mean, this is a -- this contract is an incredibly complex

7    contract.  It's very --

8              THE COURT:  What is going to happen in the next two

9    weeks that you can't wait to get the answer on?

10             MR. CAREY:  My understanding is, at a very high

11   level, Your Honor, that the schedule for these contracts is

12   hugely important, and if you have one slip anywhere along the

13   way, it snowballs and it causes huge problems and huge costs,

14   both to the contractor and to the Government.  And, so, I,

15   like Mr. McIlmail --

16             THE COURT:  I think that the public interest in

17   being sure that the sanctions are honored by United States

18   companies and honored by the Government supercedes whatever

19   inconvenience you may experience in the next few weeks.  I

20   mean, the Government should be able to get this straightened

21   out internally.  In fact, today, I frankly thought that the

22   Government was going to come in and be able to make some

23   representations to the Court and have some representatives

24   from the agencies with them.

25             MR. McILMAIL:  Your Honor, may I be heard on that?

Space Exploration Technologies Corp. v. USA                    4/30/2014

1            THE COURT:  Sure.

2            MR. McILMAIL:  They are asking this Court to enjoin

3    any future purchases.  They are not asking this Court to

4    enjoin the flow of money to persons perhaps that --

5            THE COURT:  The sanctions list --

6            MR. McILMAIL:  Your Honor --

7            THE COURT:  -- says you can't.

8            MR. McILMAIL:  But they are not asking for

9    enforcement of these sanctions.  They are asking this Court

10   to enjoin a future purchase, a future purchase that hasn't

11   even been -- hasn't even been scheduled.  Presumably, there

12   are other entities in the Federal Government whose

13   responsibility it is to enforce sanctions -- enforce these

14   sanctions.

15           THE COURT:  And you're going to ask them, does this

16   present any problems because they're buying these Russian

17   components and we don't know -- you don't know right now who

18   is the recipient of those monies and whether any of those

19   people are on the sanctions list.

20           MR. McILMAIL:  Right now, nobody is buying

21   anything, Your Honor.  All these cores have been --

22           THE COURT:  I was just told there's money flowing.

23           MR. McILMAIL:  The United States --

24           THE COURT:  I -- they have to stop.

25           MR. McILMAIL:  The United States Air Force, Your

 1    Honor, has not -- is not purchasing any more cores until they

 2    actually issue a purchase.  This private litigant is --

 3              THE COURT:  But the Intervenors are buying these

 4    components.

 5              MR. McILMAIL:  Your Honor, this private litigant

 6    has asked this Court to enjoin a future purchase, not to

 7    enforce sanctions.  And for this Court to get involved in the

 8    enforcement of sanctions that involve foreign entities would

 9    be beyond this Court's jurisdiction in this bid protest

10    action, regardless of what this Intervenor is doing with

11    money he has received.  It is not a subject of this lawsuit.

12              THE COURT:  Well, I will try to -- the bid protest

13    -- I don't have the statute in front of me, but, basically,

14    the issue is whether there are any laws that are violated in

15    connection with the procurement.  The Circuit has interpreted

16    "in connection with the procurement" to be quite broad.

17              MR. McILMAIL:  Yes.  And that is precisely --

18              THE COURT:  Okay.  And -- and for that reason

19    and because this procurement has been challenged and because

20    I don't -- you can't even represent to me -- no one seems

21    to know what the sanctions say, you don't seem to know --

22    we know that there are Russian components, rockets, that

23    are being purchased.  We don't know who is the recipient

24    of -- that owns those companies.  We don't know where the

25    money is.

Space Exploration Technologies Corp. v. USA                          4/30/2014

1               MR. McILMAIL:  Your Honor --

2               THE COURT:  So, I'm just saying, let's just pause

3     for a second, have the Government, the people that are

4     experts in this matter, take a look at the situation and

5     check that box.

6               MR. McILMAIL:  If I may make a recommendation, Your

7     Honor.

8               THE COURT:  And that is a law that may have been --

9     those sanctions may have been violated and that relates -- is

10    connected with the procurement.

11              MR. McILMAIL:  But not -- not an action that they

12    are complaining of.  It may be, Your Honor, that --

13              THE COURT:  If I'm wrong, you can mandamus me.

14              MR. McILMAIL:  Which is why I'm asking if I can

15    make a recommendation in advance of any thought of that.

16              THE COURT:  Okay.

17              MR. McILMAIL:  And that is that we ask Plaintiff

18    whether those allegations in the complaint are background to

19    what they're really concerned about, which is the move of --

20    the way they described it, the move of the seven into the

21    requirements contract.  If that's all that they're -- if

22    that's all that they're trying to persuade the Court to stop,

23    then that's one thing.  If it's -- and they asked for this

24    precisely, they ask "no future orders."  Well, there is no

25    order in the pipeline.  I explained that the Air Force

1    doesn't even know when it will have the appropriations for

2    any new order.

