```
 1                UNITED STATES COURT OF FEDERAL CLAIMS
 2
 3   SPACE EXPLORATION TECHNOLOGIES CORP.,    )
 4            Plaintiff,                      ) Case No.
 5                vs.                         ) 14-354C
 6   THE UNITED STATES OF AMERICA,            )
 7            Defendant.                      )
 8                vs.                         )
 9   UNITED LAUNCH SERVICES, LLC,             )
10            Intervenor Defendant.           )
11
12                            Suite 709
13            Howard T. Markey National Courts Building
14                      717 Madison Place, N.W.
15                         Washington, D.C.
16                        Monday, May 5, 2014
17                            3:30 p.m.
18
19
20            BEFORE: THE HONORABLE SUSAN G. BRADEN
21
22
23
24
25   Elizabeth M. Farrell, CERT, Digital Transcriber
```

```
 1    APPEARANCES:
 2    ON BEHALF OF THE PLAINTIFF:
 3            RICHARD J. VACURA, ESQ.
 4            CATHERINE L. CHAPPLE, ESQ.
 5            PABLO NICHOLS, ESQ.
 6            Morrison & Foerster LLP
 7            1650 Tysons Boulevard, Suite 400
 8            McLean, Virginia 22102
 9            (703) 760-7763
10            rvacura@mofo.com
11            cchapple@mofo.com
12
13
14
15    ON BEHALF OF THE DEFENDANT:
16            TIMOTHY P. McILMAIL, ESQ.
17            KIRK MANHARDT, ESQ.
18            BRYAN WARNOCK, ESQ.
19            U.S. Department of Justice - Civil Division
20            Post Office Box 480
21            Ben Franklin Station
22            Washington, D.C. 20044
23            (202) 616-0342
24            timothy.mcilmail@usdoj.gov
25
```

```
 1    APPEARANCES:
 2    ON BEHALF OF THE INTERVENOR:
 3            JASON A. CAREY, ESQ.
 4            HUNTER BENNETT, ESQ.
 5            JOHN SORRENTI, ESQ.
 6            McKenna Long & Aldridge, LLP
 7            1900 K Street, N.W.
 8            Washington, D.C.  20006
 9            (202) 496-7711
10            jcarey@mckennalong.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    P R O C E E D I N G S
 2                      -    -    -    -    -
 3              (Proceedings called to order, 3:39 p.m.)
 4              LAW CLERK:  Good afternoon, this is Chris McCall,
 5   law clerk for Judge Braden.  Could the parties please state
 6   their appearances for the record starting with the Plaintiff.
 7              MR. VACURA:  This is Richard Vacura with Morrison
 8   and Foerster.  On with me are Catherine Chapple and Pablo
 9   Nichols of Morrison and Foerster.
10              MR. McILMAIL:  And this is Tim McIlmail for
11   Defendant, United States, with Kirk Manhardt and Bryan
12   Warnock.  It is possible that a Michael Rose, an attorney
13   with the Air Force, might try to join us later.
14              MR. CAREY:  Your Honor, this is Jason Carey of
15   McKenna, Long and Aldridge for Intervenor, ULS.  With me are
16   Hunter Bennett and John Sorrenti, also of McKenna.
17              THE COURT:  Good afternoon.  I have looked at the
18   Government's motion and the responses of the Plaintiff and
19   the Intervenor, and I guess our question here is, we don't
20   understand why the Government's asking for what they're
21   asking for.  I mean, I have not indicated in any way that the
22   Government can't pay ULS or ULA for anything.
23              MR. McILMAIL:  Thank you, Your Honor.
24              THE COURT:  What -- I mean, since --
25              MR. McILMAIL:  There were two ways -- there were
```

```
 1    two ways to read the order.
 2              THE COURT:  Well, how is that?
 3              MR. McILMAIL:  The more literal way was what Your
 4    Honor just confirmed.  A broader interpretation was the --
 5    would have reflected some of what we thought we understood
 6    Your Honor to mean during the hearing, which was a general
 7    concern about movement of money toward NPO Energomash or for
 8    some -- or a sanctioned entity or person.  And we wanted to
 9    confirm before we -- before we advise the Air Force because
10    it turned out that the next day, there was a payment that was
11    -- that was scheduled to have been made.  And, so, we were
12    confronted with the issue right away and we wanted to make
13    sure we were -- are conducting ourselves in the manner that
14    the Court expected.
15              THE COURT:  Well, I don't have any -- you know, I
16    don't need to micromanage this.  I don't think there's any --
17    the only thing that I learned in this process is I didn't
18    know who RD Amross was before, and no one mentioned that to
19    me in the hearing.  So, to be clear, should I include RD
20    Amross in the order?  That's a joint venture, I understand,
21    between the Russian Government and the United States, is that
22    correct?
23              MR. CAREY:  Your Honor, this is Jay Carey for the
24    Intervenor.  My understanding is that RD Amross is a jointly
25    owned company -- it's jointly owned between NPO Energomash
```

