1                    UNITED STATES COURT OF FEDERAL CLAIMS

2

3   SPACE EXPLORATION TECHNOLOGIES CORP.,     )

4              Plaintiff,                     ) Case No.

5                   vs.                       ) 14-354C

6   THE UNITED STATES OF AMERICA,             )

7              Defendant.                     )

8                   vs.                       )

9   UNITED LAUNCH SERVICES, LLC,              )

10             Intervenor Defendant.          )

11

12                       Courtroom 8

13            Howard T. Markey National Courts Building

14                   717 Madison Place, N.W.

15                     Washington, D.C.

16                   Thursday, May 8, 2014

17                      10:00 a.m.

18                        Hearing

19

20

21          BEFORE: THE HONORABLE SUSAN G. BRADEN

22

23

24

25  Linda D. Metcalf, CER, Digital Reporter

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                                    5/8/2014

```
 1   APPEARANCES:

 2   ON BEHALF OF THE PLAINTIFF:

 3            RICHARD J. VACURA, ESQ.

 4            CATHERINE L. CHAPPLE, ESQ.

 5            PABLO NICHOLS, ESQ.

 6            Morrison & Foerster LLP

 7            1650 Tysons Boulevard, Suite 400

 8            McLean, Virginia 22102

 9            (703) 760-7763

10            rvacura@mofo.com

11            cchapple@mofo.com

12

13

14

15   ON BEHALF OF THE DEFENDANT:

16            TIMOTHY P. McILMAIL, ESQ.

17            KIRK MANHARDT, ESQ.

18            BRYAN WARNOCK, ESQ.

19            U.S. Department of Justice - Civil Division

20            Post Office Box 480

21            Ben Franklin Station

22            Washington, D.C. 20044

23            (202) 616-0342

24            timothy.mcilmail@usdoj.gov

25
```

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                    5/8/2014

```
 1    APPEARANCES:

 2    ON BEHALF OF THE INTERVENOR:

 3            JASON A. CAREY, ESQ.

 4            HUNTER BENNETT, ESQ.

 5            McKenna Long & Aldridge, LLP

 6            1900 K Street, N.W.

 7            Washington, D.C.  20006

 8            (202) 496-7711

 9            jcarey@mckennalong.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC

```
 1               P R O C E E D I N G S

 2                 -    -    -    -    -

 3          (Proceedings called to order, 10:20 a.m.)

 4          LAW CLERK:  The United States Court of Federal

 5   Claims is now in session, the Honorable Susan G. Braden

 6   presiding.

 7          THE COURT:  Good morning.

 8          ALL:  Good morning.

 9          THE COURT:  If you will indulge me for a second, my

10   daughter is expecting a child today.  It's my first grandson

11   -- my first grandchild.  And, so, I have the phone here in

12   case she calls me so I can get on a plane.

13          First of all, I really appreciate the Government

14   acting expeditiously in getting this information from the

15   other agencies.  I thought it was very helpful.  My

16   preliminary injunction was premised upon -- it says, "Unless

17   or until the Court receives the opinion of the United States

18   Department of Treasury and Commerce and State that such

19   purchases or payments will not directly or indirectly

20   contravene the Executive Order 13661."

