# In the United States Court of Federal Claims

No. 14-354 C
Filed: January 13, 2015

```
*****************************************
                                          *
SPACE EXPLORATION TECHNOLOGIES             *
CORP.,                                     *
                                          *
        Plaintiff,                         *
                                          *
v.                                         *
                                          *
THE UNITED STATES,                         *
                                          *
        Defendant,                         *
                                          *
and                                        *
                                          *
UNITED LAUNCH SERVICES, LLC,               *
                                          *
        Defendant-Intervenor.              *
                                          *
*****************************************
```

**Hamish Hume**, Boies Schiller & Flexner LLP, Washington, D.C., Counsel for the Plaintiff.

**Alexander V. Sverdlov**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**Charles J. Cooper**, Cooper & Kirk, PLLC, Washington, D.C., Counsel for the Defendant-Intervenor.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT-INTERVENOR'S JANUARY 7, 2015 MOTION TO DISMISS

**BRADEN**, *Judge*.

On January 7, 2015, United Launch Services, LLC ("ULA") filed a Motion To Dismiss *Space Exploration Technologies Corp. v. United States*, Case No. 14-354 (Fed. Cl. 2014), pursuant to RCFC 12(b)(1) and 12(b)(6), arguing that the National Defense Authorization Act for Fiscal Year 2015, Pub. L. No. 113-291, §§ 1601 *et seq.* (2014) ("NDAA")[1] ratified Contract No. FA8811-

---

[1] On December 19, 2014, the President signed H.R. 3979, the Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015. *See* Press Release, Department of Defense, President Signs National Defense Authorization Act (Dec. 19, 2014),

13-C-0002 (the "002 Contract") and Contract No. FA8811-13-C-0003 (the "003 Contract"), precluding judicial review. Dkt. No. 176; *see also* Dkt. No. 176-1, at 2–13. In the alternative, ULA asserts that this case is moot, because the NDAA requires that the Secretary of Defense ("SecDef") increase competition in the Evolved Expendable Launch Vehicle ("EELV") program only if he can do so and "remain in compliance" with the 003 Contract. Dkt. No. 176-1, at 13–14.

On December 16, 2014, the President signed the Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-655 (2014) ("Appropriations Act")[2] that funds the Department of Defense ("DoD") for fiscal year 2015. Two Sections of that Act are relevant to this case. First, Section 8084 states that $125 million shall be available for the acceleration of a competitively awarded EELV mission only if competitions are "open to all certified providers of [EELVs]," "consider bids from two or more certified providers," and permit EELV providers to "compete any certified launch vehicle in their inventory." Appropriations Act § 8084. Section 8118 prohibits DoD from "enter[ing] into a contract, memorandum of understanding, or cooperative agreement with, or make a grant to, or provide a loan or loan guarantee to Rosoboronexport or any subsidiary," without a waiver by the SecDef, that is subject to review by the DoD's Inspector General. Appropriations Act § 8118(a); *see also* Appropriations Act § 8118(b), (c).

On December 19, 2014, the President signed the NDAA that, in part, imposes certain restrictions and reporting requirements on how DoD uses the funds made available for FY′15 by the Appropriations Act. Several of these provisions concern the EELV program.

First, the NDAA requires that the Secretary of the Air Force provide appropriate congressional committees with "notice of each change to the [EELV] acquisition plan and schedule . . . included in the budget submitted by the President . . . for [FY′15]." NDAA § 1602(a).

Second, the NDAA prohibits the SecDef from awarding or renewing "a contract for the procurement of property or services for space launch activities under the [EELV] program, if such contract carries out space launch activities using rocket engines designed or manufactured in the Russian Federation." NDAA § 1608(a). The SecDef, however, may certify that such a contract is required "for the national security interests of the United States" and that "space launch services and capabilities covered by the contract could not be obtained at a fair and reasonable price without the use of rocket engines designed or manufactured in the Russian Federation." NDAA § 1608(a), (b). There are two exceptions to the prohibition in Section 1608(a): the "placement of orders or the exercise of options under Contract numbered FA8811-13-C-003, awarded on December 18, 2013"; and "rocket engines designed or manufactured in the Russian Federation that prior to February 1, 2014, were either fully paid for by the contractor or covered by a legally binding commitment of the contractor to fully pay for such rocket engines." NDAA § 1608(c)(1). In

---

*available at* http://www.defense.gov/news/newsarticle.aspx?id=123866 (last visited Jan. 13, 2015).

[2] *See* Press Release, The White House, Statement by the Press Secretary on H.R. 83 (Dec. 16, 2014), *available at* http://www.whitehouse.gov/the-press-office/2014/12/16/statement-press-secretary-hr-83 (last visited Jan. 13, 2015) (stating that the President signed H.R. 83, the Consolidated and Further Continuing Appropriations Act, 2015).

addition, Section 1608(c)(2) sets forth the certification procedure that the SecDef must follow in awarding or renewing a contract that includes the use of rocket engines designed or manufactured in the Russian Federation. *See* NDAA § 1608(c)(2).

Third, no later than June 1, 2015, the Comptroller General is required to submit a report to the congressional defense committees on the EELV program that includes "an assessment of the advisability of the [SecDef] requiring . . . that new entrant launch providers or incumbent launch providers establish or maintain business systems that comply with the data requirements and cost accounting standards of the [DoD], including certified cost or price data." NDAA § 1609.