3           I am not conceding to any preliminary injunction

4    terms, but what I'd suggest, Your Honor, is that, at the

5    most, the Court limit any injunction to a future order placed

6    by the Air Force for a core from ULS, as opposed to whatever

7    else -- and there must be a myriad of things -- that the Air

8    Force and the Intervenor and the Intervenor and its

9    subcontractors are doing in this enormously important

10   communications satellite program.  And for this Court --

11          THE COURT:  Well, I might be able to figure that

12   out by way of money.

13          MR. McILMAIL:  Pardon me, Your Honor.

14          THE COURT:  I may be able to work with the

15   injunction language on money.  I just got this, as I said

16   before.  I mean, I had to go try to find the sanctions

17   myself.  You know, the Government didn't come in and say, I

18   see this is an issue, don't worry, Judge, that is covered.

19          MR. McILMAIL:  Because they -- Your Honor, this

20   party has not even asked the Court to enjoin a single thing

21   except on a permanent basis.  Not on -- and I asked that --

22          THE COURT:  But the statutes that I have says I

23   have jurisdiction if there's any violation in connection with

24   a procurement.

25          MR. McILMAIL:  It must be -- that language must

Space Exploration Technologies Corp. v. USA

1    refer to what they are complaining about, not anything that

2    might be going on in the entire program.

3                THE COURT:  That's a legal argument.  That's a

4    legal argument --

5                MR. McILMAIL:  Yes.

6                THE COURT:  -- that you've made and, you know, I --

7                MR. McILMAIL:  I'd ask Your Honor --

8                THE COURT:  I believe that if the sanctions list is

9    being violated, that I have jurisdiction over that, given the

10   Circuit's interpretation of the language "in connection

11   with."

12               MR. McILMAIL:   Your Honor, I'd ask that before the

13   Court adopt terms like that, that it ask Plaintiff precisely

14   what it wants, and if it doesn't want a shutdown of -- even

15   temporarily, of this whole program, then it asks only for an

16   injunction against any future orders.  I'd only ask that,

17   Your Honor, before --

18               THE COURT:  I heard you, I heard you.

19               MR. McILMAIL:  And I -- oh, on the administrative

20   record, Your Honor, so Plaintiff has shared with us its list

21   of documents it wants in the administrative record.

22               THE COURT:  Okay.

23               MR. McILMAIL:  It consists of 11 categories.  We

24   think we can get that in two weeks.  But, Your Honor --

25               THE COURT:  I'm not putting any time constraints on

Space Exploration Technologies Corp. v. USA                    4/30/2014

1    you.

2            MR. McILMAIL:  But I just wanted to say, Your

3    Honor, that we may not agree to all those categories because

4    the administrative record should only consist of what is

5    behind --

6            THE COURT:  That's a fight for another day.  We

7    don't need to resolve that today.  What we're going to do

8    first is a chron and they -- you guys are going to get a list

9    and then they're going to -- if you say no, then they'll say

10   we can move to compel, and you'll say no and tell me why.

11   But we're not doing that today.

12           MR. McILMAIL:  Yes, okay, Your Honor.

13           THE COURT:  Okay?

14           MR. McILMAIL:  Then on the chron, does the Court

15   want this chronology to be filed with the Court?

16           THE COURT:  Yeah.

17           MR. McILMAIL:  With documents attached?

18           THE COURT:  Yeah, I'd like to have -- well, you can

19   do it either way.  But the first thing I would want to do is

20   have a joint list that you both agree on the chronology.  And

21   to the extent that you have a list of documents that are

22   relevant to that, that you both agree that these documents

23   exist, then you can fight over who gets what.  That will be

24   another step.

25           MR. McILMAIL:  Yes, Your Honor.  But before we

Space Exploration Technologies Corp. v. USA

1   share -- before we share any documents with Plaintiff, we

2   would need -- well, any documents that have proprietary

3   information --

4            THE COURT:  Right, I'm assuming --

5            MR. McILMAIL:  -- we would need a protective order.

6            THE COURT:  -- that you're going to allege a lot of

7   these are proprietary.  But let's, first of all, just get the

8   list of the chron --

9            MR. McILMAIL:  Yes, Your Honor.

10           THE COURT:  -- and a list of the -- names of the

11   documents and the dates.  Those things surely are not

12   proprietary.

13           MR. McILMAIL:  No, I don't expect they are.

14           THE COURT:  Okay, all right.  So, let's just do

15   that step.  Now, the question is when can you -- when is it

16   convenient for you to do that?