1   and Pratt & Whitney.  It is a U.S. entity.
2           As we stated in our filing earlier today, we have
3   stopped payments to RD Amross.
4           THE COURT:  No, I saw that, but I didn't even know
5   who they were.  See, no one told me who they were.  So, I
6   probably should include that for clarity's sake.
7           How is the -- is the Government having success with
8   getting the letter that I need or the notice that I need from
9   the other agencies?
10          MR. McILMAIL:  Well, we have made a -- partial
11  success, Your Honor.  We've spoken to all three and they have
12  told us that payments to NPO Energomash would not violate the
13  sanctions, or at least with respect to State and Commerce,
14  that such payments wouldn't violate their regulations because
15  those relate only to exports, which do not appear to be
16  involved in this case.
17          THE COURT:  Right, right.
18          MR. McILMAIL:  The Office of Foreign Asset Control
19  from Treasury has told us that payments to NPO Energomash
20  would not violate the sanctions because, as we all know, one,
21  NPO Energomash is not on the list, and two, there's no
22  indication that OFAC has seen any -- that the Deputy Prime
23  Minister named in the Court's order controls the -- controls
24  NPO Energomash.
25          And Mr. Carey has explained to me that the

1   definition of control that applies here, according to OFAC,
2   is that a person not control more than 50 percent.  And this
3   also comes from Mr. Carey, that the Russian Government owns
4   80 percent of NPO Energomash.  And, so, no other entity or
5   person could own more than 50 percent.  I suppose I should
6   defer to Mr. Carey further on that, though, Your Honor.
7           Oh, but if I could just say this last thing, Your
8   Honor.  So, although we've heard all -- we've been told all
9   that, we haven't -- that has not yet been reduced to writing.
10  But if the Court would accept those representations in lieu
11  of writings from those three entities, then I would ask the
12  Court to do that.
13          THE COURT:  Well, I -- I'm not going to do that,
14  first of all.  But, second of all, I'm not sure what's going
15  to happen next, nor are you, because I guess there was
16  another pronouncement Friday that there were going to be
17  additional sanctions if there was any interference with the
18  elections.  And, of course, there's been violence over the
19  weekend.  So, I just don't know what we're going to do.  I
20  don't want to disrupt anybody's business.
21          As I understand it from the press comments that
22  have been made, you have enough of these engines for -- these
23  rockets for now, is that correct?  You're not going to run
24  out of them this week.
25          MR. CAREY:  Your Honor, I think it's not -- this is

```
 1   Jay Carey.
 2              THE COURT:  Yeah.
 3              MR. CAREY:  It's not that simple.  As you would
 4   imagine, you know, launch services for both the United States
 5   Government and for commercial entities, that is ULS's
 6   business.  ULS is routinely engaging in competitions, both
 7   itself and as a team member with others, for the award of
 8   contracts.  There are currently two proposals that they have
 9   pending as a team member and another, I believe -- I haven't
10   pinned the exact number down yet, but I believe another 13
11   coming up in the next couple months or so.
12              THE COURT:  Right.  But that's not next week.
13              MR. CAREY:  I know, Your Honor, but as you can
14   imagine, this industry -- it prizes both reliability and low
15   risk, and even with just the two proposals that are pending,
16   the fact that ULS's customers are now -- now perceive that
17   there may be an issue with the ability to obtain engines, in
18   my view, creates a real risk of irreparable harm from a loss
19   of opportunity to compete, lost business opportunity.  So,
20   from our view, it's critical to resolve the preliminary
21   injunction as quickly as possible.
22              And as Mr. McIlmail indicated, we have looked at
23   the regulations, both the Executive Order 13661 and the OFAC
24   list of persons that came out after the Executive Order, and
25   also the OFAC guidance that, as Mr. McIlMail said, defines
```