21          The letter that I received from Treasury actually

22   was -- raised additional questions by the Court.  So, maybe

23   we should go right there.  I wanted to ask Mr. Smith some

24   questions directly, but the Government, as I understand it,

25   has declined to produce him, is that correct?
```

1          MR. McILMAIL:  Yes, Your Honor.  This is Tim

2    McIlmail for the United States.  That is correct.

3          THE COURT:  And what is the reason for declining to

4    have him since he proffered this letter to the Court as a

5    reason to dissolve the injunction.

6          MR. McILMAIL:  Because it's our view, Your Honor,

7    that the letters we've provided provide the Court a

8    sufficient basis to rule upon the injunction one way or the

9    other.

10          THE COURT:  Okay.  Are you prepared to answer

11    questions then?

12          MR. McILMAIL:  To the extent I can, I am.

13          THE COURT:  Okay.  Well, what if you can't, then

14    what?

15          MR. McILMAIL:  Then if the court decides that the

16    answers we provide are insufficient, the Court presumably

17    would deny the motion.  And if the Court denied -- if the

18    Court decides that the answers are sufficient and that the

19    letters are sufficient, the Court presumably can grant

20    permission to dissolve.

21          THE COURT:  Okay.  Well, do you want to take the

22    podium?

23          MR. McILMAIL:  Yes, Your Honor, thank you.

24          THE COURT:  It might be easier for everybody to

25    hear you.

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                                    5/8/2014

1              MR. McILMAIL:  Thank you.  May it please the Court,

2     and also, Your Honor --

3              THE COURT:  Well, I'm not looking for an argument

4     right now.  I want to ask you some questions, okay?

5              MR. McILMAIL:  Yes, Your Honor.

6              THE COURT:  Because I've read the papers.  There's

7     no point in going through the argument.  The letter that I

8     received from Treasury says, "Please be advised that, in our

9     view, control by Deputy Prime Minister Rogozin of NPO

10    Energomash, if true, could be a potential basis for Treasury

11    to block formally the property and interests in property of

12    the company pursuant to Executive Order 13661, particularly

13    under Section 1(a)(ii)(C)."

14             And then they go on to say, (as read) "As we

15    interpret the order, it requires Treasury to make an

16    affirmative determination to trigger blocking under the

17    'controlled by' provisions of the order.  As of today, no

18    such determination has been made."

19             So, what -- I gather what they're saying is that

20    they would make the determination as to whether or not the

21    company -- if the company is controlled by this gentleman,

22    then it would violate the Executive Order, is that -- am I

23    reading that correctly?

24             MR. McILMAIL:  That's how I -- well, I understand

25    that they would first have to make a determination and --

1          THE COURT:  Well, we're going to get to that.

2          MR. McILMAIL:  -- and then --

3          THE COURT:  But they said if -- if they're -- if he

4    does control it, then there would be a violation of the

5    Executive Order.

6          MR. McILMAIL:  Well, there would be a potential

7    basis for OFAC to block formally.  Now, if by -- if by that

8    they mean -- a person or an entity has to be on the list.

9          THE COURT:  Right.

10          MR. McILMAIL:  So --

11          THE COURT:  He's on the list.

12          MR. McILMAIL:  He is, yes.  But NPO Energomash is

13    not.

14          THE COURT:  That's correct.

15          MR. McILMAIL:  Right.  So, what would have to

16    happen is that there would have to be a determination that --

17    of control, and as this -- as OFAC interprets that, that has

18    to be with percentage of shares.

19          THE COURT:  And how do you know that?

20          MR. McILMAIL:  How do I know that?

21          THE COURT:  Yes.  It doesn't --

22          MR. McILMAIL:  I remember having been told that.

23          THE COURT:  Pardon me?

24          MR. McILMAIL:  I remember having been told that

25    by --

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                                    5/8/2014

1            THE COURT:  Right.  But is there a place that the

2    Court can see that?

3            MR. McILMAIL:  I don't see that there.  So, then,

4    even if it were determined that he controlled it, there would

5    have to be an affirmative action by OFAC to block by putting

6    NPO Energomash on the list.  That's how I understand the

7    process would work.  So, that's why I read the potential

8    basis for OFAC to block formally because there would have to

9    be consultation, as I read this, between State and Treasury

10   to determine that NPO Energomash would be blocked.

11           THE COURT:  So, I'm trying to figure out how this

12   works.  He's on the sanction list.

13           MR. McILMAIL:  Yes.

14           THE COURT:  But they wouldn't determine he's

15   controlling something today.  When would they do that?

16           MR. McILMAIL:  Well -- well, in my consultation

17   with OFAC --

18           THE COURT:  Mm-hmm.

19           MR. McILMAIL:  -- I understand that they do not see

20   any indication that Mr. -- that Deputy Prime Minister Rogozin

21   does control NPO Energomash in the way that office interprets

22   the term "control" in the Executive Order, that they don't

23   see the at least 50 percent.  This goes back to what Mr. --

24           THE COURT:  Well, let's -- 50 percent of what?  I

25   mean, that's --

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                                5/8/2014

 1              MR. McILMAIL:  Of the -- I interpret that as the

 2       shares of NPO Energomash, as Mr. --

 3              THE COURT:  Well, the Government -- according to

 4       the reports of the company on the Internet that we were able

 5       to pull up on our own indicate that at least 80 percent --

 6       they had a recent transaction apparently where somebody had

 7       swapped out their shares, a private person -- that 80 percent

 8       of the company approximately is owned by the Russian

 9       Federation.

10              MR. McILMAIL:  That's what I understand

11       including -- well, I remember Mr. -- I remember Mr. Carey

12       explaining that the other night.

13              THE COURT:  Okay.  Who's Mr. Carey?

14              MR. McILMAIL:  Mr. Carey, the Intervenor's counsel.

15              THE COURT:  Oh, okay, I'm sorry.

16              MR. McILMAIL:  Well, so, what this letter means,

17       Your Honor, is that as of May 6th, OFAC, which has looked

18       into this to the extent it has, has determined that payments

19       -- payments or -- purchases from and payments to NPO

20       Energomash currently do not directly or indirectly contravene

21       the Executive Order.

22              THE COURT:  Right, because the date of the letter,

23       I have an injunction in place.

24              MR. McILMAIL:  Yes.

25              THE COURT:  Okay.

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                                5/8/2014

1          MR. McILMAIL:  And they will -- and it then says --

2     the office then says that it will inform me promptly if

3     matters change.  They haven't -- that office has not informed

4     me that there has been any change, in its view, of this

5     order, which it is responsible for administering.

6          THE COURT:  Where is this 50 percent -- I

7     understand you said under their -- where are these

8     regulations or rules?  I mean, we haven't -- I've not been

9     able to find anything.

10          MR. McILMAIL:  No, I haven't seen -- I haven't seen

11     a written regulation or rule that interprets control as at

12     least 50 percent.  Perhaps Mr. Carey has.

13          THE COURT:  I can't -- you haven't seen a

14     regulation that says what?

15          MR. McILMAIL:  That interprets the term "control"

16     in this context, by this office, as at least 50 percent.

17     Maybe Mr. Carey has.  But what -- and the Executive Order, in

18     Sections 8 and 9, entrust the Department of Treasury to

19     administer this order.  And this office, OFAC, is the office

20     that does that work.

21          THE COURT:  Sure.

22          MR. McILMAIL:  And it has told me that the 50

23     percent ownership trigger is how they view control and

24     that --

25          THE COURT:  Well, since the Russian Government has

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                              5/8/2014

    1    80 percent...

    2            MR. McILMAIL:  Your Honor, I don't think that

    3    anybody in this courtroom can view these matters with the

    4    authoritativeness as OFAC, which is -- has the expertise in

    5    this area.  If 80 percent control by a government entity

    6    constitutes control, then presumably OFAC would have told me

    7    that and explained that in this letter, that that's enough.

    8    It has not done so.  Its examination of this issue --

    9            THE COURT:  What they have said to me -- presumably

   10    this was written for me -- in our view, control by the Deputy

   11    Prime Minister of NPO Energomash, if true, could be a

   12    potential basis to block formally the property and interest

   13    in property of the company pursuant to this order.

   14            MR. McILMAIL:  Yes.  And --

   15            THE COURT:  And, so, what I'm trying see is who --

   16    if it's true, how do we find out if it's true or not?

   17            MR. McILMAIL:  Presumably, Your Honor, that would

   18    be the case with respect to any entity because that is what

   19    the order says, any --

   20            THE COURT:  Okay.  So, it's true --

   21            MR. McILMAIL:  So, if --

   22            THE COURT:  They're saying it could be a problem,

   23    but we're not going to look into it today.  Is that how you

   24    read it?

   25            MR. McILMAIL:  No.  What I read --

1          THE COURT:  What are they saying?

2          MR. McILMAIL:  I read that that would be -- that

3   that would be true -- if that were true of any entity, then

4   it would be a potential basis for blocking because, after

5   all, the order does, as we know in Section 1A -- 1A(c)

6   refer to owned or controlled by.  So, regardless of --

7   regardless -- even leaving NPO Energomash aside --

8          THE COURT:  Well, I understand that.  But it says,

9   in our view, if he is in control, whether it's -- I mean, if

10  you look in the Black's Law Dictionary, what the word

11  "control" means, by any stretch of the imagination, he

12  controls this company.

13         MR. McILMAIL:  Your Honor, I don't -- I ask that

14  the Court not interpret for OFAC or the Department of

15  Treasury the term "control" in that order.  That is something

16  that has been -- Congress actually, by statute, has entrusted

17  these matters to that office.

18         THE COURT:  Right.

19         MR. McILMAIL:  And the President, by this Executive

20  Order, has entrusted that issue to the Secretary of the

21  Treasury.

22         THE COURT:  I understand.

23         MR. McILMAIL:  So, they should be the ones who

24  decide what control means.  All this, if true, means is that

25  it would be true -- it would be true of any entity, not --

1          THE COURT:  Mm-hmm.

2          MR. McILMAIL:  And I don't read this as OFAC

3     wondering whether there's a concern about NPO Energomash.

4     Its bottom line is that, as of May 6th, there is no concern.

5          THE COURT:  Right.

6          MR. McILMAIL:  So, it's a -- it would be necessary

7     for there to be control for OFAC to determine whether to --

8          THE COURT:  Well, I'm not so much -- what I'm

9     trying to figure out is -- is that this would be a problem if

10    true.  So, what I'm trying to find out from them is what

11    triggers their investigation or determination.

12         MR. McILMAIL:  I would expect it's their

13    determination -- leaving aside this litigation, their

14    determination that there is a concern that prompts a decision

15    on their part to investigate.  I don't know that they even

16    thought of this, Your Honor, with respect to NPO Energomash

17    before we brought it to their attention.  So, I don't know

18    that they had --

19         THE COURT:  Well --

20         MR. McILMAIL:  -- had a --

21         THE COURT:  Look, I'm just -- all I know about this

22    case is what I'm basically being able to look at and,

23    apparently, there have been -- I mean, NASA is no longer

24    working even with the Russians.  They have pulled out,

25    apparently, according to their own statements, of having any

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                 5/8/2014