Fourth, the NDAA requires that the SecDef increase the number of cores to be purchased on a competitive basis in FY′15 by one. *See* NDAA § 1611(a)(1). For FY′15–′17, one additional core is also to be purchased on a competitive basis, unless the SecDef certifies to the congressional defense committees that there is "no practicable way" to purchase this core for FY′15–′17 and "remain in compliance with the requirements of the firm fixed price contract for [thirty-five] rocket engine cores during the five fiscal years beginning with [FY′13]." NDAA § 1611(a)(2)(A).

ULA insists that enactment of the NDAA and specific reference to DoD's payment obligations under the 002 and 003 Contracts "ratify" or render them lawful. Dkt. No. 176-1, at 2–13. Congress, however, directed DoD to procure one mission competitively in 2015, without regard to its obligations under the 002 and 003 Contracts. As for FY′15–′17, Congress directed DoD to procure one more additional core, but if "there is no practicable way" to do so and comply with the "firm fixed price contract for [thirty-five] rocket engine cores," the SecDef is required to submit a certification to that effect to congressional defense committees. NDAA § 1611(a)(2). Upon receipt of this certification, Congress may elect to authorize funds for that launch or not—or to require DoD to reprogram or transfer other authorized funds for this purpose. *See, e.g.*, Appropriations Act § 8075 (transferring funds). In other words, Section 1611(a)(2)(A) simply recognizes the status quo, *i.e.*, the fact that DoD has a pre-existing contractual relationship with ULA, nothing more. In addition, there is no text in the NDAA exhibiting "full congressional knowledge or awareness" of the allegations in the November 18, 2014 Second Amended Complaint in this case, or information contained in the Administrative Record, the Court's Record, or the myriad exhibits proffered by the parties. Indeed, all of these documents and the parties motions and briefs have been placed under seal. Without such "knowledge," Congress was in no position to "ratify" the conduct of the Air Force at issue in this case. *See generally United States v. Beebe*, 180 U.S. 343 (1901) (holding that Congress can ratify unlawful agency action only if it had knowledge of the unauthorized activity); *see also Schism v. United States*, 316 F.3d 1259, 1289–94 (Fed. Cir. 2002) (*en banc*) (discussing cases). As such, the NDAA does not affect the court's Tucker Act[3] jurisdiction or exempt the Air Force from compliance with federal procurement laws or regulations in awarding the 002 Contract and the 003 Contract.

---

[3] The Tucker Act authorizes the United States Court of Federal Claims "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of contract or any alleged violation of statute or regulation in connection with a Federal procurement or proposed a procurement." 28 U.S.C. § 1491(b)(1).

Likewise, the NDAA does not render this case moot. As a matter of law, a claim becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). In addition, "actual controversy must remain at all stages, not merely at the time the complaint is filed." *Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336, 1340 (Fed. Cir. 2008) (citing *Steffel v. Thompson*, 415 U.S. 452, 460 n.10 (1974)). To determine whether a case is moot, the court examines whether: "(1) it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) (internal citations omitted). Space Exploration Technologies Corp. ("SpaceX") had and retains a "cognizable interest" in the outcome of the case, as the court may determine that the award of the 002 Contract and/or the 003 Contract violated federal procurement laws or regulations or was arbitrary and capricious. *Compare Powell*, 395 U.S. at 496, *with* Pl. 11/18/14 2nd Am. Compl. ¶¶ 182–206 (alleging violations of the Competition In Contracting Act, 10 U.S.C. § 2304 and Part 6 of the Federal Acquisition Regulations); Pl. 11/18/14 2nd Am. Compl. ¶¶ 207–212 (alleging violations of the Defense Acquisition Regulations System Subpart 217.1); Pl. 11/18/14 2nd Am. Compl. ¶¶ 213–217 (alleging that the Air Force's awards of the 002 and the 003 Contracts were "arbitrary and capricious" under 5 U.S.C. § 706(2)(A)). Moreover, SpaceX's potential opportunity to compete for the missions identified in Section 8084 of the Appropriations Act or the two missions identified in Sections 1611(a)(1)–(2) of the NDAA may not necessarily "completely and irrevocably eradicte[] the effects" of the allegedly improper award of the 002 and 003 Contracts to ULA. *See Cnty. of L.A.*, 440 U.S. at 631. Therefore, SpaceX's claims are not moot.

On June 30, 2014 and November 25, 2014, the Government filed Motions To Dismiss. Dkt. Nos. 75, 162. On December 19, 2014, SpaceX filed a Motion For Judgment On The Administrative Record under RCFC 52.1(c). Dkt. No. 171. Briefing is now complete on all of these motions. The court has advised the parties that it will not rule on pending motions for jurisdictional discovery or on the merits until the mediation, scheduled to commence this month, is concluded. In turn, the Air Force has advised the court that it will not make a final decision about the [REDACTED] missions until [REDACTED], 2015. Dkt. No. 166, at 3, 11. In addition, the [REDACTED] has been scheduled as a competitive mission to be awarded in the near future. AR SMC 54196.

Finally, on January 6, 2015, the Air Force issued a Notice Of Press Announcement stating that, while no new entrants were able to be certified by December 2014, a "new entrant is close" and that the Air Force "will continue to invest significant resources in a close collaborative effort on the certification process in 2015." Dkt. No. 175 Att. A (statement by Lt Gen Samuel Greaves, Commander of the Space and Missile Systems Centers).

For these reasons, ULA's January 7, 2015 Motion To Dismiss is denied.

**IT IS SO ORDERED**.

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**