17           MR. McILMAIL:  By the end of the week I'm sure we

18   can do that.

19           THE COURT:  Okay.  Well, that's up to you.

20           MR. McILMAIL:  I mean, if we're talking about a

21   chronology of the basic events, yes.

22           THE COURT:  Okay.  Whatever is good for you.  I'm

23   not pushing you one way or the other.

24           MR. McILMAIL:  But I'd ask that everyone understand

25   that we not share any documents that have information that

Space Exploration Technologies Corp. v. USA                    4/30/2014

    1    should be protected --

    2              THE COURT:  All I'm asking for, for the third or

    3    fourth time, is a chron plus a list of the documents that

    4    flow into the chron.

    5              MR. McILMAIL:  Yes, Your Honor.

    6              THE COURT:  I'm not asking you to turn over

    7    anything yet.

    8              MR. McILMAIL:  Yes, Your Honor.

    9              THE COURT:  If you want to turn over some of them

   10    now, fine.  As soon as you're ready to do that, you let us

   11    know and we'll enter a protective order.  Okay?

   12              MR. McILMAIL:  Yes, Your Honor.

   13              THE COURT:  Then, if there are documents that you

   14    don't want to turn over, for whatever reasons -- and you'll

   15    fight about those -- you'll put little stars on those and

   16    you'll identify those to Plaintiff and say you can't have

   17    those, and they'll move to compel.  And you'll tell me why

   18    they're not entitled to them and we'll resolve that.

   19              MR. McILMAIL:  Yes, Your Honor.

   20              THE COURT:  Okay?

   21              MR. McILMAIL:  Yes.

   22              THE COURT:  I don't want to get too far out and do

   23    too many things.  The Court's sensitive to -- I mean, I have

   24    never issued a TR -- I've been on the bench ten years, I

   25    haven't issued a TRO yet, nor have I issued a preliminary

Space Exploration Technologies Corp. v. USA                         4/30/2014

1    injunction yet.  It's not something that I do for fun.

2             I do not -- it seems to me, given the national

3    security issues involved right now, the sanctions are

4    important to be honored by everybody.  The Government should

5    be able to take a pause, okay, in the rocket program that you

6    have, where you haven't even launched anything yet, to

7    guarantee that the sanctions that have been imposed are not

8    in jeopardy of being violated by the purchases of these

9    Russian rockets.  You don't know the answer to that today.

10            MR. McILMAIL:  Your Honor, I --

11            THE COURT:  But we're going to find out real quick.

12            MR. McILMAIL:  Your Honor, I, frankly, am

13   struggling to understand the scope of the terms of the --

14            THE COURT:  Well, I haven't written it yet.  I'm

15   about ready to do that.  I'm going to sit down and do that.

16   I'm giving you some warning about it.  I take your cautions

17   to heart, okay?  If I'm doing the wrong thing, the Circuit

18   will correct it.  But I don't want to err on the side of not

19   doing something under these circumstances, and I think you

20   would appreciate that since you do represent the United

21   States.

22            MR. McILMAIL:  Yes, Your Honor.

23            THE COURT:  And you're the lawyers for the

24   President, as well.

25            MR. McILMAIL:  Your Honor, if I understand

1   correctly, currently, there is no injunction in place and

2   there will not be until the Court issues a written order.

3          THE COURT:  That's correct.

4          MR. McILMAIL:  Thank you.

5          THE COURT:  But if you want to start sending money

6   over to Russia between now and then, I would think that would

7   not be considered to be prudent conduct.  I certainly don't

8   think the Congress would care for that.

9          MR. McILMAIL:  Your Honor, I have never heard --

10         THE COURT:  If you're real anxious to get some

11  money moved over there, then that's up to you.  It has

12  nothing to do with me.

13         MR. McILMAIL:  Your Honor, I have not heard at all

14  in this case that the United States Government is sending any

15  money to Russia through this program.

16         THE COURT:  They wouldn't.  It would be sent by the

17  joint venturers.

18         MR. McILMAIL:  Thank you, Your Honor.

19         THE COURT:  Thank you very much.  Is there anything

20  else?

21         MR. CAREY:  Yes, Your Honor.

22         THE COURT:  And I'll try to keep it -- I understand

23  your business concerns.  I had clients when I was in private

24  practice.  I know that injunctions are disruptive to

25  businesses.  I don't want to -- I don't have any interest in

Space Exploration Technologies Corp. v. USA

1    hurting the companies or the joint venturer in whatever

2    you're doing.  My concern is with this one component.  And it

3    may be that you all may want to rethink why you're purchasing

4    those from Russia at this particular point.  Certainly,

5    that's something that the company -- somebody in the company

6    must be considering.