1  control.  And where we are now, Your Honor, is that NPO
2  Energomash is not on the list, and the OFAC definition of
3  control is that for control to exist, a sanctioned individual
4  must own more than 50 percent of the entity.  And as Mr.
5  McIlmail indicated, our understanding is that the Russian
6  Government owns 80 percent of NPO Energomash, meaning that
7  Mr. Rogozin cannot own the required more than 50 percent.
8          THE COURT:  Well, but he controls the 80 percent.
9          MR. CAREY:  But, Your Honor, that's not -- it's
10 pretty clear, Your Honor, that that's not the standard under
11 the OFAC guidance, that the OFAC guidance defines control as
12 more than 50 percent ownership.  And, Your Honor, my
13 understanding is that the President and the Department of
14 Treasury have been careful to walk a line in terms of the
15 scope of the sanctions that they establish here.
16         THE COURT:  Right.
17         MR. CAREY:  And, so, my understanding is that in no
18 way is the intent of the Executive Branch to sanction any
19 entity that is owned in whole or in part by the Russian
20 Government.
21         THE COURT:  Well, you know more than most people do
22 then.
23         MR. McILMAIL:  Your Honor, this is Tim McIlmail.
24 May I say something to Mr. Carey's point?
25         THE COURT:  Sure.

1          MR. McILMAIL:  That what -- what Mr. Carey has
2    explained and what Your Honor pointed out about something
3    that happened on Friday illustrates that in -- particularly
4    in a complex and fast-moving area involving foreign
5    relations, that the Court not allow these type of issues to
6    get in the way of an expeditious resolution of this case and,
7    rather, allow an entity entrusted with the responsibility of
8    figuring out to whom the sanctions apply and enforcement of
9    those sanctions -- and by that, I mean OFAC -- to let --
10   allow OFAC to deal with that as opposed to those of us
11   here --
12          THE COURT:  Well, that's what --
13          MR. McILMAIL:  -- who are litigating and
14   adjudicating this case trying to figure that out.
15          THE COURT:  Well, that's -- that's -- yeah.  That's
16   what I'm going to do.  I mean, you know -- on Friday, I know
17   the President -- I was listening to the radio when he made an
18   announcement asking United States companies not to do
19   business with Russia.  I mean, he made that announcement on
20   Friday.  So, I don't know -- I don't know how you all feel
21   about that.  He didn't make an order, but he asked companies
22   to do that.  So, I'm going to leave the injunction the way it
23   is and wait to get guidance from the Treasury Department
24   since it's apparently coming imminently.  So, nothing will
25   happen between now and then, and we'll just have to wait and

```
 1   see what happens.
 2             How are you coming on your other projects?
 3             MR. McILMAIL:  On the chronology, Your Honor, we
 4   have a draft that we are getting ready to send to the other
 5   parties.  On the administrative record, I haven't had any
 6   conversations yet with Mr. Vacura about that since we were in
 7   the courtroom Wednesday.
 8             THE COURT:  If I had known about RD Amross, I would
 9   have added them in the injunction.  But since the Plaintiffs
10   have represented that they are not doing business with them
11   now, I'm not going to change the order based on their
12   representation, particularly since we're expecting to hear
13   from the Treasury Department shortly, okay?
14             MR. VACURA:  Excuse me, Your Honor, I think you
15   said Plaintiff and meant the Intervenor, ULS.
16             THE COURT:  Oh, I'm sorry.  I don't know who's
17   speaking on the phone.  I mean, I can't tell unless you say
18   who you are each time.  I don't know your voices that well.
19             MR. VACURA:  This is Rick Vacura who just made that
20   comment, but I believe Mr. Carey can confirm that that --
21             THE COURT:  Okay.
22             MR. VACURA:  -- was his representation on behalf of
23   his client, the Defendant Intervenor.
24             THE COURT:  Okay. All righty. So, you have --
25   you're going to get back to me sometime this week on your --
```

```
 1   the chronology and the first set of documents you all need to
 2   exchange.
 3            MR. McILMAIL:  Yes, Your Honor.
 4            THE COURT:  Okay.  And then the Government will let
 5   me know when they hear from the Treasury Department.
 6            MR. McILMAIL:  Yes, Your Honor.  This is Tim
 7   McIlmail.
 8            THE COURT:  Okay.  Does anybody know when the
 9   Ukraine elections are supposed to be?
10            MR. McILMAIL:  This is Tim McIlmail.  I do not,
11   Your Honor.
12            THE COURT:  For some reason, I thought it was
13   around the 12th or the 13th of May.  Let me see if I can find
14   it in the computer.  Hold on just a second.  Give me just a
15   second to see if I can pull it up here.  I've got competing
16   documents backed up in my...
17            (Pause in the proceedings.)
18            THE COURT:  Well, it's less than a month away, that
19   we know.
20            MR. McILMAIL:  I'm sorry, Your Honor, this is Tim
21   McIlmail.  The transmission broke up and I didn't hear all
22   of --
23            THE COURT:  Yeah, I'm trying to find the date of
24   the thing.  I'm just looking at the -- it's less than a month
25   away, according to one article.  But I don't know what...
```