```
 1    dealings with the Russians right now other than the -- other

 2    than this one particular program apparently they're still

 3    working with them on.

 4              MR. McILMAIL:  Your Honor, may I say something on

 5    that?

 6              THE COURT:  Right.  Well, see, what I wanted to

 7    find out from him was whether or not -- what triggers the

 8    determination about whether he is in control?

 9              MR. McILMAIL:  My understanding is that if they

10    learned that the Deputy Prime Minister --

11              THE COURT:  Presumably, I would hope the United

12    States Government knows the answer to the question.

13              MR. McILMAIL:  I'm sorry, Your Honor, I failed to

14    hear the last part of Your Honor's comment because I was --

15              THE COURT:  That's okay.  Do you want to defer to

16    your colleague?

17              MR. McILMAIL:  No, Your Honor, I'd like to consult

18    with my colleague.

19              THE COURT:  Okay, sure.

20              MR. McILMAIL:  Okay, thank you.

21              THE COURT:  Do you want to go out -- I guess out in

22    the hall or something?

23              MR. MANHARDT:  If we could have just one minute,

24    Your Honor.

25              THE COURT:  Sure.
```

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                    5/8/2014

```
 1              MR. McILMAIL:  I'll be glad to do that.  Thank you,

 2    Your Honor.

 3              THE COURT:  Okay.  Do you want to have this other

 4    gentleman speak to the question if he knows the answer?

 5              MR. MANHARDT:  If I could speak to Mr. McIlmail

 6    before --

 7              THE COURT:  Sure.

 8              (Pause in the proceedings.)

 9              THE COURT:  I'm trying to work through this.

10              MR. McILMAIL:  Yes, Your Honor.

11              THE COURT:  This is -- I'm not -- you know, I'm

12    trying to work through this with you, okay?

13              MR. McILMAIL:  Yes, Your Honor.  A preliminary

14    point I need to make, Your Honor, though, is that we view all

15    of this as outside the Court's jurisdiction.

16              THE COURT:  And we've been through -- you've told

17    me that before.

18              MR. McILMAIL:  Yes.

19              THE COURT:  And I wrote up a short little opinion

20    explaining why I thought it was relevant.

21              MR. McILMAIL:  Yes, Your Honor.

22              THE COURT:  So you know.  And I've -- just so you

23    know, I alerted the Circuit Executive to the fact that the

24    Government may seek a mandamus so that he was aware that that

25    may happen.
```

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                    5/8/2014

```
 1          MR. McILMAIL:  I understand, Your Honor.  Thank

 2   you.

 3          THE COURT:  I mean, I'm not afraid of that.

 4          MR. McILMAIL:  Yes.  As far as what -- how OFAC

 5   views orders like this, there's published guidance on its

 6   website regarding how this works.  Aside from that, Your

 7   Honor, though, because Your Honor asked how does --

 8          THE COURT:  There's -- I'm sorry, there's a website

 9   that I can look to?

10          MR. McILMAIL:  There is published -- yes.  OFAC has

11   a website, Your Honor --

12          THE COURT:  Okay.

13          MR. McILMAIL:  -- that has published guidance on

14   perhaps some of these issues that Your Honor is asking about.

15          THE COURT:  Okay.

16          MR. McILMAIL:  But as to how and when and whether

17   OFAC decides to look at some entity, those are political

18   considerations, those have to do with foreign affairs --

19          THE COURT:  Mm-hmm.

20          MR. McILMAIL:  -- foreign policy, the President's

21   prerogative to conduct those --

22          THE COURT:  Mm-hmm.

23          MR. McILMAIL:  -- pursuant to the Constitution,

24   OFAC's own responsibility entrusted to it by Congress through

25   statute.  As far as NPO Energomash, I don't know that -- that
```

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                    5/8/2014

1    OFAC heard of that at all until we asked it pursuant to the

2    Court's order.

3              THE COURT:  Okay.

4              MR. McILMAIL:  And, so, whether it looks into

5    something -- this litigation aside, whether it looks into an

6    entity that is pursuant to its own discretion presumably, and

7    whether some entity or person ends up on the list is also

8    pursuant to its prerogative.  Now, I --

9              THE COURT:  Sure.

10             MR. McILMAIL:  -- I understand that if somebody

11   does end up on the list, that person might be able to

12   challenge or entity might be able to challenge in a District

13   Court pursuant -- I think it's pursuant to the APA.  But

14   whether somebody should be put on the list in the first place

15   --

16             THE COURT:  I'm not questioning if he's on the

17   list.  I mean, that's not --

18             MR. McILMAIL:  Right.

19             THE COURT:  -- I'm not questioning that.  I'm

20   questioning the consequences of him being on the list in the

21   context of this bid protest.  I mean, does that --

22             MR. McILMAIL:  Well, the --

23             THE COURT:  -- cause a problem?

24             MR. McILMAIL:  Well -- yes.  I mean, the issue I

25   understand the Court's ordered to raise is whether NPO

```
 1   Energomash should be -- is whether purchases from or payments

 2   to NPO Energomash would violate -- would contravene

 3   indirectly or directly the Executive Order.  And we have the

 4   opinion from the office entrusted with deciding those issues

 5   --

 6            THE COURT:  I just read that.

 7            MR. McILMAIL:  -- that the answer is no.

 8            THE COURT:  The answer is no as of that day.

 9            MR. McILMAIL:  Yes, and --

10            THE COURT:  When they're enjoined.  I mean, it's --

11            MR. McILMAIL:  The answer is no as of that day --

12            THE COURT:  So, the issue is, if the injunction is

13   lifted, does that change?