7              MR. CAREY:  Your Honor, I -- my concern is -- this

8    engine has been used in these rockets, it's the Atlas family

9    of rockets, since I think 1995.

10             THE COURT:  That may be.

11             MR. CAREY:  And the impact of that --

12             THE COURT:  But these sanctions were not in place

13   at that time.  They are now.

14             MR. CAREY:  I understand that, Your Honor.

15             THE COURT:  Okay.

16             MR. CAREY:  But we don't even know -- we don't

17   know --

18             THE COURT:  Right.

19             MR. CAREY:  -- that there's any violation.  They've

20   alleged that there's some --

21             THE COURT:  What I am asking the Government to do

22   is tell me there's no problem.

23             MR. CAREY:  And what I would ask is that there be

24   some period in which we be permitted to figure out if there

25   is a problem before the injunction hits, because --

1          THE COURT:  I don't want to have a problem with

2     having money going to the people on the sanctions list, okay?

3          MR. CAREY:  None of us want a sanctions problem,

4     Your Honor.  But we have --

5          THE COURT:  I know you don't.

6          MR. CAREY:  But we have no -- Mr. -- if I

7     understood Mr. Vacura right now --

8          THE COURT:  Let me come at this a different way.

9     What has the joint venturer done internally to ensure that

10    there are no violations since you are purchasing the Russian

11    equipment?

12         MR. CAREY:  Your Honor, I have not asked that

13    question yet.

14         THE COURT:  Okay.  Until then -- until then, I

15    think there's nothing really more that we can discuss.  You

16    don't know.  You haven't -- you don't have a plan in place.

17    You don't know.

18         MR. CAREY:  Well, no, I don't know that that --

19         THE COURT:  All I'm saying is to avoid a problem,

20    we're going to take a deep breath for a few days until we can

21    get that answer from the Government.  They have every

22    incentive.  They know how to pick up the phone and call the

23    State Department and the Commerce Department and the

24    Treasury.  They know how to do that.  And their calls, I'm

25    sure, will be welcomely received -- warmly received because

Space Exploration Technologies Corp. v. USA

1    they want to work together on this.  It may be that that may

2    happen to disrupt your business for a while, but that has

3    nothing to do with me.  We need to get that box checked in

4    this circumstance at this time.

5            MR. CAREY:  But -- and, Your Honor, all I'm asking

6    is when the Court says there's no plan in place, my suspicion

7    is there is a plan in place and I would -- I think --

8            THE COURT:  Well, you didn't come to court to

9    present it to me.

10           MR. CAREY:  In fairness, Your Honor, we did not

11   come prepared to present on that issue because the Plaintiff

12   did not ask for relief.  My reading of the complaint was that

13   that was color to their complaint.  But now that we know that

14   the Court is concerned about it, we are certainly ready,

15   willing and able to figure it out.

16           THE COURT:  Good.  So, why don't we use the time we

17   have left today to begin that process, and I will try to get

18   -- put a pen to paper to do something that will be as least

19   disruptive to your business as humanly possible, but to give

20   us time to get that answer from the Federal Government, the

21   agencies that are responsible for this, and then we can move

22   on.  Okay?

23           MR. CAREY:  Thank you, Your Honor.

24           THE COURT:  And if you don't like it, then you can

25   mandamus me and the Circuit, I'm sure, would take this up in

Space Exploration Technologies Corp. v. USA

1    prompt order.  Okay?

2              MR. McILMAIL:  May I -- I'm sorry, Your Honor.  I

3    just need to ask one more question.

4              THE COURT:  Sure.

5              MR. McILMAIL:  What precise question does the Court

6    want us to begin to answer right now regarding sanctions and

7    the flow of money to Russia?  So that I can bring --

8              THE COURT:  I have a feeling that you know the

9    questions to ask, and I'm going to sit down and try to write

10   an order right now that will be -- you can hand to the

11   agencies.

12             MR. McILMAIL:  Thank you, Your Honor.

13             THE COURT:  Okay, thank you.

14             (Whereupon at 4:46 p.m., the hearing was

15   adjourned.)

16

17

18

19

20

21

22

23

24

25

Space Exploration Technologies Corp. v. USA                     4/30/2014

```
 1                    CERTIFICATE OF TRANSCRIBER

 2

 3           I, Elizabeth M. Farrell, court-approved

 4    transcriber, certify that the foregoing is a correct

 5    transcript from the official electronic sound recording of

 6    the proceedings in the above-titled matter.

 7

 8

 9

10    DATE:   5/1/2014               s/Elizabeth M. Farrell

11                                   ELIZABETH M. FARRELL, CERT

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```