 1          MR. CAREY:  Your Honor, this is Jay Carey.  If at a
 2   convenient time I could be heard further on that.
 3          THE COURT:  Well, go ahead and let us know if you
 4   know.  I'm reading this press release between Obama and
 5   Merkel on Friday.  So, I don't know -- it says, the next set
 6   of measures would include sanctions against the energy
 7   sector, banking, and mining industries directly.
 8          MR. CAREY:  Your Honor, on -- actually, that was
 9   the point I'd like to address.
10          THE COURT:  Sure.
11          MR. CAREY:  I certainly understand, as I think we
12   all do, that there is a live possibility of our government
13   announcing additional future sanctions.  And, certainly, we
14   and our client are going to monitor that.
15          THE COURT:  Sure.
16          MR. CAREY:  And if NPO Energomash shows up on any
17   of those future lists, we will take the appropriate actions.
18   But in our view, the possibility that NPO Energomash might
19   end up on a future sanctions list is not a sufficient reason
20   to have a preliminary injunction at this point, particularly
21   given the harm to my client.  And I also understand --
22          THE COURT:  Well, how exactly has your client been
23   harmed in the last three or four days?  I just don't
24   understand that.
25          MR. CAREY:  Well, Your Honor, as I was explaining

1   earlier, you know, they are routinely competing for business

2   and this -- a preliminary injunction --

3          THE COURT:  Well, there -- you mean they're

4   continually asking people to purchase things.

5          MR. CAREY:  They're continually competing for

6   award, yes, of launch services.

7          THE COURT:  Okay.

8          MR. CAREY:  And this preliminary injunction casts a

9   shadow over their ability to perform and perform on schedule.

10         THE COURT:  Who has withdrawn business from you

11  based upon this?

12         MR. CAREY:  No one has withdrawn yet, Your Honor.

13         THE COURT:  Okay.

14         MR. CAREY:  But we have two proposals that are

15  pending and we think they are --

16         THE COURT:  And where are they pending?

17         MR. CAREY:  I don't have the details, Your Honor.

18         THE COURT:  Okay, all right.  Well, let's just not

19  make statements unless we have specifics to back them up.

20  It's not helpful.

21         All right, I'll look forward to a report on the

22  next materials that you have so that we can get moving on

23  this.  Thank you very much.

24         (Whereupon at 3:56 p.m., the hearing was

25  adjourned.)

Space Exploration Technologies Corp. v. USA                    15
                                                          5/5/2014

 1                    CERTIFICATE OF TRANSCRIBER
 2
 3         I, Elizabeth M. Farrell, court-approved
 4   transcriber, certify that the foregoing is a correct
 5   transcript from the official electronic sound recording of
 6   the proceedings in the above-titled matter.
 7
 8
 9
10   DATE:  5/6/2014                s/Elizabeth M. Farrell
11                                  ELIZABETH M. FARRELL, CERT
12
13
14
15
16
17
18
19
20
21
22
23
24
25