14            MR. McILMAIL:  Well, Your Honor --

15            THE COURT:  That's -- I mean, I can't tell by the

16   way this is worded, and that's why I was hoping to be able to

17   ask him directly because he could then tell me.  But you all

18   don't want me to talk to him.  That's a whole different

19   issue.

20            MR. McILMAIL:  But, Your Honor, the -- we have what

21   is, as of now, the last word on this subject from OFAC.

22            THE COURT:  The last word?

23            MR. McILMAIL:  As of now, the last word on this

24   subject from OFAC.

25            THE COURT:  You told me they're going to keep you
```

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                                        5/8/2014

 1    promptly informed.  I mean --

 2              MR. McILMAIL:  Yes.  As of --

 3              THE COURT:  Look, it --

 4              MR. McILMAIL:  As of this moment, Your Honor.

 5              THE COURT:  As of May 6th, the letter -- that was

 6    his opinion as of that day.

 7              MR. McILMAIL:  Yes.  And that --

 8              THE COURT:  It could be different today if I lift

 9    the order.  That's what I'm trying to figure out.

10              MR. McILMAIL:  Your Honor, as I stand here, the

11    last word from OFAC on this topic is in that sentence.

12              THE COURT:  Okay.

13              MR. McILMAIL:  That was opined on May 6th, but that

14    opinion --

15              THE COURT:  Okay.

16              MR. McILMAIL:  I have not learned that that opinion

17    has changed.  Whether it might change in the future, I can't

18    say, Your Honor, because that is an issue entrusted to the

19    President of the United States and the Department of

20    Treasury.  And as Your Honor has -- as what Your Honor has

21    said indicates, things can change and -- or these matters are

22    evolving.

23              THE COURT:  Right.

24              MR. McILMAIL:  And I ask Your Honor -- we ask, the

25    United States asks, that the Court resolve this bid protest

1    action on the evidence that the parties bring to the Court,

2    especially because of matters of --

3              THE COURT:  I wouldn't have known about this if it

4    hadn't been in the complaint.

5              MR. McILMAIL:  Yes, Your Honor.

6              THE COURT:  I mean, I --

7              MR. McILMAIL:  But it having been raised, we ask

8    that the Court resolve that issue based on the evidence that

9    the parties bring to the Court, and this is part of that

10   record as opposed to other matters that the Court might be

11   aware of through other means.  And to the extent that this --

12   well, this should satisfy the Court that as of today, as

13   we're --

14             THE COURT:  Well, what -- I think you're pushing

15   the point too far.  I mean, look, Congress authorized the

16   Federal Rules of Evidence which gives me -- I can take

17   judicial notice of publicly known facts.  That's -- I mean --

18             MR. McILMAIL:  But, Your Honor --

19             THE COURT:  -- I have that authority from Congress,

20   okay?  We did some research and have found that there are a

21   number of older cases where the Federal Circuit -- the older

22   Federal Circuit basically has interpreted Executive Orders.

23   As you are aware, Congress, you know, entrusts agencies with

24   the authority to do lots of things, and that's why the Courts

25   are there to interpret whether or not that violates a statute

1   or the Constitution or, you know, a regulation.  I mean,

2   everybody has their own function.  Just because someone's

3   given a job to do doesn't mean it's not subject to judicial

4   review.

5           MR. McILMAIL:  Your Honor, I'd argue that whether

6   somebody should be on the list is not subject to --

7           THE COURT:  I'm not -- I'm not --

8           MR. McILMAIL:  -- is not subject to this Court's

9   judicial review.

10          THE COURT:  I'm not arguing that he shouldn't be

11  not on the list.  I mean, that's not the point.

12          MR. McILMAIL:  My point isn't on that, Your Honor.

13  My point is on the authority of this Court to review whether

14  an entity should be on the list, and it is not within the

15  authority of this Court to determine that an entity should be

16  on the list.

17          THE COURT:  I'm not --

18          MR. McILMAIL:  But, Your Honor, the Court enjoined

19  certain conduct until and unless certain things were done,

20  and we did them.

21          THE COURT:  Let me -- let me -- let me speak to

22  your counsel from United Launch.  Maybe they can be helpful

23  here to me.

24          MR. McILMAIL:  Thank you, Your Honor.

25          THE COURT:  Thank you.

1          MR. CAREY:  Good morning, Your Honor.

2          THE COURT:  Good morning.  Maybe you can be helpful

3    to me.  What's the -- do you now know what the exact status

4    is in terms of your purchasing of these rockets?

5          MR. CAREY:  Your Honor, my understanding is we have

6    placed payments and purchases on hold pursuant to the Court's

7    injunction.

8          THE COURT:  No, that I understand.  What I'm trying

9    to say is what we're -- I don't doubt that you did that.  I'm

10   just trying to find out where -- have you -- how many do you

11   have under order today that you've ordered, you've said, I

12   would like to buy X number?

13         MR. CAREY:  I don't know that number, Your Honor.

14   What I do know is that we do have a series of competitive

15   proposals that will be submitted in the next two-and-a-half

16   to three months and --

17         THE COURT:  Okay.

18         MR. CAREY:  -- the uncertainty that flows from this

19   order around the company's ability to obtain engines from NPO

20   Energomash has raised --

21         THE COURT:  Right.  But, see, I'm trying to get

22   some specifics here.  So, I'm trying to work with you on

23   this, and you're telling me you came into court today and you

24   do not know how many of these you have on order?

25         MR. CAREY:  I do not know how many are currently on

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                                    5/8/2014

```
1    order.  I know there is one and possibly two engines that are

2    currently being -- in the manufacturing and testing process,

3    that are --

4              THE COURT:  Okay.

5              MR. CAREY:  -- scheduled to be delivered in August.

6              THE COURT:  So, they're being manufactured in

7    Russia or -- now?

8              MR. CAREY:  I don't know the exact location.  I

9    believe -- I believe that it's Russia, but I don't know that

10   for a fact, Your Honor.  But, Your Honor, I would join in Mr.

11   McIlmail's presentation.  From our perspective, these letters

12   from Treasury and State answer the mail.  They say

13   categorically that purchases from and payments to NPO

14   Energomash do not violate --

15             THE COURT:  Do not today.

16             MR. CAREY:  -- and -- and --

17             THE COURT:  As of the day, but --

18             MR. CAREY:  That's correct.

19             THE COURT:  -- they were under an injunction as of

20   the day of the opinion.

21             MR. CAREY:  But, Your Honor --

22             THE COURT:  That's why I wanted to get some

23   clarification.  If he said to me, that would be my opinion as

24   well if the injunction were lifted --

25             MR. CAREY:  But --
```

1          THE COURT:  -- and he doesn't say anything about

2    the injunction at all.

3          MR. CAREY:  But, Your Honor, he says purchases from

4    and payments to --

5          THE COURT:  Right.

6          MR. CAREY:  -- NPO Energomash do not contravene the

7    order, and that necessarily presupposes that the injunction

8    is lifted and payments and purchases are being made.

9          THE COURT:  Well, let's look at this a different

10   way.  Let's put this aside, the injunctive order aside.  It's

11   my understanding that the Plaintiff basically wants to

12   compete for the same products basically that you're

13   purchasing, is that correct or not correct?

14         MR. CAREY:  I'm sorry, that who would like to

15   compete, Your Honor?

16         THE COURT:  The Plaintiff.  Is that correct?

17         MR. VACURA:  That's correct, Your Honor.

18         THE COURT:  Okay.  So, you want to make -- or you

19   want to sell him what Energomash is selling him?

20         MR. VACURA:  No, Your Honor, we want to sell the

21   Air Force the entire rocket.

22         THE COURT:  The whole -- the whole package.

23         MR. VACURA:  We make our own -- we make our own

24   motors, Your Honor.

25         THE COURT:  All right.

1          (Pause in the proceedings.)

2          MR. CAREY:  Your Honor, Mr. McImail has just

3   pointed out that the letter from Treasury also states that

4   Treasury has reviewed the Court's preliminary injunction.

5   So, again, from my perspective --

6          THE COURT:  No, no, they have done that.  I wanted

7   them to say in their -- I was hoping that they would say, in

8   their judgment, basically that I don't need to worry.

9          MR. CAREY:  But, Your Honor, they have said that.

10  They have said -- this letter says that until --

11         THE COURT:  But the Government wouldn't even let

12  the man come into the courtroom.

13         MR. CAREY:  But, Your Honor, this letter says that

14  until Treasury determines --

15         THE COURT:  Mm-hmm.

16         MR. CAREY:  -- makes an affirmative determination

17  that NPO Energomash is controlled and, therefore, adds that

18  entity to the sanctions list, that that entity is not

19  blocked.

20         THE COURT:  Okay.

21         MR. CAREY:  And my reading of this letter is that

22  that is categorical and, therefore, this Court does not need

23  to concern -- be concerned that payments or purchases to NPO

24  Energomash are improper.

25         THE COURT:  Okay.  So, let's assume that I lift the

1    injunction today.  So, what I'm trying to figure out is how

2    many of these engines do you need to purchase?

3              MR. CAREY:  Your Honor, the engines are long-lead

4    items and they are purchased on an ongoing basis.  So, I

5    don't have the exact amount --

6              THE COURT:  I know, but why don't you?

7              MR. CAREY:  -- the exact number as of today.

8              THE COURT:  I mean, we went through -- I understood

9    why you didn't know the day we were at our first hearing, but

10   haven't you asked your client any of these questions at all?

11   You're arguing to me about how you're irreparably harmed by

12   not being able to compete and doing whatever you're going to

13   do and I'm asking you, fine, give me some specifics, and you

14   said I don't know.

15             MR. CAREY:  But, Your Honor --

16             THE COURT:  What am I to make of that?

17             MR. CAREY:  -- before -- Your Honor, before we even

18   need to get to irreparable harm, I think we need to address

19   the issue of whether the injunction is legally justified or

20   necessary.  And these letters from OFAC --

21             THE COURT:  I just said -- what did I just say, the

22   last thing I just said?  I said, let's assume that the Court

23   puts the -- lifts the injunction.

24             MR. CAREY:  Yes, Your Honor.

25             THE COURT:  Okay?  You want to continue to argue

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                5/8/2014

1    it?  Let's assume that I do that.

2              MR. CAREY:  Yes, Your Honor.

3              THE COURT:  Okay.  So, I'm asking you about --

4    going to the merits of the case now, and you don't seem to

5    know --

6              MR. CAREY:  Well, Your Honor --

7              THE COURT:  -- one way or the other whether -- you

8    don't seem to know what your client's doing.

9              MR. CAREY:  Your Honor, if we're moving to the

10   merits of the case, my understanding is that the Plaintiff

11   is seeking to stop future orders by the United States Air

12   Force --

13             THE COURT:  Right.

14             MR. CAREY:  -- under this contract.  And, so,

15   turning to that issue, there are -- under this contract, it's

16   a requirements contract under which the Air Force is

17   obligated to purchase up to 35 cores from my client.  Once it

18   reaches that 35-core limit, the Air Force is then free to buy

19   cores from other sources.  And my understanding of what

20   SpaceX is asking here is that it is coming into this Court,

21   two years after a sole source J&A was published, two years

22   after it was given a copy of the sole source solicitation for

23   this procurement, and is now belatedly asking this Court to

24   disrupt a hugely complex program and contract.

25             My understanding of the status of the contract is

1    that about 15 of the cores have been ordered and that would

2    leave up to 20 more cores that will be ordered under the

3    contract should the Air Force need those cores.

4              THE COURT:  Okay.  So, they have ordered 14 from

5    you know, is that right?

6              MR. CAREY:  I believe it's about -- it's about 15.

7              THE COURT:  Fifteen?  Okay.

8              MR. CAREY:  And Your Honor had asked at our April

9    30th status conference the status of launches, and I am in a

10   position to share with the Court that the next upcoming

11   launch is on May 15th.

12             THE COURT:  Okay.

13             MR. CAREY:  And there's a launch after that on May

14   22nd.

15             THE COURT:  The injunction doesn't impair that in

16   any way.

17             MR. CAREY:  Your Honor, my client routinely is part

18   of the launch process, gets support services from RD Amross,

19   and as we have informed the Court, we are not currently

20   making payments to RD Amross and, therefore, it is not clear

21   at this point whether we will get the support services that

22   we typically get in support of --

23             THE COURT:  What support services do they provide?

24             MR. CAREY:  Engineering support services.

25             THE COURT:  Okay.  And those engineers are located

1    in the United States?

2             MR. CAREY:  I don't know, Your Honor.  I believe at

3    least some of them are because one of the parents of RD

4    Amross is Pratt & Whitney.

5             (Pause in the proceedings.)

6             THE COURT:  Mr. Manhardt?

7             MR. MANHARDT:  Yes.

8             THE COURT:  I'm having some difficulty explaining

9    the concept of what I wanted to have Mr. Smith clarify for

10   me.  The letter in -- that we received from Treasury states

11   as of May 6th, it says, "Therefore, to the best of our

12   knowledge, purchases from and payments to NPO Energomash

13   currently do not directly or indirectly contravene the

14   Executive Order."  My only problem with that is because of

15   the injunction, there were no purchases from or payments to.

16   You see what I'm saying?

17            MR. MANHARDT:  But I think --

18            THE COURT:  Don't argue with me, just listen for a

19   second.  Look at -- you see that last sentence?

20            MR. MANHARDT:  Yes, I have it in front of me, Your

21   Honor.

22            THE COURT:  If he had come to court, what I would

23   have asked him is whether his position was the same if the

24   injunction were lifted.  See, there were no payments or --

25   from -- purchases from or payments to on that date because

```
 1    there was an injunction.  If the injunction is lifted, would

 2    that still be his -- those facts would change, you see what

 3    I'm saying?

 4              MR. MANHARDT:  I do see what you're saying, Your

 5    Honor.

 6              THE COURT:  Can you get him to give me one more

 7    sentence that states, if the injunction is lifted, this would

 8    still be their opinion?  Do you follow what I'm saying?

 9              MR. MANHARDT:  Yes, Your Honor, I do understand

10    that.

11              THE COURT:  Okay.  Because there were no payments

12    from -- purchases from or payments to on this date --

13              MR. MANHARDT:  Right.

14              THE COURT:  -- because there was an injunction.

15              MR. MANHARDT:  May I speak to that?

16              THE COURT:  Sure, yeah.

17              MR. MANHARDT:  With all deference, I believe the

18    Court is misreading what the letter is saying in that regard.

19              THE COURT:  Okay.

20              MR. MANHARDT:  The Court's injunctive order

21    referred to seeking an opinion with regard to whether

22    payments violate the Executive Order.  The last sentence

23    refers directly to "payments do not violate the Executive

24    Order."  He's not speaking to the injunction.  He's not

25    speaking to presently there are not -- the Court's question
```

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC

1   about that added inquiry appears directly related to a

2   consideration that payments are not currently occurring.  But

3   he's not answering -- he's not speaking -- he's not saying

4   that.  What he is saying is payments do not violate the

5   order.  Payments don't violate the order, not because they're

6   not occurring, but because they simply do not violate the

7   order.  He's not referencing the impact of the injunction in

8   any manner whatsoever in that regard.

9          I think -- you know, we certainly could try, but we

10  do know he's leaving the country on, I believe, it's

11  Government business.  But I think that is fully answered in

12  this letter and I believe the Court is simply parsing it in a

13  way that is incorrect.

14          THE COURT:  Okay, let me ask you -- let me ask you

15  this:  He sent this letter to your senior trial counsel.  Was

16  there any reason why he didn't address it to the Court?

17          MR. MANHARDT:  I believe it's because we simply

18  asked him to do that, that we viewed it was our

19  responsibility to provide it to the Court.

20          THE COURT:  Is it possible for him to do that?  I

21  mean, I asked him to give me an opinion.  He gave your senior

22  trial lawyer an opinion.  I didn't ask him to do that.

23          MR. MANHARDT:  Your Honor, on representation that

24  this was to be provided to the Court, which is the way that

25  declarations are provided to the Court, which is the way all

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC

1   forms of information are conveyed, through counsel.

2          THE COURT:  Well, not really, not really.  What I

3   would like him to do is see if you can get him to address the

4   letter to me, we'll put it in the record, and we'll attach

5   that -- I don't care so much about the other two because

6   they've clarified that it's not -- the issue is really with

7   Treasury.  And we will lift the injunction as soon as I

8   receive that and we'll attach the letters to that.  Okay?

9          MR. MANHARDT:  Yes, Your Honor.  I mean, for the

10  record, I would say we do believe that's not an appropriate

11  procedure, but we'll be happy to make that attempt.

12         THE COURT:  Well, I asked to have it done, so I

13  would like him to tell the Court what his opinion is.  I

14  asked for the opinion, okay?  So, I would like to be sure

15  that he's advising the Court and we'll lift the injunction.

16  Thank you.

17         MR. MANHARDT:  Yes, Your Honor.

18         THE COURT:  All right.  Now, where are we with the

19  rest of the proceedings?  We had an assignment, did we not?

20         MR. VACURA:  Your Honor, the assignment, as I

21  recall, was that the Government was going to create a

22  chronology for the Court and submit it to us, and then once

23  we agree, we're going to have a joint chronology that we

24  would file with the Court.  We haven't seen the draft yet.

25  We understand that it's in process, but we don't have it.

1          MR. McILMAIL:  We've been working on that parallel

2    with the injunction, Your Honor, and it -- we expect it to be

3    finalized today for sharing with the other parties.

4          THE COURT:  Okay.  So, we don't have a schedule or

5    anything issued?

6          MR. McILMAIL:  No, we don't have a schedule.

7          THE COURT:  Do we need to get on a schedule here so

8    we can get the proceeding going?

9          MR. VACURA:  Your Honor, we would like the chron as

10   quickly as possible, but, you know, it's really -- the

11   Government's driving it at this point.  So, whatever would

12   please the Court would be fine with us.

13         THE COURT:  Well, when you get the chron today or

14   tomorrow or whenever you get it -- and you've looked at the

15   documents, right?

16         MR. McILMAIL:  We have a list of exhibits that is

17   tied to the events listed in the chronology.

18         THE COURT:  All right.

19         MR. McILMAIL:  But -- I'm sorry, Your Honor.  I

20   don't know that we are prepared to provide those exhibits,

21   particularly the ones that have proprietary information in

22   them since we don't have a protective order.

23         THE COURT:  Okay.  So, I can issue a protective

24   order?  Did someone give one to me?

25         LAW CLERK:  They submitted one, Your Honor.

```
 1              THE COURT:  Okay.  So, we'll issue a protective

 2    order today.

 3              MR. McILMAIL:  Thank you, Your Honor.

 4              THE COURT:  And you'll change the last paragraph on

 5    that to conform to what I want so that we're not impeding you

 6    from getting documents.

 7              MR. VACURA:  If I may, Your Honor, the process that

 8    I thought we agreed on was we would get the chronology, we

 9    would review it, have a joint chronology to submit to the

10    Court, and based on that, we would come up with a list of

11    documents that --

12              THE COURT:  Right.

13              MR. VACURA:  -- we thought would work for the

14    administrative record.

15              THE COURT:  Well, that's what I thought, but he

16    said he's got some documents ready to give you right now.

17    So, if he does --

18              MR. VACURA:  Well, and that's fine because --

19              THE COURT:  -- I don't want to impair your ability

20    to get those right way.

21              MR. VACURA:  That's fine, Your Honor, as long as

22    it's clear that that is not the entirety of the

23    administrative record, that we need to input into that as

24    well, and I thought that's what we agreed on.

25              THE COURT:  Right.
```

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                         5/8/2014

```
 1              MR. VACURA:  Thank you, Your Honor.

 2              MR. McILMAIL:  Your Honor, I just don't want to

 3      leave any mis-impressions about what we may have agreed to.

 4      I don't remember agreeing to any process; I remember

 5      explaining that we would come up with a draft chronology and

 6      we would share it.  I don't know that we are prepared to hand

 7      over documents yet.  I don't know that they've been compiled

 8      yet.  But this is not necessarily the type --

 9              THE COURT:  Well, who would know that?

10              MR. McILMAIL:  Mr. Warnock has been working on that

11      and I can consult with him if Your Honor would like.

12              THE COURT:  Yeah, well, he can speak.  I mean, he's

13      here.

14              MR. McILMAIL:  I'd be glad to ask him what the

15      status is --

16              THE COURT:  Okay.

17              MR. McILMAIL:  -- and pass that on to you.  But if

18      I may make the point about the administrative record --

19              THE COURT:  Well, when do you think you would be

20      prepared to proffer what you consider to be the

21      administrative record?

22              MR. McILMAIL:  I don't quite know yet because --

23      and I previewed this on April 30th.  We have to discuss with

24      Plaintiff what error they are alleging, the record of which -

25      - the record of the decision on that would be part of the
```

1    administrative record.  If it's the decision to contract with

2    ULS in 2013, then the administrative record would be

3    different than if it is the issue of a potential decision to

4    purchase fewer than 50 rockets.  If it's --

5              THE COURT:  You have a leak issue there you better

6    attend to.

7              MR. McILMAIL:  If it's that later issue, Your

8    Honor, the 2000 -- what we think is -- they're characterizing

9    as a 2014 decision to purchase fewer than 50 rockets, then

10   the administrative record of that decision, if that has -- if

11   that is a decision that's been made, would be different than

12   an administrative record of the decision to contract with ULS

13   in the first place.  We haven't received that clarity from

14   Plaintiff and we would need that before we decide what

15   constitutes the administrative record or decide whether we

16   agree with them on that.

17             But I suspect that at least some of the exhibits

18   that are listed on the exhibit list of the chronology might

19   end up in the administrative record.  I can't imagine, for

20   example, the contract itself wouldn't end up in it.  But

21   beyond that, I can't say now.  And I don't know by when we

22   could do that.  We'll work as quickly as we can.  But when we

23   were here last, Your Honor, on April 30th, Your Honor

24   explained that the Court was not, at least at that time,

25   putting any deadlines on anything, and since then, we've been

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                    5/8/2014

1    working very hard on the injunction.

2           Thank you, Your Honor.

3           MR. VACURA:  Your Honor, we have had discussions on

4    this with counsel, but what we're really looking for is when

5    we're talking -- when counsel talks about, for instance, the

6    J&A from 2012 and whether we're actually contesting that, as

7    I said in the last conference we had, what we're really

8    contesting is the adequacy of that J&A when the Air Force

9    started making sole source orders while SpaceX is eligible to

10   compete.

11          THE COURT:  Mm-hmm.

12          MR. VACURA:  And, so, it's difficult for us to sit

13   here in the abstract because, you know, these folks have a

14   lot of folks, we don't and the Court doesn't.  And I think

15   until we can get the chronology, it's difficult for us to

16   understand what the universe of the documents is that --

17          THE COURT:  Well, you're going to get the

18   chronology today, is that right?

19          MR. McILMAIL:  I expect we can finalize it and

20   share it today.

21          THE COURT:  All right.  Well, why don't we wait

22   until you get the chronology and I'll wait to hear from you

23   at that point afterwards about what you want to do.

24          MR. VACURA:  Yes, Your Honor, thank you.

25          THE COURT:  That's the only thing I can think of.

1          Let's go off the record for a second.

2          (A brief recess was taken.)

3          THE COURT:  There was a hearing before the Defense

4    Committee Appropriations in the Senate concerning some of the

5    issues that are presented in this bid protest, some of them

6    came up.  I assume the Government's aware of that.

7          MR. McILMAIL:  I personally am not aware of that.

8          THE COURT:  Okay.  Well, there was.  I have the

9    testimony of the Intervenors and Space Exploration.

10   Apparently, the GAO also testified that -- I have some bullet

11   points that they prepared for the committee.  Are you aware

12   of that?

13         MR. McILMAIL:  No, Your Honor.

14         THE COURT:  Okay.  Well, it might a good idea to

15   find out, you know, what else is going on --

16         MR. McILMAIL:  I understand, Your Honor.

17         THE COURT:  -- in other places.  You know, we made

18   an inquiry.  There were some specific questions asked at the

19   hearing, I don't know by which Senators because they don't

20   have a transcript yet.  Space -- the Plaintiff testified at

21   that proceeding.  I assume -- do you have a copy of the --

22   can you get a transcript done?

23         MR. VACURA:  I believe so, Your Honor.

24         THE COURT:  Do you -- I mean, I assume that you

25   would consider some of that testimony relevant to what we're

1    doing here.

2         MR. VACURA:  Yes, Your Honor, we do.  We reference

3    it, in fact, in our complaint.

4         THE COURT:  Right.

5         MR. VACURA:  We reference those hearings, and we

6    would expect that to be part of the administrative record.

7         THE COURT:  Right.  Well, the -- we found out that

8    the hearing itself -- there were questions at the hearing and

9    representations made about some of these issues, and the

10   transcript has not been transcribed yet.  It's there.  So, I

11   don't know if we want to make arrangements with the Court's

12   court reporter to do the transcription and let the parties

13   share in the cost of that or what.  But can you designate

14   somebody to find out from the Senate where the tapes can be

15   obtained and how that is done.

16        MR. VACURA:  Yes, Your Honor, we would be happy to

17   do that.

18        THE COURT:  The Court would like to have that --

19   have the transcription of that.  Now, I don't know if the GAO

20   submitted formal testimony.  All I have is this -- it's like

21   a -- you know, it's like a presentation on a screen rather

22   than written testimony.  I don't know if there were written

23   testimony on this and if there is a report that was given to

24   the Senate.  This report was not to the -- excuse me, was not

25   to the appropriations, but was to the Senate Homeland

1    Security and Governmental Affairs Committee, Permanent

2    Subcommittee on Investigations, dated January 24th, 2014, and

3    I don't know what prompted this briefing and whether there

4    was -- I haven't had a chance really to do any research into

5    figuring out what else happened at this hearing.  This is a

6    different hearing.  We'll try to find out if there's anything

7    in writing.  I don't know who else participated in that

8    proceeding, but it's likely that someone else from the

9    Intervenor did.

10            Are you aware of this, Counsel?

11            MR. CAREY:  I am not, Your Honor.

12            THE COURT:  Okay.  Well --

13            MR. VACURA:  Your Honor, we will be happy to follow

14   up both on the March hearing and then the earlier hearing and

15   get the Court whatever transcripts, other documents and

16   reports are available and submit them for the administrative

17   record.

18            MR. CAREY:  Your Honor, may I be heard for a moment

19   on the administrative record?

20            THE COURT:  Sure.

21            MR. CAREY:  Thank you, Your Honor.  And I

22   understand -- saying this, I understand there's going to be

23   more discussion about the scope of the administrative record,

24   but if it would be helpful to the Court, I'd just like to

25   frame very quickly our view.  And our view is that there was

1    a J&A published over two years ago that said expressly that

2    the Air Force was going to buy from the United Launch

3    Services on a sole source basis its requirements for Fiscal

4    Year '13 to Fiscal Year '17 for these rocket launches, these

5    launch services, and there was no limit on the number stated

6    in the J&A.   The J&A was published; the J&A was not

7    protested.

8          A couple of months after that in March of 2012, a

9    sole source solicitation was issued to my client that

10   provided that the Air Force would buy up to 40 of these

11   launches services on a sole source basis for Fiscal Years '13

12   to '17.   As I understand it, that sole source solicitation

13   was provided to SpaceX.   SpaceX has that document.   And that

14   was not protested.   And any argument that SpaceX may now make

15   that the Air Force should stop purchasing launch services

16   under my client's already justified sole source contract

17   necessarily goes back to that J&A and necessarily goes back

18   to the sole source RFP.

19         In our view, Your Honor, the administrative record

20   here is very simple for that reason.

21         THE COURT:  Mm-hmm.

22         MR. CAREY:  And, also, we think it's very clear

23   that this protest is untimely under Blue and Gold.

24         THE COURT:  Okay.

25         MR. CAREY:  And if I could just also be heard for a

1  moment on the issue of the injunction, Your Honor.

2  Understanding that the Court may be unavailable in the next

3  few days --

4          THE COURT:  No, I said I would be available; you'll

5  have to just get me by phone.

6          MR. CAREY:  Okay.  I just -- I want to communicate

7  to the Court the urgency that my client feels that the

8  injunction be lifted as soon as possible because it is --

9          THE COURT:  Mr. Manhardt, I think, knows how to

10 handle this and I have every intention -- we have an order

11 drafted already.  So, as soon as he gets the opinion on

12 letterhead swapped out, which I'm sure he knows how to get

13 done, we'll attach that to the order and it's lifted.

14         MR. CAREY:  Thank you, Your Honor.

15         THE COURT:  Okay?

16         MR. McILMAIL:  Your Honor, if I may be heard on

17 scheduling because Your Honor mentioned nothing might happen

18 until the administrative record is filed.

19         THE COURT:  It's up to you.  I mean, you know --

20         MR. McILMAIL:  Yes.  But this was -- we touched

21 upon this on April 30th and it has to do with standing and

22 jurisdiction and timeliness as Mr. Carey has signaled.

23         THE COURT:  Mm-hmm.

24         MR. McILMAIL:  So, it is conceivable that we might

25 file a motion to dismiss before the filing of an

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC                                    5/8/2014

```
 1    administrative record --

 2              THE COURT:  Mm-hmm.

 3              MR. McILMAIL:  -- attaching to it the documents

 4    that we expect will establish that SpaceX does not have

 5    standing to challenge what it appears to be challenging.

 6              THE COURT:  Okay.

 7              MR. McILMAIL:  Thank you, Your Honor.

 8              THE COURT:  All right.  Coming attractions.

 9              MR. McILMAIL:  Yes.

10              THE COURT:  Anything else?

11              MR. VACURA:  Nothing further, Your Honor.

12              THE COURT:  Okay, thank you.

13              (Whereupon at 11:16 a.m., the hearing was

14    adjourned.)

15

16

17

18

19

20

21

22

23

24

25
```

44

Space Exploration Technologies Corp. v. USA v. United Launch Service, LLC

5/8/2014

```
 1                   CERTIFICATE OF TRANSCRIBER

 2

 3          I, Elizabeth M. Farrell, court-approved

 4    transcriber, certify that the foregoing is a correct

 5    transcript from the official electronic sound recording of

 6    the proceedings in the above-titled matter.

 7

 8

 9

10    DATE:  5/8/2014                 s/Elizabeth M. Farrell

11                                    ELIZABETH M. FARRELL, CERT

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```